**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| M.T., a minor by and through his grandmother and next friend, EDWINA WOODLEY; K.C., a minor by and through his mother and next friend, KAMBRY COX; EDWINA WOODLEY; and KAMBRY COX | _____Civ. _____ (_____) |
| Plaintiffs, | JURY TRIAL REQUESTED |
| v. | |
| TATUM UNIFIED SCHOOL DISTRICT; MATT CRAWFORD, in his individual and official capacity; STEPHEN SKINNER, in his individual and official capacity; EVERIGESTER ADAMS, JR., in his individual and official capacity; KIP AMICK, in his individual and official capacity; KAREN MCLLWAIN, in her individual and official capacity; DENNIS WILLIAMS, in his individual and official capacity; C. LARRY SMITH, in his individual and official capacity; J.P. RICHARDSON, in his individual and official capacity; | |
| Defendants. | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiffs Edwina Woodley ("Ms. Woodley") on behalf of her grandson M.T., and Kambry Cox ("Ms. Cox") on behalf of her son K.C. (collectively, the "Plaintiffs"), file this action for declaratory judgment, permanent injunctive relief, damages, costs, and attorneys' fees stemming from the unlawful infringement on their constitutional rights and violations of federal and state statutes.

1

Made defendants herein are Tatum Independent School District ("Tatum ISD" or the "District"); Tatum ISD's Board of Trustees (the "Board"); individual Board members Matt Crawford, Stephen Skinner, Everigester Adams, Jr., Kip Amick, Mcllwain, Dennis Williams, and C. Larry Smith ("Trustees"), and Tatum ISD Superintendent J.P. Richardson ("Superintendent Richardson" and, collectively with the remaining defendants, "Defendants").

## PRELIMINARY STATEMENT

1.      African American male students are have been disproportionately targeted and penalized for violating racial and general neutral grooming policies that have been designed to, and have the effect of, profiling, singling out, and burdening African American male children for wearing their hair in its natural state. The length of their hair or their hairstyle have no bearing on students' capacity to learn, yet these wholly arbitrary grooming policies limit the mobility of African American male children in public and private spaces, deny them equal educational opportunities, and strike at the freedom and dignity of African American people.

2.      These grooming policies ultimately present African American students with an unfair choice: *either* wear their hair in natural formations and be deprived of adequate educational resources *or* conform their hair to predominant white aesthetics to receive the same educational opportunities as their white peers. M.T. and K.C. were faced with the impossible choice of either suppressing their cultural heritage and African American identity by cutting their natural hair or forfeiting their right to equal educational opportunities.

3.      Tatum ISD's student dress code for the 2019-2020 academic year stated in part "[s]tudent's hair shall be clean and well-groomed at all times and <u>shall not obstruct, vision, no extreme style or color (neon, ect…)</u> shall be allowed…No ponytails, ducktails, rat-tails, male bun or puffballs **<u>shall be allowed</u>** on male students. (In its unaltered state, hair cannot extend

2

past shoulder length). **ALL male hair of any type SHALL NOT extend below the collar (t-shirt/button-down collar/Shoulder length).**

4.     Both M.T., 4 years old, and K.C., 5 years old, are African American male students who were enrolled with Tatum ISD. Both M.T. and K.C. naturally wear their hair long. M.T. has his natural hair shoulder length and K.C. has dreadlocks that go down to his ears and past his eyebrows. Both M.T. and K.C. love their hair as it is an expression of who they are, and how they feel the most comfortable.

5.     The 2019-2020 hair policy crafted and enforced by Tatum ISD has no legitimate purpose, is wholly arbitrary, intentionally discriminatory based on race and gender (including facially discriminatory language on the basis of gender), and unfairly and selectively enforced against Black male students. There was no legitimate educational motive or goal furthered by the hair policy's requirement that male students comply with any arbitrary length requirement and style requirement.

6.     Defendants' promulgation and enforcement of Tatum ISD's dress code policy, along with its retaliatory response to M.T. and K.C.'s complaints about same, are unlawful, discriminatory, and punitive violations of Plaintiffs' constitutional rights, as well as state and federal law. Plaintiffs bring this civil rights action against Defendants for:

(1)   Race discrimination in violation of the Fourteenth Amendment right to equal protection;

(2)   Race discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* ("Title VI");

(3)   Sex discrimination in violation of the Fourteenth Amendment right to equal protection;

(4)   Sex discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX")

(5)   Violation of the First Amendment right to free speech and freedom of expression;

(6)   Retaliation in violation of the First Amendment right to free speech and freedom of expression;

(7)   Retaliation in violation of Title IX;

(8)   Violation of the Fourteenth Amendment's Due Process Clause;

(9)   Race discrimination in violation of Texas Civil Practice and Remedies Code § 106.001;

(10)  Sex discrimination in violation of Texas Civil Practice and Remedies Code § 106.001; and

(11)  Damages, costs and fees.

7.      Accordingly, Plaintiffs seek (1) an order enjoining Defendants from re-enforcing the 2019-2020 Tatum ISD's hair policy; (2) an order expunging any disciplinary sanctions on Plaintiffs' school records related to the dress code; (3) compensatory damages for injuries caused by Defendants' unlawful conduct; and (4) punitive damages assessed to deter Defendants' intentional or reckless deviations from the law.

## JURISDICTION AND VENUE

8.      Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 to redress the deprivation of Plaintiffs' rights as secured by the First and Fourteenth Amendments to the U.S. Constitution. Plaintiffs also seek relief under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, 28 U.S.C. § 2201 *et seq.*, and Texas Civil Practice and Remedies Code § 106.001.

9.      This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law. This Court also has jurisdiction

under 28 U.S.C. § 1343(a) because Plaintiffs seek damages for violations of their civil rights. Supplemental jurisdiction over Plaintiffs' state law claims is proper under 28 U.S.C. § 1367.

10.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in the Eastern District of Texas.

### PARTIES

11.     Plaintiff M.T. is Black male, who was 4 years old when started the Head Start Program at Tatum ISD. M.T. was officially enrolled with the Head Start Program in August 2019, and was forced to leave the Tatum ISD in September 2019 due to his hair length not being in compliance with the 2019 Tatum ISD dress code policy. M.T. appears by and through his grandmother, Edwina Woodley, who brings this suit on this behalf.

12.     Plaintiff K.C. is a Black male, who was 5 years old when he started kindergarten at Tatum ISD. K.C. was forced to leave Tatum ISD because his hairstyle was out of compliance with the 2019 Tatum ISD dress code policy. K.C. appears by and through his mother, Kambry Cox ("Ms. Cox"), who bring this suit on this behalf.

13.     Plaintiff Edwina Woodley ("Ms. Woodley") is the grandmother of M.T. Ms. Woodley has at all times supported M.T.'s decisions on his hair length and hair style as expressions of his Black identity, culture and heritage. When Tatum ISD told M.T. that his hair was out of compliance with their dress code, Ms. Woodley challenged Tatum ISD's dress code policy to Superintendent J.P. Richardson, stating that M.T.'s hairstyle and hair length is a reflection of his Black culture and heritage, and that Tatum ISD's dress code policy subjects Black male students like M.T. to race and gender discrimination and violations of the right to free expression. Superintendent Richardson responded that male students are not allowed to have their hair at shoulder length in accordance with their dress code policy. He further stated that

M.T. would have to cut his hair, and if he chose to wear his hair down then he suggested Ms. Woodley put him in a dress, and asked if he was a boy or girl, M.T. would have to say girl. Ms. Woodley continued to support M.T.'s choice in hairstyle and hair length and sent him to school in his natural hair. When M.T. was being placed in the principal's office, isolated from his classmates without adequate supervision or instruction, Ms. Woodley publicly protested Tatum ISD's dress code policy in an effort to get M.T. back in the classroom. Ms. Woodley was told by local police that she could no longer come on Tatum ISD property and was falsely arrested on charges that were later dismissed in correlation with her continued protest of Tatum ISD's dress code policy.

