**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| EDWINA WOODLEY, KAMBRY COX, §<br>§<br>    Plaintiffs, §<br>§<br>v. §<br>§<br>TATUM UNIFIED SCHOOL DISTRICT, *ET AL.*, §<br>§<br>    Defendants. §<br>§<br>§<br>§ | CIVIL ACTION NO.  2:21-CV-00364-RWS |

## <u>ORDER</u>

Before the Court is Defendants' Motion to Dismiss Plaintiffs' Civil Action Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1]  Docket No. 6.  Plaintiffs initiated this action against Defendants, alleging claims of race discrimination, sex discrimination, constitutional rights violations and retaliation.  Docket No. 1.  Plaintiffs oppose Defendants' motion.  Docket No. 9. The motion has been fully briefed.  Docket Nos. 6, 9, 10.  The Court held a hearing on the motion on April 21, 2022.  Docket No. 15.  For the reasons stated below, Defendants' Motion to Dismiss (Docket No. 6) is hereby **GRANTED-IN-PART** and **DENIED-IN-PART**.

## BACKGROUND

Plaintiffs allege that, in 2019, M.T. and K.C enrolled as Tatum ISD students.  Docket No. 1 at ¶¶ 33, 40.  M.T. and K.C. are African American males who were respectively four and five years old during the 2019 school year.  *Id.* at 4.  M.T. has shoulder length hair that he sometimes

---

[1] The named plaintiffs include Edwina Woodley, individually and on behalf of her minor grandson M.T., and Kambry Cox, individually and on behalf of her minor son K.C. (collectively, "Plaintiffs").  The named defendants include Tatum Independent School District ("Tatum ISD" or the "District") and its Board of Trustees (the "Board"), including the Board Members and Superintendent, in their individual capacities (collectively, "Defendants").

wears in braids.  *Id.* at ¶¶ 4, 35.  K.C. wears his hair in "dreadlocks that go down to his ears and past his eyebrows."  *Id.* at ¶ 4.  Plaintiffs contend that M.T. and K.C. wear "their hair down, in braids or in [dreadlocks] as an expression of their heritage[,] identity, and ethnicity," which Plaintiffs allege is a symbol "widely understood as a natural Black hair formation connected to Black identity and heritage."  *Id.* at ¶ 112.

Tatum ISD's Student Dress Code for the 2019–2020 school year included various hair and grooming regulations (the "hair and grooming policy").  This policy states, in pertinent part, that:

> Student's hair shall be clean and well groomed at all times and <u>shall not obstruct vision</u>.  No symbols, letters, or extreme designs cut in the hair shall be permitted. No ponytails, ducktails, rat-tails, male bun or puffballs shall be allowed on male students.  (In its unaltered state, hair cannot extend past shoulder length).  ALL male hair of any type SHALL NOT extend below the collar (t-shirt/button-down collar/Shoulder length).

Docket No. 1-1 at 2 (emphasis in original).  Plaintiffs allege that after M.T. and K.C. were enrolled in school, Plaintiff Woodley (M.T.'s grandmother) and Plaintiff Cox (K.C.'s mother) were informed that M.T. and K.C.'s "natural hair, hair length and/or style" did not comply with Tatum ISD's hair and grooming policy.  *Id.* at ¶¶ 34, 41.

Following this notice, M.T. and K.C. were repeatedly cited for noncompliance with the hair and grooming policy when they, for instance, wore their hair down, in braids or in ponytails. *Id.* at ¶¶ 35, 44.  M.T. attempted to wear his hair braided and pinned up, which did not violate the policy, but he stopped doing so because it was uncomfortable.  *Id.* at ¶ 35.  Plaintiffs Woodley and Cox inquired about the purpose for citing M.T. and K.C.'s noncompliance when their "natural hair would not affect [their] ability to get an education, and would not disrupt other students."  *Id.* at ¶ 34.  Plaintiffs allege they were simply informed that "it was the rules."  *Id.* at ¶ 42.

Plaintiffs further allege that M.T. and K.C. were continually placed in the principal's office for failing to comply with the hair and grooming policy.  *Id.* at ¶ 35.  Plaintiffs specifically allege

that the boys were placed in the principal's office by themselves without adequate supervision and with no school instruction.  *Id.*  Plaintiffs contend that M.T. and K.C. were not only isolated from their classmates, but they were also given different assignments.  *Id.* at ¶¶ 36, 45.  According to Plaintiffs, this isolation continued for days and weeks at a time.  *Id.*  Plaintiffs allege that Tatum ISD did not "similarly enforce such policy against white male students as frequently."  *Id.* at ¶ 68.

Plaintiffs Woodley and Cox then publicly protested the hair and grooming policy and its alleged discriminatory enforcement.  *Id.* at ¶¶ 37, 46.  Plaintiffs allege that Woodley, in particular, "received backlash from the local community in response."  *Id.*  Plaintiffs also allege that M.T. and K.C. were later unenrolled from Tatum ISD for "pretextual" reasons.  *Id.* at ¶¶ 38, 47.  M.T. was informed that he was never "properly enrolled."  *Id.* at ¶ 38.  And K.C. was informed that he was unenrolled because "he did not reside in the District."  *Id.* at ¶ 47.  Plaintiffs, however, allege that K.C.'s enrollment paperwork lists a Tatum, TX address where K.C.'s grandmother lived.  *Id.*

After their unenrollment, M.T. and K.C. filed grievances with Tatum ISD for race and gender discrimination.  *Id.* at ¶ 48.  The grievances were denied after a Level 3 hearing.  *Id.*  Plaintiffs further allege that, two days after the denial, Woodley "was arrested at her home for perjury and child endangerment charges stemming from M.T.'s enrollment with Tatum ISD," charges that were later dropped.  *Id.* at ¶ 49.  The next month, Tatum ISD's Superintendent recommended changes to its hair and grooming policy at a Board meeting.  *Id.* at ¶ 50.  The Assistant Superintendent specifically noted that the policy would be amended to remove "[a]nything that will single out any ethnic group."  *Id.*  The changes were approved.  *Id.* at ¶ 51.

Based on these facts, Plaintiffs filed this action.[2]  Docket No. 1.  Defendants now move to

---

[2] Plaintiffs' complaint asserts the following 10 claims against Defendants: three race discrimination claims alleging violations of the Fourteenth Amendment Equal Protection Clause ("Equal Protection Clause"), Title VI of Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d, and Section 106.001 of the Texas Civil Practice and Remedies Code ("Texas Law" or "state law"); three sex discrimination claims alleging violations of the Equal Protection Clause, Title

dismiss all of Plaintiffs' claims for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  *See, e.g.*, Docket No. 6 at 2–3.  Defendants further move to dismiss Plaintiffs Woodley and Cox's retaliation claims for lack of standing under Federal Rule of Civil Procedure 12(b)(1).  *Id.*  The Court now considers the merits of Defendants' motion.