14.     Plaintiff Kambry Cox ("Ms. Cox) is the mother of K.C. Ms. Cox has at all times supported K.C.'s decisions on his hair length and hair style as expressions of his Black identity, cultural and heritage. When Tatum ISD told K.C. that his hair was out of compliance with their dress code, Ms. Cox challenged Tatum ISD's dress code policy and continued to send K.C. in his natural hair and whatever hairstyle he chose. When K.C. was being placed in the principal's office, isolated from his classmates without adequate supervision or instruction, Ms. Cox protested Tatum ISD's dress code policy in an effort to get K.C. back in the classroom. K.C. was subsequently forced to leave Tatum ISD.

15.     Defendant Tatum Unified School District is a public school district in Panola and Rusk Counties, where the District's Head Start Program and Kindergarten are located. Tatum ISD receives federal financial assistance for its programs, services, and activities. Pursuant to Texas Education Code § 11.151, Tatum ISD's Board of Trustess[1] has "the exclusive power and

---

[1] *See* TEX. EDUC. CODE § 11.151(a) ("The trustees of an independent school district constitute a body corporate and in the name of the district may…sue and be sued…")

duty to govern and oversee the management of the public schools of the district."[2] Prior to the 2019-2020 school year, Board adopted a dress code policy that prohibited male students from having hair that extended past their shoulders, and were prohibited from having "ponytails, ducktails, rat-tails, male bun or puffballs." (See Exhibit A) On October 23, 2019, the Board rejected M.T. and K.C.'s grievances related to the hair policy.

16.     Defendant Matt Crawford is the Tatum ISD Board President and has served Tatum ISD's Board since 2010. As a trustee, Mr. Crawford votes on school policies, including implementing and upholding the 2019-2020 dress code policy. On October 23, 2019, Mr. Crawford voted to reject M.T. and K.C.'s administrative grievances related to the hair policy for discriminatory purposes also in violation of clearly-established anti-discrimination laws and constitutional rights. Plaintiffs bring claims against Mr. Crawford in his individual capacity.

17.     Defendant Stephen Skinner is the Tatum ISD Vice President and has served on Tatum ISD's Board since 2014. As a trustee, Mr. Skinner votes on school policies, including implementing and upholding the 2019-2020 dress code policy. On October 23, 2019, Mr. Skinner voted to reject M.T. and K.C.'s administrative grievances related the hair policy for discriminatory purposes also in violation of clearly-established anti-discrimination laws and constitutional rights. Plaintiffs bring claims against Mr. Skinner in his individual capacity.

18.     Defendant Everigester Adams Jr. is the Tatum ISD Secretary and has served on Tatum ISD's Board since 1992. As a trustee, Mr. Adams Jr. votes on school policies, including implementing and upholding the 2019-2020 dress code policy. On October 23, 2019, Mr. Adams Jr. voted to reject M.T. and K.C.'s administrative grievances related the hair policy for

---

[2] *See* Tatum ISD Board Policy Manual, Board Legal Status, BA (LEGAL), https://pol.tasb.org/Policy/Download/1042?filename=BA(LEGAL).pdf

discriminatory purposes also in violation of clearly-established anti-discrimination laws and constitutional rights. Plaintiffs bring claims against Mr. Adams Jr. in his individual capacity.

19.     Defendant Kip Amick is a member of the Tatum ISD Board of Trustees and has served on the Board since 2010. As a trustee, Mr. Amick votes on school policies, including implementing and upholding the 2019-2020 dress code policy. On October 23, 2019, Mr. Amick voted to reject M.T. and K.C.'s administrative grievances related the hair policy for discriminatory purposes also in violation of clearly-established anti-discrimination laws and constitutional rights. Plaintiffs bring claims against Mr. Amick in his individual capacity.

20.     Defendant Karen Mcllwain is a member of the Tatum ISD Board of Trustees and has served on the Board since 2002. As a trustee, Ms. Mcllwain votes on school policies, including implementing and upholding the 2019-2020 dress code policy. On October 23, 2019, Ms. Mcllwain voted to reject M.T. and K.C.'s administrative grievances related the hair policy for discriminatory purposes also in violation of clearly-established anti-discrimination laws and constitutional rights. Plaintiffs bring claims against Ms. Mcllwain in her individual capacity.

21.     Defendant Dennis Williams is a member of the Tatum ISD Board of Trustees and has served on the Board since 2001. As a trustee, Mr. Williams votes on school policies, including implementing and upholding the 2019-2020 dress code policy. On October 23, 2019, Mr. Williams voted to reject M.T. and K.C.'s administrative grievances related the hair policy for discriminatory purposes also in violation of clearly-established anti-discrimination laws and constitutional rights. Plaintiffs bring claims against Mr. Williams in his individual capacity.

22.     Defendant C. Larry Smith is a member of the Tatum ISD Board of Trustees and has served on the Board since 2006. As a trustee, Mr. Smith votes on school policies, including implementing and upholding the 2019-2020 dress code policy. On October 23, 2019, Mr. Smith

voted to reject M.T. and K.C.'s administrative grievances related the hair policy for discriminatory purposes also in violation of clearly-established anti-discrimination laws and constitutional rights. Plaintiffs bring claims against Mr. Smith in his individual capacity.

23.    Defendant J.P. Richardson is the Superintendent for Tatum ISD and has been Superintendent since 2017. Superintendent Richardson is responsible for developing and enforcing procedures for the operation of Tatum ISD including, "preparing recommendations for policies to be adopted by the Board and overseeing the implementation of adopted policies" and "developing or causing to be developed appropriate administrative regulations to implement policies established by the Board."[3] When Ms. Woodley complained to Superintendent Richardson about Tatum ISD's dress code policy and how it subjects Black male students like to race and gender discrimination and violations of the right to free expression, Superintendent Richardson suggest that if M.T. chose to wear his hair long that he put on a dress, and if asked if he was a girl or a boy he would have to respond girl. Plaintiffs bring claims against Superintendent Richardson in his individual capacity.

## FACTUAL BACKGROUND

### A.    Racial Discrimination in Tatum ISD

24.    Tatum ISD is a school district in Tatum, TX. Tatum ISD also serves rural areas in northeastern Rusk and northwestern Panola counties. The geographic area Tatum ISD serves is racially homogenous: 67% of the 4,926 who live within Tatum ISD's attendance zones are white and just 14% are Black.[4]

---

[3] *See* Tatum ISD Board Policy Manual, Board Legal Status, BP (LEGAL), https://pol.tasb.org/Policy/Download/1042?filename=BP(LEGAL).pdf
[4] Institute of Education Studies, National Center for Education Statistics, District Demographic Dashboard 2014-2018, Tatum Independent School District, TX, https://nces.ed.gov/Programs/Edge/ACSDashboard/4842240.

25.     Tatum ISD receives a total of $14,839 in revenue per student each school year.[5] Of the total revenue per student, $1,198 is from federal sources, $4,983 is from state sources, and $8,658 is from local sources, including property and non-property taxes.[6]

26.     The District serves approximately 1,473 students[7] in four schools: one high school, one middle school and two elementary schools.

27.     Black students are overrepresented in disciplinary enforcement at Tatum ISD.[8] Black students at Tatum ISD are 2.3 times as likely to be suspended than White Students.[9] This includes Black Students 3.8 times likely to get disciplined in Tatum ISD High School, and 3.1 times likely to get disciplined in Tatum ISD Middle School.[10]

**B.  Tatum ISD's Hair Policy**

28.     Tatum ISD maintains a Student Code of Conduct, which sets forth Tatum ISD's standards, consequences for misconduct, and procedures for administrating discipline. Tatum ISD's Board is responsible for adopting the Student Code of Conduct before each school year, as well as the standards for enforcing the policies set forth in the Student Code of Conduct.