## LEGAL STANDARD

### I.     Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the subject-matter jurisdiction of a federal court to hear a claim.  The party asserting jurisdiction bears the burden of proving that subject-matter jurisdiction exists.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  "A motion to dismiss for lack of subject-matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support" of his or her claims. *Sureshot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*, 754 F. App'x 235, 239 (5th Cir. 2018) (citing *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007)).

A motion to dismiss under Rule 12(b)(1) is properly granted "when the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).  Article III of the Constitution requires plaintiffs to establish standing in each cause of action they seek to assert in federal court.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  Constitutional standing has three requirements: (1) injury in fact, (2) causation and (3) redressability.  *Id.*  Injury in fact requires "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical . . . ."  *Id.* at 560.  Causation requires the plaintiff to show their alleged

---

IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, and Texas Law; two constitutional rights claims alleging violations of the 14th Amendment Due Process Clause and the First Amendment Right to Freedom of Speech and Freedom of Expression; and two retaliation claims alleging violations of the First Amendment Right to Freedom of Speech and Freedom of Expression and Title IX.  *See, generally*, Docket No. 1.

injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* Redressability requires "it [to] be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561.

## II.     Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal where a plaintiff fails "to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6).  For motions to dismiss under Rule 12(b)(6), a court must assume that all well-pleaded facts are true and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012).  The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

The Court must then decide whether those facts state a claim that is plausible on its face. *Bowlby*, 681 F.3d at 219.  The complaint need not contain detailed factual allegations, but plaintiffs must plead sufficient factual allegations to show that they are plausibly entitled to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (discussing *Twombly* and applying *Twombly* generally to civil actions pleaded under Rule 8).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

### I.        Race Discrimination Claims

#### A.        Equal Protection Clause

The parties dispute whether Plaintiffs' race discrimination claim under the Equal Protection Clause ("Equal Protection race discrimination claim") should be dismissed under Rule 12(b)(6). Docket No. 6 at 16–18; Docket No. 9 at 16–20.  The parties' dispute centers on three issues: (1) whether Tatum ISD can be held liable for any alleged discriminatory enforcement of its hair and grooming policy; (2) whether claims challenging the constitutional validity of a school district's hair regulation policy or alleging a corresponding violation of rights, as is the case here, are barred under Fifth Circuit precedent; and if not, (3) whether Plaintiffs pleaded sufficient facts to support their allegation that the Board created the policy for a racially discriminatory purpose.

Concerning the first issue, Defendants' argument relies on the Supreme Court's holding in *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), regarding municipality liability in civil rights actions.  Docket No. 6 at 16.  In *Monell*, the Supreme Court found that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694.  Instead, it is when execution of a government's policy or custom … inflicts the injury that the government as an entity is responsible under § 1983." *Id.*  As an initial matter, Plaintiffs' claims allege two forms of wrongdoing relating to Tatum ISD's hair and grooming policy.  *See, e.g.*, Docket No. 1 at ¶¶ 58, 66–68.  First, that the policy itself is unconstitutionally discriminatory.  *Id.*  Second, that the policy was being enforced in a discriminatory manner. *Id.*

Regarding the hair and grooming policy's enforcement, Defendants contend that, under *Monell*, Plaintiffs' claims against Tatum ISD are improper because the alleged injury was caused

by "unknown District employees" and not Tatum ISD itself.  Docket No. 6 at 17.  Plaintiffs presented no countervailing caselaw, or otherwise attempted to rebut Defendants' argument, in response.  The Court finds that *Gonzalez v. Ysleta Independent School District* is instructive on this issue.  996 F.2d 745 (5th Cir. 1993).  As the Fifth Circuit explained in *Gonzalez*, *Monell* and its progeny involved circumstances where the policy or "the policymaker's decision directly ordered the action found to be unconstitutional."  *Id.* at 754.  Put simply, the challenged policy "not only led to a constitutional violation, but *compelled* it."  *Id.* (emphasis in original).

Tatum ISD can, therefore, be held liable for its employees' actions if its hair and grooming policy compelled its employees to discriminate against African American male students in the District.  Here, Tatum ISD's hair and grooming policy can be enforced in a racially neutral manner.[3]  Docket No. 1-1 at 2.  Accordingly, it does not compel discrimination.  And, as a result, Tatum ISD cannot be sued under § 1983 for any alleged discriminatory enforcement by its employees.  Hence, the next issue is whether the hair and grooming policy itself is unconstitutional, which leads to the second and third issues raised by the parties.

Concerning the second issue—whether Fifth Circuit precedent bars Plaintiffs' claims challenging the constitutionality of Tatum ISD's hair and grooming policy, the parties' arguments primarily focus on the Fifth Circuit's holding in *Karr v. Schmidt*, 460 F.2d 609 (5th Cir. 1972).  In *Karr*, the Fifth Circuit held that a school district's hair regulation policy may be per se constitutional.  *Id.* at 613, 617–18; *see also* Docket No. 6 at 14–15.  And "where a complaint *merely* alleges the constitutional invalidity of a … school hair and grooming regulation," the

---

[3] For example, the policy prohibits hairstyles such as "ponytails, ducktails, rat-tails, male bun[s] or puffballs."  Docket No. 1-1 at 2.  While the Court acknowledges that "puffballs," which are equivalent to an afro-ponytail or bun, are predominately worn by people of African descent, the policy's exclusion of ponytails and male buns effectively prohibits similar hairstyles that may be worn by *either* non-minority or minority male students.  The policy also states that "[i]n its unaltered state, hair cannot extend past shoulder length."  *Id.*  Again, this regulation may be violated by both non-minority and minority male students.

complaint should be subject to immediate dismissal. *Karr*, 460 F.2d at 613, 617–18 (emphasis added). The Fifth Circuit, however, expressly announced its per se rule in the context of regulations that are subject to a "very minimal standard of judicial review"—*i.e.*, rational basis review. *Id.* at 617–18.

To that end, the *Karr* court explicitly noted that "federal courts [are still] permitted to entertain an action alleging discriminatory enforcement of a grooming code," as is the case here. *Id.* at 617 n.26. And it further distinguished the classification at issue from suspect classes that require a heightened level of scrutiny. *Id.* at 616 (noting that "this classification is not based on the 'suspect' criterion of race or wealth which would require application of the 'rigorous' standard of equal protection scrutiny."). Thus, assuming arguendo that *Karr* does not wholesale prohibit equal protection claims, determining whether a plaintiff's equal protection claim is permissible inevitably requires determining whether the claim is subject to rational basis review or a heightened level of scrutiny.