29.     The hair policy adopted by the Board at the start of the 2019-2020 school year provided as follows:

---

[5] Institute of Education Studies, National Center for Education Statistics, 2017-2018 Public School District Finance Peer Search, https://nces.ed.gov/ccd/districtsearch/district_detail.asp?ID2=4842240.
[6] *Id.*
[7] Texas Education Agency, 2020-2021 Student Enrollment: Totals By District for District: 201910 (Tatum ISD), https://rptsvr1.tea.texas.gov/cgi/sas/broker?_service=marykay&_program=adhoc.addispatch.sas&endyear=21&majo r=st&minor=e&format=w&selsumm=id&linespg=60&charsln=120&grouping=e&loop=2&key=201910&_debug=0
[8] National studies have shown that Black and Latinx students do not misbehave more often than white students, but Black and Latinx students are more often disciplined and bear the brunt of harsh, exclusionary punishment. *See* Russell J. Skiba, Ph. D. & Natasha T. Williams, *Are Black Kids Worse? Myths and Facts about Racial Differences in Behavior – A Summary of the Literature*, EQUITY PROJECT AT IND. UNIV. (March 2014), https://indrc.indiana.edu/tools-resources/pdf-disciplineseries/african_american_differential_behavior_031214.pdf
[9] Lena V. Groeger, Annie Waldman, and David Eads, *Miseducation, Is there racial inequality at your school, Tatum Independent School District*, PROPUBLICA (October 16, 2018), https://projects.propublica.org/miseducation/district/4842240
[10] *Id.*

**TATUM ISD**

**2019-2020**

**STUDENT DRESS CODE**

- Student's hair shall be clean and well groomed at all times and <u>shall not obstruct vison</u>. **<u>no extreme style or color (neon, ect…)</u>** shall be allowed. No symbols, letters, or extreme designs cut in the hair shall be permitted. No ponytails, ducktails, rat-tails, male bun or puffballs **shall be allowed** on male students. (In its unaltered state, hair cannot extend past shoulder length). **ALL male hair of any type SHALL NOT extend below the collar (t-shirt/button-down collar/Shoulder length).**

Under the hair policy in place for 2019-2020 school year, male students were restricted from wearing hair below their shirt collar, and were not allowed to put up their hair in a ponytail, ducktail, rat-tail, male bun or puffball. This iteration of the hair policy remained in place for Tatum ISD through most of the 2019-2020 school year.

30.     Tatum ISD's 2019-2020 hair policy restriction was wholly arbitrary and completely untethered to any legitimate pedagogical or disciplinary outcomes. Plaintiffs are informed and have good faith belief that only male black students have been disciplined under the 2019-2020 Tatum ISD hair policy.

31.     Tatum ISD's hair length restriction in its 2019-2020 dress code policy does not further an important government interest because there is no legitimate, important, and substantial reason to permit female students to wear their hair long when male students are not so permitted.

32.     Defendants have applied and enforced the 2019-2020 hair policy in an unlawful manner to target Black, male students with culturally significant hair. The actions and conduct of the individual Defendants were taken in furtherance of, and pursuant to, the policies and practices adopted by Tatum ISD and the Board. Tatum ISD and the Board adopted, approved and

11

endorsed, and ratified the unlawful actions and conduct of the individual Defendants described

herein as being taken in furtherance of, and pursuant to, the policies and practices of Tatum ISD

and the Board.

**C. Tatum ISD's Expulsion of M.T.**

33.     M.T. was enrolled with Tatum ISD as part of the Region 7 Head Start program[11]

in August 2019. At the time he was enrolled M.T. was 4 years old. When M.T. enrolled with

Region 7 Head Start Program at Tatum ISD, M.T. or his grandmother, Ms. Woodley were never

told or informed that there were any issues with M.T.'s enrollment.

34.     After he was enrolled, an administrator from Tatum ISD told Ms. Woodley that

M.T.'s natural hair, hair length and/or style was out of compliance with Tatum ISD's dress code.

On August 12, 2019, Ms. Woodley met with Superintendent J.P. Richardson to inquire why

M.T.'s natural hair was out of compliance when his natural hair would not affect his ability to

get an education, and would not disrupt other students. Superintendent Richardson explained to

Ms. Woodley that male students are not allowed to have their hair at shoulder length.

Superintendent Richardson suggested that M.T. have his hair braided or cut. Superintendent

Richardson further stated that M.T. chose to continue to wear his hair down, he would then have

to put on a dress, and asked if he was a girl or a boy, he would have to respond girl to anyone

who asked.

35.     On August 14, 2019, which was the first day of school, M.T.'s hair was braided

and pinned up, and he received no discipline. After school, M.T. complained to Ms. Woodley

that the pins in his hair were hurting his head. On August 19, 2019, M.T. went to school with his

---

[11] Head Start is a federal program that helps children from birth to age 5 from low-income families by enhancing their cognitive, social, and emotional development. *See* Texas Head Start, Benefits.gov: Your Path to Government Benefits, https://www.benefits.gov/benefit/1941.

hair braided but not pinned up. M.T. received a note from Tatum ISD stating that his hair was

out of compliance. M.T. was most comfortable with his hair down and he liked his hair length.

When M.T.'s hair was down on August 19, 2019, it did not impede his ability to get an education

or cause a disturbance to any other student.

36.     Ms. Woodley, who was opposed to the 2019-2020 Tatum ISD hair policy,

continued to send M.T. to school with his hair down, because it was his right to freely express

himself and wear his hair the way he wanted. Tatum ISD continued to state that M.T. was out of

compliance, and as discipline they placed M.T. in the principal's office by himself without

adequate supervision and no school instruction. M.T. continued to wear his hair down for weeks,

and was continually placed in the principal's office isolated from his classmates.

37.     While M.T. was continually being placed in the principal's office for not

complying with the Tatum ISD's hair policy, Ms. Woodley publicly protested Tatum ISD's dress

code, and it garnered national media attention, which publicly criticized Tatum ISD's policy. Ms.

Woodley was also vocal on social media about the discriminatory treatment M.T. was getting for

his freedom of expression, and she received backlash from the local community.

38.     On September 27, 2019, Tatum ISD "unenrolled" M.T. from the Region 7 Head

Start program, claiming that he was not properly enrolled. However, records from the Head Start

program indicate that M.T. was never unenrolled due to issues with his enrollment documents.

There was also no evidence showing that M.T. was not eligible to participate in the Head Start

program at Tatum ISD, and there is no evidence that shows that M.T. was still enrolled with the

Head Start program at the time he was told by Tatum ISD that he was unenrolled.

39.     It is the Head Start program's policy that a student cannot be expelled or

unenrolled due to the student's behavior (See Exhibit B). Under the Texas Education Code §

37.007, a student under the age of 10 cannot be expelled from program unless he brings a firearm.[12] Further, under Tatum ISD's own policy, a student under the age of ten will not be expelled but shall be placed in a disciplinary alternative education placement (DAEP). (See Exhibit C) Therefore, it is evident that Tatum ISD's actions were pretext for race and gender discrimination, and in retaliation to Ms. Woodley protesting publicly about Tatum ISD's dress code policy. No other non-Black or female student enrolled with Tatum ISD received similar treatment. There are several white or mixed raced students at Tatum ISD who have long hair that come to their eye level that were not subjected to discipline. (See Exhibit D) As a result of Tatum ISD's actions, M.T. fell behind in comparison to the students who continued to participate in the Head Start program, and suffered severe emotional distress.