The Fifth Circuit has articulated the following standard for assessing the scrutiny level applicable to equal protection race discrimination claims:

> In assessing Fourteenth Amendment equal protection challenges, the Supreme Court holds that "[a]ll racial classifications imposed by the government 'must be analyzed by a reviewing court under strict scrutiny.'" This is because a "racial classification, regardless of purported motivation, is presumptively invalid and can be upheld only upon an extraordinary justification." Strict scrutiny also applies to government action that is "ostensibly neutral," but only if the neutral law has a "disproportionately adverse effect" that "can be traced to a discriminatory purpose."
>
> If the government is found to have acted with a discriminatory purpose, strict scrutiny review places the burden on the government to prove that its actions are narrowly tailored to achieve a compelling government interest. Absent a discriminatory purpose, its action is reviewed under the rational basis test.

*Lewis v. Ascension Par. Sch. Bd.*, 662 F.3d 343, 348 (5th Cir. 2011).[4]  As explained above, Tatum ISD's hair and grooming policy is facially neutral.  And Plaintiffs further pleaded that the policy disproportionally targets black male students.  Docket No. 1 at ¶ 1.  Thus, to avail themselves of a strict scrutiny analysis and thereby avoid application of *Karr*'s per se rule, Plaintiffs must sufficiently plead that the Board acted with a discriminatory purpose.

Here, Defendants' argument that Plaintiffs relied on only naked assertions to establish a discriminatory motive is without merit.  *See, e.g.*, *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citations omitted) ("Although 'naked allegation[s]' of discriminatory intent are too conclusory to survive a motion to dismiss, discriminatory motive may be—and commonly is—demonstrated by circumstantial evidence.  [Thus, an] allegation that similarly situated non-minorities received better treatment 'could create the necessary inference and set the predicate for establishing' a [civil rights] claim.").  Plaintiffs' allegations may, therefore, create such an inference.  *See, e.g.*, Docket No. 1 at ¶ 68 ("Tatum ISD enforced [its hair and grooming policy] against M.T. and K.C. Tatum and did not similarly enforce such policy against white male students as frequently.").

Plaintiffs' claims are, however, still fundamentally flawed for reasons explained above.  Namely, Plaintiffs' complaint alleges the discriminatory enforcement of Tatum ISD's hair and grooming policy by unnamed employees, as opposed to alleging specific actions the Board took to treat M.T. and K.C.  differently than similarly situated non-minority students.  As the Court previously explained, liability cannot be imputed to Tatum ISD if its employees enforced the hair

---

[4] First citing *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003) (quoting *Adarand Constructors, Inc., v. Pena*, 515 U.S. 200, 227 (1995); then *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979); and then *Gratz v. Bollinger*, 539 U.S. 244, 270 (2003).

and grooming policy in a discriminatory manner.   And Plaintiffs have not named any such employees as defendants in this cause of action.  *See, e.g.*, Docket No. 1 at ¶ 15–23.

Thus, Plaintiffs cannot demonstrate that Tatum ISD—the decisionmaker—possessed a discriminatory purpose on this basis.[5]  *See Anokwuru v. City of Houston*, 990 F.3d 956, 965 (5th Cir. 2021) ("To establish discriminatory intent, a plaintiff must show that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group."); *see also Body by Cook*, 869 F.3d at 387 (finding plaintiffs failed to plead discriminatory intent upon failing to identify which defendant discriminated against them or specific instances where they were treated worse than similarly situated non-minority entities).

Accordingly, Defendants' motion to dismiss Plaintiffs' Equal Protection race discrimination claim is **GRANTED**.

### B.  Title VI

The parties dispute whether Plaintiffs' Title VI race discrimination claim should be dismissed under Rule 12(b)(6).  Docket No. 6 at 18–19; Docket No. 9 at 16–20.  Section 601 of Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. §

---

[5] The Court acknowledges Plaintiffs' attempt to plead contextual facts concerning the Tatum ISD's subsequent amendments to its hair and grooming policy; but such facts do not, for example, set forth any sequence of events that may demonstrate the District's discriminatory motive for creating the challenged policy.  *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977) ("The specific sequence of events leading up to the challenged decision also may shed some light on the decisionmaker's purposes.") (citations omitted); *see also* Docket No. 1 at ¶¶ 50–52.

2000d.  The statute "prohibits only intentional discrimination." *Bhombal v. Irving Indep. Sch. Dist.*, 809 F. App'x 233, 236 (5th Cir. 2020) (citations omitted).

Here, the parties primarily rely on the same facts and arguments set forth for the discriminatory purpose or intent element of Plaintiffs' Equal Protection race discrimination claim. *See, e.g.*, Docket No. 6 at 18–19; Docket No. 9 at 16–20.  Accordingly, Defendants' motion to dismiss Plaintiffs' Title VI race discrimination claim, under Rule 12(b)(6), is **GRANTED** for the same reasons stated above.  *See supra* Part I.A.

### C.  State Law

The parties dispute whether Plaintiffs' state law race discrimination claim should be dismissed under Rule 12(b)(6).  Docket No. 6 at 23–24; Docket No. 9 at 15–16.  The parties' dispute primarily centers on whether Texas Supreme Court precedent precludes enjoining the enforcement of a school's hair and grooming policy under Section 106.001 of the Texas Civil Practice and Remedies Code.  The Court resolves this question in Defendants' favor.

Federal courts must apply substantive state law when adjudicating state law claims. *Herbert v. Wal-Mart Stores, Inc.*, 911 F.2d 1044, 1047 (5th Cir. 1990).  Plaintiffs' race discrimination claim is, therefore, a matter of substantive state law.  And, as Defendants correctly note, the Texas Supreme Court has expressly stated that "it is abundantly clear … that [Section 106.001] was never intended to prohibit the adoption and enforcement of grooming standards by schools." *Bd. of Trs. of Bastrop Indep. Sch. Dist. v. Toungate*, 958 S.W.2d 365, 368 (Tex. 1997).  Plaintiffs' argument that their claims are distinguishable from *Toungate* is without merit.  As the *Toungate* court noted, "[t]he fact that criminal penalties are associated with violations of [S]ection 106.001 weighs heavily against construing it to prohibit school officials from enforcing dress codes." *Id.* at 370.  The mere fact that the *Toungate* plaintiff was taught by

a substitute teacher, as opposed to being placed in the principal's office as M.T. and K.C. were, is insufficient to rebut such a clear declaration by the Texas Supreme Court.[6]  Docket No. 9 at 16.