**D. Tatum ISD's Expulsion of K.C.**

40.     K.C. was enrolled with Tatum ISD's Kindergarten school in August 2019. At the time he was enrolled K.C. was 5 years old. When K.C. enrolled with Tatum ISD, K.C. or his mother, Ms. Cox, were never told or informed that there were any issues with K.C.'s enrollment.

41.     On August 15, 2019 K.C. received a note stating that his hairstyle was out of compliance with Tatum ISD's dress code policy. Ms. Cox called K.C.'s teacher to ask how K.C.'s hair was out of compliance. Ms. Cox was told by the teacher that "ponytails" were not permitted on male students.

42.     Ms. Cox was disturbed that such a restriction was in place, and she attempted to inquire with other Tatum ISD staff members as to why K.C.'s natural hair was out of compliance when it did not affect his ability to get an education, and had not or would not disrupt other students. Ms. Cox was only told by Tatum ISD staff that "it was the rules."

---

[12] *See* Texas Education Code § 37.007(h)

43.     Ms. Cox was informed that another Black student from Tatum ISD, M.T., was having the same issue, and heard that Superintendent Richardson told that student to wear a dress and call himself a girl if he chose to wear his hair down. Ms. Cox was appalled and disturbed by Tatum ISD's position.

44.     On September 18, 2019, K.C. went to school with his hair in ponytails because that what made him most comfortable. Ms. Cox was soon informed by the kindergarten that K.C.'s hair was out of compliance with the District's dress code, and that K.C. was place in the principal's office by himself, isolated from his classmates with no supervision or instruction. He was later given material to work on that was not the same material his classmates were getting in the classroom.

45.     On September 19, 2019, K.C. went to school with his hair down again like he usually does and is the most comfortable. The kindergarten again told K.C. and Ms. Cox that K.C. was out of compliance with the dress code, and placed him again in the principal's office, isolated from his classmates, with minimal supervision and given worksheets that were different from his classmates. This discipline continued for K.C. in the coming days.

46.     Ms. Cox publicly protested Tatum ISD's dress code policy while K.C. was continually being placed in the principal's office, isolated and ostracized from his classroom. Ms. Cox's efforts garnered national media attention, which publicly criticized Tatum ISD's policy.

47.     On September 23, 2019, Ms. Cox was informed that Tatum ISD was going to unenroll K.C. because he did not reside in the District. Tatum ISD claimed that K.C.'s residence was outside of Tatum ISD. However, when K.C. was enrolled, his home address was listed as a Tatum, TX address, where his grandmother lived and she would pick him up and take him after school. Tatum ISD was fully aware of these facts, however chose to retaliate against Ms. Cox

and K.C. for challenging the dress code policy. Tatum ISD unenrolling K.C. from kindergarten is pretext for discrimination as there was no issues with his enrollment when he began the school year, only after he started challenging the school dress code policy.

### E.  M.T. and K.C. Grievance and Ms. Woodley's Arrest

48.      M.T. and K.C. filed administrative grievances with Tatum ISD per their policy, for being discriminated against based on their gender and race by being unenrolled with Tatum ISD for challenging the hair policy. The grievances were heard at a Level 3 before the Board on October 21, 2019. On October 23, 2019 the Board voted to deny both M.T. and K.C.'s Level 3 grievances, and no reasoning or findings were provided for the denial.

49.      On October 25, 2019, Ms. Woodley was arrested at her home for perjury and child endangerment charges stemming from M.T.'s enrollment with Tatum ISD, and Ms. Woodley sending M.T. to school when he continued to be enrolled with the Region 7 Head Start program. The charges were eventually dropped, evidencing that the probable cause affidavit and arrest was in retaliation to her protesting the Tatum ISD dress code policy publicly and over social media.

### F.  Tatum ISD Approves New Dress Code Policy And Eliminates Head Start Program

50.      On November 11, 2019 Superintendent Richardson accepted recommended changes to the Tatum ISD dress code policy during a board meeting as well as agreeing to eliminate the Head Start Program at Tatum ISD. During the Board meeting, Assistant Superintendent Fite stated that research showed that out of the 90 school districts in Texas,

Tatum's was the only one which included the term "puffball."[13] Mr. Fite went on to state "[a]nything that will single out any ethnic group will be removed…"[14]

51.     Superintendent Richardson approved the recommendation because it is an administrative regulation.[15] Superintendent Richardson further ruled at the Board hearing that Tatum ISD would no longer be participating in the Head Start programing and adding two additional pre-k classes.[16] The changes to Tatum ISD hair policy were officially instituted in July 2020, when the district changed the language to "hair, including facial hair, must be neat, clean, and well-groomed. No unnatural hair color, or hairstyle that is deemed disruptive. Hair should not cover the eyes."[17]

52.     Despite the approved changes to Tatum ISD's dress code policy, M.T. and K.C. were never welcomed back to Tatum ISD for the 2019-2020 school year. Both M.T. and K.C. were forced to find schooling out of the district.

**G.  Plaintiffs' Psychological Harm and Mental Anguish**

53.     M.T. and K.C. both have suffered and continue to suffer, humiliation and severe emotional distress as a direct result of Defendants' unlawful discriminatory treatment and expulsion of the students.

54.     M.T. and K.C. both exhibited despondent behavior after being unenrolled from Tatum ISD, and stripped of an opportunity to get a fair and equal education. As the story of M.T.

---

[13] Kristen Barton, *Tatum ISD to alter hair policy in dress code, drops Head Start to add more pre-k*, LONGVIEW NEWS JOURNAL, November 11, 2019, https://www.news-journal.com/news/local/tatum-isd-to-alter-hair-policy-in-dress-code-drops-head-start-to-add-more/article_bb90168c-04e4-11ea-be27-ef1f13854715.html
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] Chole Bradford, *Tatum ISD changes dress code policy after complaints*, CBS19, July 28, 2020, https://www.cbs19.tv/article/news/tatum-isd-changes-dress-code-policy-after-complaints/501-7152c96e-03a4-4ef8-bf1a-acf7135dea4b#:~:text=The%20district's%20dress%20code%20policy,should%20not%20cover%20the%20eyes.%22

and K.C. went public and garnered national attention, so did this incitement of hostility towards them from their community and beyond. Both M.T. and K.C's families feared for their safety as the story continued to grow as well as opposers to the Plaintiffs' protests.

55.     Both M.T. and K.C. had to modify their lifestyle and ceased doing fun activities such as playing with friends or going outdoors in fear of backlash. Both M.T. and K.C. continue to have anxiety and constantly question their choices as to if they are doing something wrong or if others may ridicule them.

56.     Ms. Woodley and Ms. Cox have also suffered, and continue to suffer, significant emotional distress and mental anguish as a direct result of the actions of Defendants in response to their complaints about the discriminatory hair policy. Defendants' retaliatory conduct – such as stigmatizing, humiliating, unenrolling M.T. and K.C., and depriving them of fair and equal education – caused severe harmful effects to Ms. Woodley and Ms. Cox's daily life, resulting in emotional distress and other harm. In addition, Ms. Woodley further experienced retaliation when she was arrested under an unsubstantiated probable cause statement and forced to spend the night in jail on charges that were eventually dropped, in relation to her public protests and social media campaigns against the Tatum ISD hair policy as well as their treatment towards M.T.

57.     Defendants' actions and the foreseeable consequences of their actions have caused, and continue to cause, Ms. Woodley and Ms. Cox to live in constant anxiety and fear about their, M.T., and K.C.'s safety, future and emotional wellbeing. To this day, M.T., K.C., Ms. Woodley and Ms. Cox continue to exhibit signs of trauma directly related to Defendants' conduct.