Accordingly, Defendants' motion to dismiss Plaintiffs' state law race discrimination claim, under Rule 12(b)(6), is hereby **GRANTED**.

## II.     Sex Discrimination Claims

### A.     Equal Protection Clause

The parties dispute whether Plaintiffs' sex discrimination claim under the Equal Protection Clause ("Equal Protection sex discrimination claim") should be dismissed under Rule 12(b)(6). Docket No. 6 at 10, 13–16; Docket No. 9 at 13–15.  The parties' dispute centers on issues previously discussed in relation to Plaintiffs' Equal Protection race discrimination claim—*i.e.*, (1) whether Tatum ISD can be held liable for any alleged discriminatory enforcement of its hair and grooming policy and (2) whether claims either challenging the constitutional validity of a school district's hair regulation policy, or alleging a corresponding violation of rights, are barred under Fifth Circuit precedent.  As previously explained, first, Tatum ISD cannot be sued under Section 1983 for any alleged discriminatory enforcement by its employees; and second, assuming arguendo that *Karr* does not wholesale prohibit equal protection claims, determining whether a plaintiff's equal protection claim is permissible inevitably requires determining whether the claim is subject to a heightened level of scrutiny.  *See supra* Part I.A.

For claims concerning gender-based classifications, the Supreme Court has succinctly answered this question: "all gender-based classifications today warrant heightened scrutiny."

---

[6] Even presuming such claims were permissible, Plaintiffs' state law race discrimination claim would nonetheless be subject to dismissal because Plaintiffs failed to plead sufficient factual allegations to show that the Board created the hair and grooming policy for a discriminatory purpose.  *See supra* Part I.A.

*United States v. Virginia*, 518 U.S. 515, 555 (1996) (citations and quotation marks omitted).[7] Unlike race discrimination claims, however, "[a] plaintiff who claims that a governmental classification explicitly based on sex violates the Equal Protection Clause … does not have to show discriminatory intent.  Instead, courts are to apply intermediate scrutiny."  *Doe ex rel. Doe v. Vermilion Par. Sch. Bd.*, 421 F. App'x 366, 372 (5th Cir. 2011) (citations omitted).  Intermediate scrutiny requires "[p]arties who seek to defend gender-based government action [to] demonstrate an 'exceedingly persuasive justification' for that action."  *Virginia*, 518 U.S. at 531.

Here, the challenged hair-length regulation only applies to male students.  *See, e.g.*, Docket No. 1 at ¶ 1-1 at 2 (specifying that the listed hairstyles are not "allowed on male students" and limiting the hair-length regulation to "male hair").  Thus, intermediate scrutiny applies.  To survive intermediate scrutiny, Tatum ISD must at least show that its gender-based hair and grooming policy serves important governmental objectives and that the discriminatory means employed are substantially related to achieving those objectives.  *See Virginia*, 518 U.S. at 533.  "The justification must be genuine, not hypothesized or invented *post hoc* in response to litigation.  And it must not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females."  *Virginia*, 518 U.S. at 516 (citation omitted).

---

[7] Defendants' argument regarding the inapplicability of *Virginia* is unpersuasive.  First, the Supreme Court's holding is clear: "all gender-based classifications today warrant heightened scrutiny."  *See Virginia*, 518 U.S. at 555; *see also* Docket No. 10 at 3.  Second, there is no tension between *Karr* and *Virginia* because the *Karr* court did not address questions concerning gender-based classifications between men and women.  *Karr*, 460 F.2d at 616 (explaining that the question before the court concerned whether "*as between male students*, any classification based upon hair length contravenes the Equal Protection guarantee.") (emphasis added).  Furthermore, *Karr* noted that "grooming regulations are subject to the requirement that they not be wholly arbitrary.  Thus, [the Fifth Circuit's] rule of per se validity would not apply to a regulation which had an arbitrary effect."  *Karr*, 460 F.2d at 618.  Here, Plaintiffs allege Tatum ISD's hair and grooming policy is "wholly arbitrary because there was no legitimate, important, and substantial reason to permit female students to wear their hair long when male students are not so permitted."  Docket No. 1 at ¶ 104.  Thus, *Karr* does not bar Plaintiffs' Equal Protection sex discrimination claim for these additional reasons.

Accordingly, the Court must first "hear and consider [Tatum ISD's] justifications before deciding, as a matter of law, whether the District's justifications survive the applicable level of scrutiny." *Sturgis v. Copiah Cnty. Sch. Dist.*, No. 3:10-CV-455-DPJ-FKB, 2011 WL 4351355, at *2 (S.D. Miss. Sept. 15, 2011) (denying defendants' motion to dismiss plaintiff's gender-based equal protection claim because "the decision should be made on a more complete record."); *see also Fenceroy v. Morehouse Par. Sch. Bd.*, No. CIV.A. 05-0480, 2005 WL 1968442, at *4 (W.D. La. Aug. 15, 2005) ("[T]he question is … whether there is an important and substantial reason girls are permitted to wear their hair in braids, but boys are not.  Because review of a motion to dismiss is confined to the pleadings, the School Board has provided no reason for its dress code, and, even if it had, the Court could not inquire into the soundness of that reason.").

Defendants' motion to dismiss Plaintiffs' Equal Protection sex discrimination claim is therefore **DENIED** as premature.

### B.  Title IX

The parties dispute whether Plaintiffs' Title IX sex discrimination claim should be dismissed under Rule 12(b)(6). *See, e.g.*, Docket No. 6 at 20; Docket No. 9 at 15.  To support their positions, the parties, in part, rely on the same facts and arguments set forth for Plaintiffs' Equal Protection sex discrimination claim.  *See, e.g.*, Docket No. 6 at 20; Docket No. 9 at 15–16. Accordingly, Defendants' motion to dismiss Plaintiffs' Title IX sex discrimination claim, under Rule 12(b)(6), is hereby **DENIED** for the same reasons stated above.  *See supra* Part II.A.

### C.  State Law

The parties dispute whether Plaintiffs' state law sex discrimination claim should be dismissed under Rule 12(b)(6). *See, e.g.*, Docket No. 6 at 15–17; Docket No. 9 at 12–13, 23–25. To support their positions, the parties, in part, rely on the same facts and arguments set forth for

Plaintiffs' state law race discrimination claim.  *See, e.g.*, Docket No. 6 at 15–16; Docket No. 9 at 24–25.  Accordingly, Defendants' motion to dismiss Plaintiffs' state law sex discrimination claim, under Rule 12(b)(6), is hereby **GRANTED** for the same reasons stated above.  *See supra* Part I.C.