## FIRST CAUSE OF ACTION

### Violation of the Fourteenth Amendment's Equal Protection Clause
### Pursuant to 42 U.S.C. § 1983
### (Intentional Racial Discrimination)

58.     M.T. and K.C. bring this Fourteenth Amendment race discrimination claim against Tatum ISD and all individual Defendants in their individual capacities, for the discriminatory construction and selective enforcement of Tatum ISD's 2019-2020 hair policy against M.T. and K.C.

59.     Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

60.     The Equal Protection Clause of the Fourteenth Amendment prohibits States from denying "any person within its jurisdiction the equal protection of the laws." This direction requires all similarly situated persons to be treated alike. *Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004).

61.     Prohibited racial discrimination includes reliance on racial prejudice or stereotypes. *See, e.g. Batson v. Kentucky*, 476 U.S. 79, 104 (1986).

62.     A school's use of race or ethnicity that is in any way motivated by prejudice or stereotype against a group constitutes intentional discrimination and violates the Equal Protection Clause of the Fourteenth Amendment.

63.     Furthermore, treating similarly situated students differently because of "ethnic hair" constitutes discrimination in violation of the Equal Protection Clause. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 415 (5th Cir. 2015); *Hollins v. Atlantic Co.*, 188 F.3d 652, 661-62 (6th Cir. 1999).

64.     "Determining whether invidious discriminatory purpose was motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).

65.     Pursuant to Tatum ISD's Board Policy Manual and Student Code of Conduct, Superintendent Richardson and the Tatum ISD Board possess final authority to establish standards and policy with respect to student dress and grooming.

66.     Tatum ISD's Board, as the official policymaker for the school district, adopted the 2019-2020 dress code/hair policy that targeted male Black students and their natural hair growth, making it difficult for male Black students to freely express themselves and comply with the dress code. Tatum ISD's adoption of the 2019-2020 hair policy is motivated, at least in part, by the racially discriminatory goal of restricting Black students from wearing their natural hair or culturally significant hair formations.

67.     Each of the Trustees named as Defendants herein voted to adopt the 2019-2020 dress and hair code policy that led to the unenrollment of M.T. and K.C.

68.     Tatum ISD enforced the 2019-2020 hair policy against M.T. and K.C. and did not similarly enforce such policy against white male students as frequently.

69.     Tatum ISD has no legitimate basis or concerns to regulate M.T., K.C.'s, or any other student's hair as it does not affect the student's ability to get an education.

70.     By acting under color of the state law to deprive Plaintiff s of their Fourteenth Amendment rights, Defendants have violated 42 U.S.C. § 1983.

71.     As a direct and proximate result of Defendants' discriminatory construction and selective enforcement of Tatum ISD's hair policy, M.T. and K.C. have suffered and will continue to suffer compensable harm, including violations of their Fourteenth Amendment

rights, humiliation, and emotional distress. In addition, Plaintiffs are entitled to and order

expunging any disciplinary sanctions on Plaintiffs' school record related to the hair policy,

damages, costs and attorney's fees.

## SECOND CAUSE OF ACTION

### Violation of Title VI
### (Intentional Race Discrimination)

72.     M.T. and K.C. bring this Title VI race discrimination claim against Tatum ISD for

discriminatory construction and selective enforcement of its hair policy against M.T. and K.C.

73.     Plaintiffs reallege and incorporate by reference all preceding and subsequent

paragraphs as if fully set forth herein.

74.     Title VI of the Civil Rights Act of 1964 provides that recipients of federal

financial assistance may not discriminate based on race, color, or national origin. 42 U.S.C. §

2000d.

75.     Tatum ISD is a federally funded program or activity under 42 U.S.C. § 2000d.

Tatum ISD receives $1,198 per student in federal funding each fiscal year.

76.     As a recipient of federal financial assistance, Tatum ISD and all its programs and

activities are subject to Title VI of the Civil Rights Act of 1964.

77.     Like the Fourteenth Amendment's Equal Protection Clause, Title VI bars

intentional discrimination. *See Alexander v. Choate*, 469 U.S. 287, 292-93 (1985); *Guardians*

*Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 607-08 (1983); *Hollins*, 188 F.3d at 661-62. A

recipient's use of race or ethnicity that is in any way motivated by prejudice or stereotype against

a particular group therefore violates both the Fourteenth Amendment and Title VI. 28 C.F.R. §

42.104(b).

78.      M.T. and K.C. were both subject to the discriminatory enforcement of Tatum ISD's 2019-2020 hair policy based on their race and color.

79.      M.T. and K.C. were isolated and ostracized from their classmates and placed in the principal's office with minimal supervision and instruction. M.T. and K.C. were not receiving and equal education compared to their classmates in the classroom while being placed in the principal's office. Other non-Black students did not receive similar treatment for violating the 2019-2020 hair policy.

80.      Tatum ISD enforced the 2019-2020 hair policy against M.T. and K.C. and did not similarly enforce such policy against white male students as frequently or harshly. There is evidence of other non-Black and mixed students who were allowed to have their hair down or have long hair and were never disciplined. (Exhibit D)

81.      Tatum ISD's 2019-2020 hair policy was wholly arbitrary because it admittedly regulates how students' hair was to be worn while at school *and* how the hair was hypothetically worn when its down, even off school premises.

82.      Tatum ISD's discriminatory construction and selective enforcement of its 2019-2020 hair policy constitutes a violation of Title VI.

83.      As a direct and proximate result of Tatum ISD's discriminatory construction and selective enforcement of its hair policy, M.T. and K.C. have suffered and will continue to suffer compensable harm, including humiliation, emotional distress, and violations of their civil rights. In addition, Plaintiffs are entitled to and order expunging any disciplinary sanctions on Plaintiffs' school record related to the hair policy, damages, costs and attorney's fees.

**THIRD CAUSE OF ACTION**

**Violation of the Fourteenth Amendment's Equal Protection Clause
Pursuant to 42 U.S.C. § 1983
(Sex Discrimination)**

84.     M.T. and K.C. bring this Fourteenth Amendment sex discrimination claim against

Tatum ISD, and all other individual Defendants in their individual capacities, for the

discriminatory construction and enforcement of Tatum ISD's hair policy against M.T. and K.C.

85.     Plaintiffs reallege and incorporate by reference all preceding and subsequent

paragraphs as if fully set forth herein.

86.     The Constitution prohibits sex classifications based on "overbroad generalizations

about the different talents, capacities, or preferences of males and females." *United States v.*

*Virigina*, 518 U.S. 515, 533 (1996); *Miss. Univ. for Women v. Hogan*, 458 U.S. 718 (1982)

(invalidating school's policy that perpetuates a stereotyped view of proper roles of men and

women).

87.     Any policy or rule that discriminates on the basis of gender must undergo, and

pass muster under, an intermediate scrutiny analysis. *Virginia*, 518 U.S. at 532-33.

88.     Tatum ISD's 2019-2020 hair policy on its face regulates male students' hair

length but did not regulate female students' hair length. Male students' violations resulted in

male students' exclusion from participation in a traditional academic setting and other

educational opportunities.

89.     Tatum ISD's 2019-2020 hair policy concerning length of hair is expressly limited

to males; Tatum ISD did not have a similar restriction for females.

90.     Tatum ISD's application of its 2019-2020 hair policy only to male students constitutes an illegal sex classification because such policy is impermissibly based on the stereotype that males must have short hair and only females have long hair.

91.     Defendants cannot provide a genuine justification for the original adoption of the facial sex discrimination exhibited in the 2019-2020 hair policy. Upon information and belief, Defendants failed to consider whether the 2019-2020 hair policy's facial sex discrimination was substantially related to any of the Defendants' stated objectives.

92.     Tatum ISD's 2019-2020 hair-length restriction does not further an important government interest because it had no legitimate, important, and substantial reason to permit female students to wear their hair long when male students were not so permitted.