## III.     Constitutional Rights Violations

The parties dispute whether Plaintiffs' constitutional rights claims, which allege violations of the First Amendment Right to Freedom of Speech and the Fourteenth Amendment Due Process Clause, should be dismissed under Rule 12(b)(6).  Docket No. 6 at 19–23; Docket No. 9 at 20–21. The Court addresses each constitutional rights claim in turn.

### A.  First Amendment Rights to Freedom of Speech and Expression

The First Amendment prohibits the enactment of laws "abridging the freedom of speech." U.S. CONST. amend. I.  Accordingly, the government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content."  *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972).  "The Supreme Court recognizes that conduct coupled with communicative content raises First Amendment concerns."  *Canady v. Bossier Par. Sch. Bd.*, 240 F.3d 437, 440 (5th Cir. 2001).  The parties' dispute therefore centers on two issues: (1) whether Fifth Circuit precedent precludes First Amendment claims concerning students' hairstyles as an exercise of free expression; and if not, (2) whether M.T. and K.C.'s hairstyles are sufficiently communicative to warrant First Amendment protection.  Docket No. 6 at 19–20; Docket No. 9 at 20.

Unlike race and sex Equal Protection claims, *Karr* explicitly addresses First Amendment claims concerning a student's "right to style one's hair as one pleases in the public schools."  *Karr*, 460 F.2d at 614.  While the *Karr* court expressed doubt as to whether "the wearing of long hair has sufficient communicative content to entitle it to the protection of the First Amendment," it nonetheless acknowledged that "[f]or some, no doubt, the wearing of long hair is intended to

convey a discrete message to the world." *Id.* at 613.  To that end, courts have recognized that "[v]isibly wearing one's hair in a particular manner is capable of communicating one's religion or heritage." *Gonzales v. Mathis Indep. Sch. Dist.*, No. 2:18-CV-43, 2018 WL 6804595, at *7 (S.D. Tex. Dec. 27, 2018); *see also Arnold v. Barbers Hill Indep. Sch. Dist.*, 479 F. Supp. 3d 511, 528 (S.D. Tex. 2020) (citing *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 701 F. Supp. 2d 863, 882 (S.D. Tex. 2009) ("[Plaintiff's] braids convey a particularized message of his Native American heritage and religion."), *aff'd*, 611 F.3d 248, 264 (5th Cir. 2010)).  And in *Canady*, the Fifth Circuit rejected the assertion that "hair style never warrants First Amendment protection." 240 F.3d at 440 n.1.  It also found that protected speech may include acts such as wearing "clothing [that] symbolize[s] ethnic heritage, religious beliefs, and political and social views." *Id.* at 441–42.[8]

Here, Plaintiffs allege that "M.T. and K.C. wear their hair down, in braids or in [dreadlocks] as an expression of their heritage identity, and ethnicity—a symbol of widely understood as a natural Black hair formation connected to Black identity and heritage."  Docket No. 1 at ¶ 112. Thus, the Court must assess their claims under the framework of *United States v. O'Brien*, 391 U.S. 367, 377 (1968), which relates to content-neutral restrictions on expressive activities. *See Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 285 (5th Cir. 2001) (following the reasoning of the *Canady* court, which adopted the *O'Brien* test).

When examining content-neutral restrictions on expressive activities, the Court must determine whether: (1) the restriction is within the Constitutional power of the government; (2)

---

[8] The Fifth Circuit's recognition that wearing clothing can constitute protected expression is significant.  Namely, the Fifth Circuit has opined that regulations that restrict one's hair as opposed to "a personal effect—like a knife or a rosary … [are] arguably even more intrusive."  *Betenbaugh*, 611 F.3d at 266.  Thus, if a less-intrusive form of expression such as wearing clothing that symbolizes ethnic heritage is protected, it follows that wearing hairstyles that symbolize ethnic heritage would also warrant First Amendment protection.

the restriction furthers an important or substantial governmental interest; (3) the government's important or substantial interest is unrelated to the suppression of student expression; and (4) the incidental restrictions on First Amendment activities are no more than is necessary to facilitate the government's important or substantial interest. *Littlefield*, 268 F.3d at 286. As discussed above, on the current record, the Court is unable to assess Tatum ISD's important or substantial governmental interest for promulgating its hair and grooming policy. *See supra* Part II.A.

Accordingly, Defendants' motion to dismiss Plaintiffs' First Amendment claim under Rule 12(b)(6) is hereby **DENIED** as premature for the same reasons stated above. *See supra* Part II.A.

### B.  Fourteenth Amendment Due Process Clause

The Fourteenth Amendment Due Process Clause prevents states from depriving a person of life, liberty or property without due process of law. U.S. CONST. amend. XIV, § 1. To prove a violation of the Due Process Clause under Section 1983, plaintiffs "must show that they have asserted a recognized 'liberty or property' interest within the purview of the Fourteenth Amendment, and that they were intentionally or recklessly deprived of that interest, even temporarily, under color of state law." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994) (citation omitted). Property interests are created by state laws that entitle citizens to certain benefits. *See Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Texas state laws entitle school-age children to a free public education. *Riggan v. Midland Indep. Sch. Dist.*, 86 F. Supp. 2d 647, 654 (W.D. Tex. 2000).

The Supreme Court has recognized that students have a protected property interest in education that requires minimum due process protections before disciplinary suspensions are imposed. *See, generally*, *Goss v. Lopez*, 419 U.S. 565 (1975). Here, the disputed issue is whether

this property interest is implicated when a school district sends a student to the principal's office for violating a school policy.  Docket No. 6 at 21–23; Docket No. 9 at 20–21.  Under *Goss*,

> [T]he property interest which is protected by the Due Process Clause is the right to participate in the overall educational process, not the right to participate in each individual component of that process.  Accordingly, it is only when a student is excluded from the entire educational system that due process must be afforded.

*Jeffrey v. Bd. of Trs. of Bells ISD*, 261 F. Supp. 2d 719, 726 (E.D. Tex. 2003), *aff'd*, 96 F. App'x 248 (5th Cir. 2004) (citing *Goss*, 419 U.S. at 574).

Plaintiffs assert that Tatum ISD's disciplinary decisions squarely implicate M.T. and K.C.'s property interest in an education because they were excluded from classroom instruction. Docket No. 9 at 21.  Plaintiffs rely on *Riggan* to assert the proposition that " '[t]he primary thrust of the educational process is classroom instruction;' therefore minimum due process procedures may be required if an exclusion from the classroom would effectively deprive the student of instruction or the opportunity to learn."  *Riggan*, 86 F. Supp. 2d at 655 (citation omitted).