93.     Defendants attempted to force M.T. and K.C. to conform to sex-based stereotypes (Tatum ISD's perception of an acceptable hair length for *male* students), as well as race-based stereotypes (Tatum ISD's perception of an acceptable hair formation for *Black* students).

94.     M.T. and K.C. were subject to discipline under Defendants' 2019-2020 policy because of their status as male.

95.     Defendants thus subjected male and female students to different standards of dress and grooming in 2019-2020 in violation of the Equal Protection Clause.

96.     As a direct and proximate result of Defendants' discriminatory construction and enforcement of Tatum ISD's 2019-2020 hair policy, M.T. and K.C. have suffered and will continue to suffer compensable harm, including humiliation, emotional distress, and violations of their civil rights. In addition, Plaintiffs are entitled to and order expunging any disciplinary sanctions on Plaintiffs' school record related to the hair policy, damages, costs and attorney's fees.

## FOURTH CAUSE OF ACTION

**Violation of Title IX**
**(Sex Discrimination)**

97.      M.T. and K.C. brings this Title IX sex discrimination claim against Tatum ISD

for the discriminatory construction and enforcement of its 2019-2020 hair policy against M.T.

and K.C.

98.      Plaintiffs reallege and incorporate by reference all preceding and subsequent

paragraphs as if fully set forth herein.

99.      Title IX states that "[n]o person…shall, on the basis of sex, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any education

program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

100.      Like the Fourteenth Amendment's Equal Protection Clause, a plaintiff bringing a

claim under Title IX may use either direct or circumstantial evidence of intentional

discrimination. *Cf. Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir.

1994)

101.      Tatum ISD's 2019-2020 hair policy on its face regulates male students' hair

length but does not similarly regulate female students' hair length. Violations of the hair length

requirement by male students can result in the students' exclusion from participation in a

traditional academic setting, extracurricular, and other school activities.

102.      Tatum ISD's 2019-2020 hair policy concerning length was expressly limited to

males; Tatum ISD did not have a similar restriction for female students.

103.      Applying a hair-length restriction only to male students constitutes an illegal sex

classification because such policy is impermissibly based on the stereotype that males must have

short hair and only females have long hair.

25

104.     Tatum ISD's 2019-2020 hair policy was wholly arbitrary because there was no legitimate, important, and substantial reason to permit female students to wear their hair long when male students are not so permitted.

105.     Further, Tatum ISD attempted to force M.T. and K.C. to conform to sex-based stereotypes (Tatum ISD's perception of an acceptable hair length for *male* students), as well as race based stereotypes (Tatum ISD's perception of an acceptable hair formation for *Black* students).

106.     The 2019-2020 hair policy facially discriminates based on sex, and Tatum ISD's personnel applied the hair policy to target Black male students with culturally significant hair styles and length.

107.     Defendants thus subjected male and female students to different standards of dress and grooming in 2019-2020 in violation of the Equal Protection Clause.

108.     As a direct and proximate result of Defendants' discriminatory construction and enforcement of Tatum ISD's 2019-2020 hair policy, M.T. and K.C. have suffered and will continue to suffer compensable harm, including humiliation, emotional distress, and violations of their civil rights. In addition, Plaintiffs are entitled to and order expunging any disciplinary sanctions on Plaintiffs' school record related to the hair policy, damages, costs and attorney's fees.

## **FIFTH CAUSE OF ACTION**

### **Violation of the First Amendment**
### **Pursuant to 42 U.S.C. § 1983**
### **(Freedom of Expression)**

109.     M.T. and K.C. bring this First Amendment free expression claim against Tatum ISD, and all other individual Defendants in their individual capacities, for their infringement on

M.T.'s and K.C.'s First Amendment right to express themselves freely without repercussions from the government.

110.    Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

111.    The First Amendment prohibits the abridgement of speech. The general right to freedom of expression applies to conduct revealing an intent to convey a particularized message, and the likelihood that the message would be understood by those exposed to it. *Canady v. Bossier Par. Scho. Bd.*, 240 F.3d 437, 440 (5th Cir. 2001). Pursuant to the Fourteenth Amendment, the prohibition extends to rules imposed by state-authorized actors, such as public school districts. *See* U.S. Const. amend. XIV.

112.    M.T. and K.C. wear their hair down, in braids or in locs as an expression of their heritage identity, and ethnicity – a symbol of widely understood as a natural Black hair formation connected to Black identity and heritage.

113.    Both M.T. and K.C.'s hair length and hair styles are a symbolic expression of their Black culture and connection to their Black community and people they admire.

114.    M.T and K.C. both wear their hair to their natural length to communicate their affinity with their cultural and family backgrounds.

115.    Defendants were aware of the messages communicated by M.T. and K.C. through their hairstyles.

116.    These communicative cultural hair formations do no impinge upon the rights of other students and do not interfere with any educational objective. Yet, the Board in 2019-2020 approved a hair policy that targeted Black males and males with longer hair, making it so that the

only way they could comply with the policy was to cut their hair altogether, or else they would face repercussions.

117.    The disciplinary actions that Tatum ISD, the Board, and the individual Defendants enforced against M.T. and K.C. for expressing their culture, heritage, and background through their hair length and style are unconstitutional infringements on both students' First Amendment right to free speech. M.T. and K.C.'s right to freely express their heritage by wearing culturally significant hairstyles and hair length in a non-distracting or offensive manner is clearly established.

118.    As a direct and proximate result of Defendants' infringement on M.T. and K.C.'s First Amendment right to express themselves, M.T. and K.C. have suffered and will continue to suffer compensable harm, including humiliation, emotional distress, and violations of their civil rights. In addition, Plaintiffs are entitled to and order expunging any disciplinary sanctions on Plaintiffs' school record related to the hair policy, damages, costs and attorney's fees.

## SIXTH CAUSE OF ACTION

### Violation of the First Amendment
### Pursuant to 42 U.S.C. § 1983
### (Retaliation)

119.    Ms. Woodley and Ms. Cox bring this First Amendment retaliation claim against Tatum ISD and all other individual Defendants in their individual capacities.

120.    Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

121.    The First Amendment guarantees that "Congress shall make no law…abridging the freedom of speech." U.S. Const. amend. I. Pursuant to the Fourteenth Amendment, the

prohibition extends to rules imposed by state-authorized actors, such as public school districts. U.S. Const., amend. XIV.

122.     Ms. Woodley and Ms. Cox engaged in constitutionally protected speech when they publicly protested Tatum ISD's 2019-2020 dress code/hair policy - to the Board, over social media and to the national press - that the policy is discriminatory, and that Superintendent Richardson failed to acknowledge their complaints regarding the 2019-2020 hair policy. During their protests, Ms. Woodley received a trespassing violation while peacefully protesting in an effort to intimidate and dissuade her continued protest. However, Ms. Woodley and Ms. Cox continued their public protest of Tatum ISD's 2019-2020 hair policy.

123.     After M.T.'s Level 3 was denied by Tatum ISD, Ms. Woodley continued to publicly protest Tatum ISD's hair policy, and she was wrongfully arrested on October 25, 2021 over an unsubstantiated probable cause statement. Ms. Woodley's charges were eventually dropped.

124.     Tatum ISD's exclusion of M.T. and K.C. from regular instruction; Tatum ISD unenrolling M.T. and K.C. from the District; Ms. Woodley receiving a trespassing violation for peacefully protesting; and Ms. Woodley being wrongfully arrested as an effort by the community to send an intimidating message are actions that would dissuade an ordinary person from continuing to voice concerns about Tatum ISD's discriminatory 2019-2020 hair policy.

125.     The adverse actions of Tatum ISD and its officials were substantially motivated by Ms. Woodley and Ms. Cox's constitutionally protected speech. Tatum ISD made this clear when the unenrolled both M.T. and K.C. from the District after the protests against the 2019-2020 hair policy began.