This premise is, however, derived from *Cole By & Through Cole v. Newton Special Mun. Separate Sch. Dist.*, 676 F. Supp. 749, 752 (S.D. Miss. 1987)—an opinion that the Fifth Circuit later expressly rejected.  *Esparza v. Bd. of Trs.*, 182 F.3d 915, 915 n.9 (5th Cir. 1999) ("The plaintiffs seek authority in [*Cole*], which stated in *dictum* that an in-school suspension could be construed as a deprivation of education.  We decline to rely on this non-binding authority, especially in light of more recent, binding precedent by a panel of this court in [*Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 27 (5th Cir. 1997)].").  Plaintiffs offer no countervailing caselaw that otherwise suggests M.T. and K.C.'s placement in the principal's office violates their right to an education.

Accordingly, Defendants' motion to dismiss Plaintiffs' Fourteenth Amendment Due Process claim, under Rule 12(b)(6), is **GRANTED.**

## IV.    Retaliation Claims

The parties dispute whether Plaintiffs Woodley and Cox's claims alleging retaliation in violation of the First Amendment Right to Free Speech and in violation of Title IX should be dismissed under Rule 12(b)(1) for lack of standing.  *See* Docket No. 6 at 25–28; Docket No. 9 at 21–23.  The parties also dispute whether Woodley and Cox's First Amendment retaliation claim should be further dismissed under Rule 12(b)(6).  *See, e.g.*, Docket No. 6 at 25–26; Docket No. 9 at 21–23. The Court addresses each retaliation claim in turn.  As an initial matter, Plaintiffs assert that both Woodley and Cox engaged in constitutionally protected speech when they protested Tatum ISD's student dress code policy.   Docket No. 1 at ¶¶ 122–27.  Plaintiffs allege that Defendants later retaliated against M.T. and K.C. as a result.  *Id.*  at ¶¶ 124–25.  Plaintiffs also allege that Defendants further retaliated against Woodley, personally, when they made criminal allegations that led to her arrest.  *Id.* at ¶ 123.

### A.  Plaintiffs Woodley and Cox's First Amendment Retaliation Claim

To state a First Amendment retaliation claim, a plaintiff must show that (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity and (3) the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct.  *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).  The parties' dispute, therefore, centers on two issues: (1) whether a parent has standing to bring retaliation claims based on a violation of their personal constitutional rights and a subsequent injury to their child; and (2) whether Woodley adequately pleaded that Defendants' actions caused her to suffer an injury.

Concerning the first issue, the parties each rely on authority that is not factually analogous to the present facts.  First, the parties' cited cases do not address retaliation claims.  And second, the cited cases involve circumstances where a parent brought a claim in their personal capacity when their child both engaged in a constitutionally protected activity and suffered a corresponding injury,[9] or the parent both engaged in the constitutionally protected activity and suffered a corresponding injury.[10]  Here, the present circumstances give rise to a hybrid version of these fact patterns.  Namely, the complaint asserts that a grandparent (Woodley) or parent (Cox) engaged in a constitutionally protected activity—*i.e.*, protesting Tatum ISD's hair and grooming policy—and their children (M.T. and K.C.) suffered the corresponding injury.

Thus, the underlying question is whether a child's injury can be imputed to their parent (or grandparent) for purposes of establishing the parents' personal retaliation claim.  The parties failed to present any authority that affirmatively answers this precise question.  Absent such authority, the Court finds that *Littlefield* is most instructive.  268 F.3d 275 (5th Cir. 2001).  As the Fifth Circuit explained in *Littlefield*, "each subset of [plaintiffs] has standing only to challenge the particular legal claim for which that subset can demonstrate injury, causation, and redressability." *Id.* at n.7.  Because Plaintiffs Woodley and Cox failed to demonstrate a personal injury based on M.T. and K.C.'s alleged injuries, they cannot establish standing on this basis.

And although Plaintiff Woodley did allege a personal injury, her right to standing nevertheless fails because she did not allege that her injury was caused by Defendants.  Plaintiffs'

---

[9] *See, e.g.*, *Landry v. Cypress Fairbanks ISD*, No. 4:17-CV-3004, 2018 WL 3436971, at *1 (S.D. Tex. July 17, 2018) (denying a parent's personal claim where her daughter refused to stand for the pledge of allegiance and was subsequently expelled).

[10] *See Littlefield*, 268 F.3d at 284 (5th Cir. 2001) (allowing a parent's personal claim where the parents alleged a deprivation of "the fundamental right of parents to make decisions concerning the care, custody, and control of their children.").

responsive brief asserts that Woodley adequately alleged an injury caused by Defendants because "Tatum ISD was the actor who caused [law enforcement officers to wrongfully arrest her]" and "the officer who wrote the probable cause statement is married to a Tatum ISD employee."  Docket No. 9 at 22.  The Court, however, declines to consider these facts because they are not alleged in Plaintiffs' Complaint.  *Leal v. McHugh*, 731 F.3d 405, 407 n.2 (5th Cir. 2013) (declining to consider "additional facts [asserted in appellant's brief and] not contained in the First Amended Complaint" when assessing the merits of appellant's motion to dismiss); *see also* Docket No. 1 at ¶¶ 119–27.  And, even assuming arguendo that Plaintiffs had pleaded such facts, it would be insufficient to support Woodley's First Amendment retaliation claim.  *Colson v. Grohman*, 174 F.3d 498, 500 (5th Cir. 1999) (finding that "the making of false accusations … is not actionable under § 1983.").  Plaintiff Woodley fails to establish standing for this additional reason.

Accordingly, Defendants' motion to dismiss Plaintiffs Woodley and Cox's First Amendment retaliation claim, under Rule 12(b)(1), is hereby **GRANTED**.  And having found that Plaintiffs Woodley and Cox failed to plead sufficient factual allegations to show that Defendants' actions caused them to suffer an injury, Defendants' motion to dismiss Woodley and Cox's First Amendment retaliation claim under Rule 12(b)(6) is **GRANTED** for the same reasons.

### B. Plaintiffs Woodley and Cox's Title IX Retaliation Claim

Regarding Plaintiffs Woodley and Cox's Title IX retaliation claim, the parties dispute two issues—(1) whether Title IX provides parents with a personal retaliation claim and (2) whether a Title IX retaliation claimant must be a student or an employee entitled to receive a benefit of the school's educational offerings.  *See* Docket No. 6 at 27–28; Docket No. 9 at 23–24.  The Court first addresses Defendants' argument that parents do not have standing to assert personal claims

under Title IX.  Defendants specifically rely on *Rowinsky v. Bryan Independent School District*

for the following proposition:

> [N]othing in the statutory language provides [a parent] with a personal claim under title
> IX.  Even assuming that title IX protects persons other than students and employees,
> [plaintiff] has failed [to] assert that she was excluded from participation, denied the benefits
> of, or subjected to discrimination under any education program or activity. Absent such a
> claim, the plain language of title IX does not support a cause of action by [plaintiff].