126.     Defendants' retaliatory enforcement of Tatum ISD's 2019-2020 hair policy

constitute a violation of the First Amendment of the United States Constitution.

127.     As a direct and proximate result of Defendants' retaliatory enforcement of Tatum

ISD's 2019-2020 hair policy, Ms. Woodley and Ms. Cox have suffered and will continue to

suffer compensable harm, including humiliation, emotional distress, and violations of her

constitutional rights, and is entitled to an order enjoining Defendants from retaliating against

who express concerns about race and sex discrimination, damages, costs, and attorneys' fees.

**SEVENTH CAUSE OF ACTION**

**Violation of Title IX**
**(Retaliation)**

128.     Ms. Woodley and Ms. Cox bring this Title IX retaliation claim against Tatum ISD

for enforcing its hair policy on M.T. and K.C., and for subjecting Ms. Woodley to police

intimidation and an unlawful arrest after she made complaints and publicly protested against the

hair policy.

129.     Plaintiffs reallege and incorporate by reference all preceding and subsequent

paragraphs as if fully set forth herein.

130.     Title IX prohibits retaliation of exercising a right protected by that title, such as

raising concerns about discriminatory behavior.

131.     After M.T. and K.C. were told to cut their hair or put up their hair, otherwise wear

dresses and be identified as girls, Ms. Woodley and Ms. Cox publicly criticized Tatum ISD's

hair policy and the enforcement of their hair policy on M.T. and K.C. Ms. Woodley and Ms.

Cox's publicly outcry garnered national new attention, and Ms. Woodley and Ms. Cox's protests

were followed daily by the local media.

132.     Ms. Woodley and Ms. Cox have good faith belief that Tatum ISD's actions were discriminatory.

133.     Shortly after Ms. Woodley and Ms. Cox protested Tatum ISD's school policy by sending M.T. and K.C. to school with their hair down, both M.T. and K.C. were placed in the principal's office, isolated from their classmates with minimal supervision, and given different instruction than they would have received in the classroom. Tatum ISD was aware of Ms. Woodley and Ms. Cox's complaints and the national attention their complaints made when taking their action on M.T. and K.C.

134.     Tatum ISD's retaliatory enforcement of its hair policy constitutes a violation of Title IX under color of state law.

135.     As a direct and proximate result of Tatum ISD's retaliatory enforcement of its hair policy, Ms. Woodley and Ms. Cox suffered and will continue to suffer compensable harm, including humiliation, emotional distress, and violations of their statutory rights, and are entitled to an order enjoining Defendants from retaliating against students' parents for critiquing school policies, damages, costs, and attorney's fees.

## EIGHTH CAUSE OF ACTION

### Violation of the Fourteenth Amendment's Due Process Clause
### Pursuant to 42 U.S.C. § 1983

136.     M.T. and K.C. bring this claim for violation of the Fourteenth Amendment rights against Tatum ISD, and all individual Defendants in their individual capacities, for depriving M.T. and K.C. of their rights without due process of law.

137.     Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

138.     The Fourteenth Amendment of the United States Constitution prohibits government from depriving a person of property without due process of law.

139.     Pursuant to 42 U.S.C. § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"

140.     The State of Texas created a property right of entitlement to public education by electing by statute to provide free public school education and to compel all youths under 18 years of age to attend school. *See Goss v. Lopez*, 419 U.S. 565 (1975). Specifically, the State of Texas elected to provide all youths with education meeting certain standards, including the opportunity to learn through instruction by certified teachers. Having been established, "the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Id*. at 574-75.

141.     Property rights are affected and due process protections are required when the discipline imposed on a student amounts to a deprivation of access to public education. *Riggan v. Midland Indep. Sch. Dist.*, 86 F. Supp. 2d 647, 655 (W.D. Tex. 2000). A student is effectively deprived of this property right when the government effectively denies the student satisfactory instruction and the opportunity to learn, thereby disadvantaging the student in the educational process. *See id.*

142.    In recognition of the important property rights implicated by access to public education, Section 37.005 of the Texas Education Code prohibits the government from excluding a student from regular public school classes by placing the student in in-school or out-of-school suspension for a period longer than three (3) days.

143.    Due process requires that the government provide students with notice and hearing before imposing disciplinary actions on a student that infringe on the student's right to access a public school education. *Goss*, 419 U.S. at 574-75. The government must provide a student with formal notice and hearing procedures prior to enforcing a disciplinary action that excludes a student from regular public school classes for more than a de minims period. *See id.* at 575.

144.    The requisite notice and hearing must comprise of a fundamentally fair procedure. *Davis v. Angelina Coll. Bd. of Trs.*, No. 9:17-CV-00179, 2008 WL 1011101, at *10 (E.D. Tex. June 1, 2018). Bias by the disciplinary authority can result in a fundamentally unfair procedure. *See id.*

145.    Defendants deprived M.T. and K.C. of the right of access to a public education without due process of law. Defendants excluded M.T. and K.C. from regular school classes for an extended period without providing Plaintiffs with instruction substantially similar to that which they would have received in a regular classroom.

146.    Defendants did not provide Plaintiffs with proper notice and hearing before imposing this disciplinary action. The grievance process that was afforded to M.T. and K.C. after they were placed in the principal's office isolated from their regular classroom and constructively expelled was impermissibly biased, as the factfinders and ultimate decision

33

makers were the same individuals who promulgated the discriminatory hair policy (the Board) and enforced such policy against M.T. and K.C. (the administrators).

147.    Defendants excluded M.T. and K.C. from their regular public school classes indefinitely – far longer than the Texas three day statutory maximum – without providing them with an educational program instructed by certified teachers or otherwise providing M.T. and K.C. with educational opportunities substantially equivalent to which they would have received in regular Tatum ISD classrooms. The disciplinary measures imposed by Defendants affected K.C. and M.T.'s property interest in the right to free public education that is statutorily guaranteed to all youths by the State of Texas that is protected by the Due Process Clause.

148.    In August 2019, at the beginning of the 2019-2020 school year, both M.T. and K.C. were told by Tatum ISD that they were out of compliance with the District's hair policy. When both M.T. and K.C. were uncomfortable wearing their hair up and preferred to wear their hair down to school, Tatum ISD placed both in the principal's office isolated and ostracized from their classroom and classmates. They both received little to no instruction initially, and would later receive instruction that was not the same as their classmates who were in the classroom. Tatum ISD continued to place M.T. and K.C. in the principal's office for more than three days with unequal instruction as their classmates.

149.    Defendants deprived M.T. and K.C. of their property interest in public school education for a period longer than three days.

150.    M.T. and K.C. were significantly disadvantaged in the educational process because Defendants excluded from their regular classes, or their equivalent, for an extended period longer than three days. Defendants deprived M.T. and K.C. of their property interest in a free public education without prior notice and hearing.

151.    Defendants were required to provide M.T. and K.C. with formal notice and hearing procedures prior to excluding them from Tatum ISD regular classes for over three days.

152.    Defendants failed to provide M.T. and K.C. with notice of their right to challenge the disciplinary action prior to excluding them from the classroom for violation of the hair policy. Defendants did not inform M.T. and K.C. of the disciplinary appeal, or "grievance" process until after M.T. and K.C. had been excluded from the educational setting. As a result, M.T. and K.C. submitted their grievances a couple weeks after they were excluded from the classroom. Defendants' failure to provide notice and hearing prior to depriving M.T. and K.C. of their right to public education was a violation of their due process protections.

153.    The grievance process was only afforded to M.T. and K.C. after they received discipline by being placed in the principal's office and constructively expelled.

154.    Defendants did not hold a hearing on M.T. and K.C.'s Level 3 grievance until October 23, 2019 – close to two months after M.T. and K.C. first were excluded from the classroom.