80 F.3d 1006, 1009–10 n.4 (5th Cir. 1996).  While Defendants correctly state the Fifth Circuit's

holding, their reliance on *Rowinsky* is nonetheless misplaced.  Unlike the *Rowinsky* plaintiff,

Plaintiffs Woodley and Cox are asserting a personal Title IX *retaliation* claim, not a personal Title

IX *discrimination* claim.  *Id.*  A Title IX retaliation claim is distinct from a traditional Title IX

discrimination claim.  *See generally*, *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005).

As the Supreme Court recognized in *Jackson*, Title IX encompasses retaliation claims for

individuals who have complained about sex discrimination.  *Id.* at 171.  And even before *Jackson*,

the Fifth Circuit similarly held that "the fact that [a plaintiff] would not have standing to assert a

[Title IX] discrimination claim on behalf of [a third party] does not deprive her of standing to

assert a personal retaliation claim."  *See Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 251

(5th Cir. 1997).  Thus, Defendants' argument that Plaintiffs lack standing to bring their retaliation

claim merely because "Title IX does not provide a parent with a personal claim" is without merit.

*See, e.g.*, Docket No. 6 at 11.

The remaining issue is, therefore, whether a Title IX retaliation claimant must be entitled

to receive a benefit from the school accused of retaliation, and courts are split on this issue.[11]  But

---

[11] *Compare Douglass v. Garden City Cmty. Coll.*, 543 F. Supp. 3d 1043, 1054 (D. Kan. 2021) ("In the context of Title IX retaliation, plaintiff is not required to plead that she is a … student or faculty member. Title IX's enforcement scheme depends on individual reporting and accordingly protects from retaliation individuals who witness and report discrimination.") (citing *Jackson*, 544 U.S. at 180–81), *and Jones v. Beverly Hills Unified Sch. Dist.*, No. WDCV 08-7201JFWPJW, 2010 WL 1222016, at *3 (C.D. Cal. Mar. 24, 2010) ("[Plaintiff] need not be a member of the protected class to bring a retaliation claim under Title IX"), *report and recommendation adopted*, No. WDCV 08-7201JFWPJW, 2010 WL 1222023 (C.D. Cal. Mar. 25, 2010), *with Conviser v. DePaul Univ.*, 532 F. Supp. 3d 581, 588 (N.D. Ill.

courts within the Fifth Circuit have held that such a requirement does not exist, and parents who are neither students nor employees have standing to bring Title IX retaliation claims.  *See, e.g.*, *Alice L. v. Eanes Indep. Sch. Dist.*, No. A-06-CA-944-SS, 2007 WL 9710281, at *6 (W.D. Tex. Dec. 18, 2007) (finding a parent had standing to bring a Title IX retaliation claim upon alleging the school district "retaliated against her for bringing a grievance regarding the abuse of [her daughter]").  As was clearly stated in *Jackson*, "extending the implied cause of action under Title IX to claims of retaliation expands the class of people the statute protects beyond the specified beneficiaries"—*i.e.*, beyond persons entitled to a benefit of the education program receiving Federal Financial assistance.[12]  *Jackson*, 544 U.S. at 194 (Thomas, J., dissenting).

The Court will therefore analyze Plaintiffs Woodley and Cox's Title IX retaliation claim under the standard expressly articulated by the Supreme Court.  *Jackson*, 544 U.S. at 169 ("To prevail on the merits, [Plaintiffs] will have to prove that the Board retaliated against [them] *because* [they] complained of sex discrimination") (emphasis in original).  At the motion to dismiss stage, the issue is not whether Plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims.  *Id.*  Assuming arguendo that Plaintiffs Woodley and Cox have adequately pleaded that they complained of sex discrimination, Plaintiffs' Title IX retaliation claim nonetheless suffers from a fundamental flaw.  As discussed above, Plaintiffs failed to plead that the Board retaliated against them and thereby caused their injury; rather, they plead that the Board retaliated against their children, M.T. and K.C.  *See supra* Part IV.A.

---

2021) (noting that "a plaintiff must assert not only that the defendant provided educational programs or activities, but also that the plaintiff was denied access to or participation in those programs or activities.").

[12] On its face, Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  Title IX, Education Amendments of 1972, 20 U.S.C. § 1681(a).

Accordingly, Defendants' motion to dismiss Plaintiffs Woodley and Cox's Title IX retaliation claims, under Rule 12(b)(1), is hereby **GRANTED** for the same reasons stated above. *See supra* Part IV.A.

## V.   Qualified Immunity

The parties dispute whether the Tatum ISD Superintendent and Board Members are entitled to assert qualified immunity against Plaintiffs' constitutional claims.   Docket No. 6 at 20–25; Docket No. 9 at 24–26.   "Qualified immunity shields government officials acting within their discretionary authority from liability when their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known."   *Id.*   Courts evaluate the qualified immunity defense using a two-prong analysis that assesses: (1) "whether the plaintiff has shown sufficient facts to make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of [the] defendant's alleged misconduct."   *Id.* (internal quotation marks omitted).

The parties' dispute primarily turns on the first prong of the analysis as Plaintiffs failed to rebut Defendants' arguments concerning the second prong.   But, because the Court has the discretion to address either prong of the qualified immunity analysis first, the Court will start with the second prong—whether the Tatum ISD Superintendent and Board Members violated a "clearly established" law.   *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).   As the Fifth Circuit has explained,

> When considering a defendant's entitlement to qualified immunity, we must ask whether the law so clearly and unambiguously prohibited his conduct that "every reasonable official would understand that what he is doing violates [the law]."   To answer that question in the affirmative, we must be able to point to controlling authority—or a "robust consensus of persuasive authority"—that defines the contours of the right in question with a high degree of particularity.

*Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (internal quotes omitted).

Here, Defendants argue there is no clearly established law prohibiting their conduct because the Fifth Circuit previously held that a school district's hair regulation policy is per se constitutional.   Docket No. 6 at 32.   Plaintiffs provide no controlling caselaw that suggests otherwise; but Plaintiffs do, however, offer at least one persuasive case that recognizes such causes of action exist.   Docket No. 9 at 14 (citing *Arnold*, 479 F. Supp. at 521 (finding *Karr* did not bar plaintiff's sex and race discrimination equal protection claims because "the *Karr* Court was not presented with those questions.")).