155.    In addition, the grievance procedure provided to M.T. and K.C. was impermissibly biased, as the factfinders and ultimate decision makers were the same individuals who promulgated the discriminatory hair policy (the Board) and enforced such policy against M.T. and K.C. (the administrators). Defendants therefore deprived M.T. and K.C. of their property rights of access to education without due process of law.

156.    By acting under color of state law to deprive M.T. and K.C. of their Fourteenth Amendment rights, Defendants have violated 42 U.S.C. § 1983.

157.    As a direct and proximate result of Defendants' deprivation of M.T. and K.C.'s property rights without due process of law, M.T. and K.C. have suffered and will continue to

suffer compensable harm, including violation of their Fourteenth Amendment rights, humiliation, and emotional distress, and violations of their constitutional rights, and are entitled to damages, costs and attorneys fees.

## NINTH CAUSE OF ACTION

**Violation of Texas Civil Practice and Remedies Code § 106.001**
**(Intentional Race Discrimination)**

158.     M.T. and K.C. bring this claim for race discrimination under Texas Civil Practice and Remedies Code § 106.001 against Tatum ISD, and all individual Defendants in their individual capacities, for the discriminatory construction and selective enforcement of Tatum ISD's 2019-2020 hair policy against M.T. and K.C.

159.     Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

160.     Texas law provides that an officer or employee of the state, or a political subdivision of the state, may not, because of person's race or color: (1) refuse to permit the person to use facilities; (2) refuse to permit the person from participating in a program managed by the state or political subdivision; (3) refuse to grant a benefit to the person; or (4) impose an unreasonable burden on the person. *See* Tex. Civ. Prac. & Rem. Code §§ 106.001(a)(3)-(6).

161.     M.T. and K.C. were both subject to the discriminatory enforcement of Tatum ISD's 2019-2020 hair policy because of their race and color. M.T. and K.C. were denied state facilities, state-operated programs, and benefits by being forced to sit isolated in the principal's office due to their natural Black hair. Defendants' actions of attempting to force M.T. and K.C. to cut their culturally significant hair and placing them in the principal's office isolated from their classmates imposed unreasonable burdens on the Plaintiffs.

162.     Before the Board instituted its current hair policy, Tatum ISD and the individual Defendants strictly monitored and enforced the hair policy against M.T. and K.C. without similarly monitoring and enforcing such policy against white male students.

163.     Defendants enforced the 2019-2020 hair policy against M.T. and K.C. and did not similarly enforce such policy as harshly or frequently against white male students.

164.     Defendants' enforcement prevented M.T. and K.C. from using state facilities and enjoying state-operated programs, such as the Region 7 Head Start Program. Defendants' punishment for growing culturally significant hair also imposed an unreasonable burden on M.T. and K.C. by forcing them to either cut their hair or sit isolated in the principal's office without the same instruction as their classmates were receiving in the classroom.

165.     As a direct and proximate result of Defendants' discriminatory construction and enforcement of Tatum ISD's 2019-2020 hair policy, M.T. and K.C. have suffered and will continue to suffer compensable harm, including humiliation, emotional distress, and violations of their statutory rights, and order enjoining Defendants from reinstituting the 2019-2020 Tatum ISD hair policy, an order expunging any disciplinary sanctions on Plaintiffs' school records related to the hair policy, costs, and attorneys' fees.

## TENTH CAUSE OF ACTION

### Violation of Texas Civil Practice and Remedies Code § 106.001
### (Sex Discrimination)

166.     M.T. and K.C. bring this claim for sex discrimination under Texas Civil Practice and Remedies Code § 106.001 against Tatum ISD and all individual Defendants in their individual capacities, for the enforcement of Tatum ISD's 2019-2020 hair policy against M.T. and K.C.

167.     Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

168.     Texas law provides that an officer or employee of the state, or a political subdivision of the state, may not, because of a person's sex: (1) refuse to permit the person to use facilities; (2) refuse to permit the person to participate in a program managed by the state or political subdivision; (3) refuse to grant a benefit to the person; or (4) impose an unreasonable burden on the person. *See* Tex. Civ. Prac. & Rem. Code §§ 106.001(a)(3)-(6).

169.     Tatum ISD's 2019-2020 hair policy on its face regulates male students' hair length but does not similarly regulate female students' hair length. Male students' violations can result in their exclusion from state facilities, state-operated programs, and benefits.

170.     Tatum ISD's 2019-2020 hair policy concerning length is expressly limited to males; Tatum ISD did not have similar restrictions for female students. Applying a hair-length restriction only to male students constitutes an illegal sex classification because such policy is impermissibly based on the stereotype that males have short hair and only females have long hair.

171.     M.T. and K.C. were subjected to the discriminatory enforcement of Tatum ISD's 2019-2020 hair policy because of their sex. M.T. and K.C. were denied state facilities, state-operated programs, and benefits by being forced to sit isolated in the principal's office due to their sex and natural Black hair. Tatum ISD's attempts to force M.T. and K.C. to cut their hair because of their sex and placing them in the principal's office and excluding them from the classroom imposed unreasonable burdens on the Plaintiffs.

172.    Before the Board implemented their current policy, Tatum ISD and the individual

Defendants strictly monitored and enforced the 2019-2020 hair policy against M.T. and K.C.

without similarly monitoring and enforcing such policy against female students.

173.    Defendants' policy and enforcement prevented M.T. and K.C. from using state

facilities and prevented them from enjoying state-operated programs, such as the Region 7 Head

Start Program. Tatum ISD's punishment of males for growing culturally significant uncut hair

also imposed an unreasonable burden on the Plaintiffs by forcing them to either cut their hair or

be deprived of regular classroom instruction.

174.    As a direct and proximate result of Defendants' discriminatory construction and

enforcement of Tatum ISD's 2019-2020 hair policy, M.T. and K.C. have suffered and will

continue to suffer compensable harm, including humiliation, emotional distress, and violations of

their statutory rights, and order enjoining Defendants from reinstituting the 2019-2020 Tatum

ISD hair policy, an order expunging any disciplinary sanctions on Plaintiffs' school records

related to the hair policy, costs, and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter the following relief:

(1) Judgement against the Defendants finding and declaring that the Defendants' actions violate Plaintiffs rights, and protected by the Fourteenth and First Amendments to the Constitution of the United States, and other applicable federal and state statutes;

(2) Order all appropriate injunctive relief as warranted, including but not limited to, ordering Defendants to never reinstituting the 2019-2020 hair policy and put in place policies and procedures to ensure that such discriminatory conduct does not recur;

(3) Order all disciplinary sanctions stemming from Tatum ISD's 2019-2020 hair policy expunged from M.T. and K.C.'s school record;

(4) Award Plaintiffs compensatory damages in an amount to be determined at trial, plus pre- and post-judgment interest;

(5) Award Plaintiffs nominal and punitive damages against all Defendants in an amount to be determined at trial; plus pre- and post-judgment interest;

(6) Award Plaintiffs reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and 29 U.S.C. § 794a; and

(7) Grant such other and further relief to Plaintiffs as the Court deems just and equitable.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues of facts and damages stated herein.

DATED:

Respectfully Submitted,


*Bradley T. Steele*
Brad Steele
LAW OFFICE OF BRADLEY STEELE, P.C
Texas Bar No. 19099350
1101 Judson Road
Longview, TX 75601
Tel: (903) 234-8844
Fax: (903) 234-8848
brad@bradsteelelaw.com


*Waukeen McCoy*
Waukeen McCoy*
MCCOY LAW FIRM, P.C.
California Bar No. 168228
111 Maiden Lane, 6th Floor
San Francisco, CA 94108
Tel: (415) 675-7705
Fax: (415) 675-2530
mail@mccoyslaw.com


*Pro Hac Vice Application Pending

40