While a single case does not amount to a "robust consensus of persuasive authority," it nonetheless demonstrates the lack of clarity concerning this issue.  *Morgan*, 659 F.3d at 371.  And the potential existence of a circuit split is further illuminated by *Karr*, where the Fifth Circuit recognized that the "Seventh Circuit [has] held that hair regulations are violative of the Equal Protection clause [if] they apply solely to male students and not to female students."  *Karr*, 460 F.2d at 616 (citing *Crews v. Cloncs*, 432 F.2d 1259, 1266 (7th Cir. 1970)).  Accordingly, the law is not clearly established here.  *See, e.g.*, *Morgan*, 659 F.3d 359 at 372 ("Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established.").[13]

The Tatum ISD Superintendent and Board Members are, therefore, entitled to qualified immunity against Plaintiffs' constitutional rights claims under the First and Fourteenth Amendments, and the Tatum ISD Superintendent and Board Members' request for qualified immunity is **GRANTED**.

---

[13] Having found that Plaintiffs failed to demonstrate the Tatum ISD Superintendent and Board Members violated a "clearly established" law, the Court does not reach the parties' arguments concerning the first prong of the qualified immunity analysis. *See Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013) (declining to reach " 'second step' of the qualified immunity analysis because … the first 'clearly established' step [was not] met by [plaintiff].").

## VI.    Declaratory Relief

The parties dispute whether Plaintiffs' request for a declaratory judgment should be dismissed under Rule 12(b)(6).  Docket No. 6 at 33–34; Docket No. 9 at 26–28.  When considering a declaratory judgment action, a district court must determine: (1) whether an actual controversy exists between the parties in the case; (2) whether it has authority to grant declaratory relief; and (3) whether to exercise its broad discretion to decide or dismiss a declaratory judgment action.[14] *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 294 (5th Cir. 2019) (citations and quotation marks omitted).  "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (citation omitted).

Here, the parties dispute whether an actual controversy exists if, *inter alia*, M.T. and K.C. no longer attend school within Tatum ISD and Plaintiffs concede that Tatum ISD removed the challenged language from its hair and grooming policy.[15]  Notwithstanding this issue, the dismissal of Plaintiffs' claim for declaratory relief is, in part, anchored by Plaintiffs' remaining claims.  *See Guajardo v. JP Morgan Chase Bank, N.A.*, 605 F. App'x 240, 249 (5th Cir. 2015) (affirming dismissal of plaintiffs' claims for declaratory relief where plaintiffs' substantive claims failed as a

---

[14] The Court notes that Plaintiffs' responsive brief contextualizes their declaratory relief argument under the legal standard for assessing preliminary injunctions.  *See* Docket No. 9 at 26–27.  Defendants, however, moved to dismiss Plaintiffs' claim for declaratory relief.  *See* Docket No. 6 at 33–35.  The Court, therefore, analyzes the parties' assertions under the three-prong test for assessing a declaratory judgment action.

[15] In their responsive brief, Plaintiffs assert that M.T. is currently enrolled in Tatum ISD, which is contrary to Defendants' initial representation.  *Compare* Docket No. 6 at 33, *with* Docket No. 9 at 27.  Plaintiffs further assert that K.C. intends to return to Tatum ISD.  Docket No. 9 at 27.  Assuming arguendo that these facts are true, the Court declines to consider such facts as they are not alleged in Plaintiffs' Complaint.  *Leal*, 731 F.3d at 407 n.2 (declining to consider "additional facts [asserted in appellant's brief and] not contained in the First Amended Complaint" when assessing the merits of appellant's motion to dismiss).

matter of law); *see also Ayers v. Aurora Loan Servs.*, LLC, 787 F. Supp. 2d 451, 457 (E.D. Tex. 2011) ("Plaintiff cannot maintain a 'claim' for declaratory judgment because all substantive claims have been dismissed."). As discussed above, the Court cannot determine the viability of Plaintiffs' Equal Protection sex discrimination and First Amendment claims at this stage in the proceedings. *See supra* Part II.A; *see also* Part III.A.

Accordingly, Defendants' motion to dismiss Plaintiffs' request for a declaratory judgment is **DENIED** as premature.

## VII.   Punitive Damages

Defendants assert that Plaintiffs are not entitled to punitive damages for any claim as pleaded in their complaint. Docket No. 6 at 34. In response, Plaintiffs state they do not oppose Defendants' position regarding punitive damages. Docket No. 9 at 7. Defendants' motion to dismiss Plaintiffs' claims for punitive damages is therefore **GRANTED**.

## CONCLUSION

For the reasons set forth above, it is **ORDERED** that Defendants' Motion to Dismiss (Docket No. 6) is hereby **GRANTED-IN-PART** and **DENIED-IN-PART**, as follows:

1.  Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' Equal Protection race discrimination claim is **GRANTED**. Plaintiffs are **GRANTED** leave to replead their Equal Protection race discrimination claim within fifteen (15) days after the date of issuance of this order;

2.  Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' Title VI race discrimination claim is **GRANTED**. Plaintiffs are **GRANTED** leave to replead their Title VI race discrimination claim within fifteen (15) days after the date of issuance of this order;

3.  Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' state law race discrimination

claim is **GRANTED**, and the claim is **DISMISSED WITH PREJUDICE**;

4. Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' Equal Protection sex discrimination claim is **DENIED** as premature;

5. Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' Title IX sex discrimination claim is **DENIED**;

6. Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' state law sex discrimination claim is **GRANTED**, and the claim is **DISMISSED WITH PREJUDICE**;

7. Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' claim alleging violations of the First Amendment Right to Freedom of Speech and Freedom of Expression is **DENIED** as premature;

8. Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' claim alleging violations of the Fourteenth Amendment Due Process Clause is **GRANTED**, and the claim is **DISMISSED WITH PREJUDICE**;

9. Defendants' Rules 12(b)(1) and 12(b)(6) Motions to Dismiss Plaintiffs Woodley and Cox's First Amendment retaliation claim are **GRANTED**, and the claim is **DISMISSED WITH PREJUDICE**;

10. Defendants' Rule 12(b)(1) Motion to Dismiss Plaintiffs Woodley and Cox's Title IX retaliation claim is **GRANTED**, and the claim is **DISMISSED WITH PREJUDICE**;

11. The Tatum ISD Superintendent and Board Members' request for qualified immunity is **GRANTED**;

12. Defendants' Motion to Dismiss Plaintiffs' claims for declaratory relief is **DENIED** as premature; and

13. Defendants' Motion to Dismiss Plaintiffs' claims for punitive damages is **GRANTED**.

So ORDERED and SIGNED this 30th day of September, 2022.

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE