UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| M.T., a minor by and through his grandmother and Guardian, EDWINA WOODLEY, and K.C., a minor by and through his mother and Guardian, KAMBRY COX,<br><br>           Plaintiffs,<br><br>v.<br><br>TATUM UNIFIED SCHOOL DISTRICT,<br><br>           Defendant. | C.A. NO.: 2:21-cv-00364<br><br><br><br><br>JURY TRIAL REQUESTED |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S 12(b)1 & (6) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

I.      **INTRODUCTION**

Defendant Tatum Unified School District's (hereinafter referred to as "Tatum ISD") student dress code for the 2019-2020 school year stated in part that:

> Student's hair shall be clean and well groomed at all times and <u>shall not obstruct vision.</u> **no extreme style or color (neon, etc…)** shall be allowed. No symbols, letters, or extreme designs cut in the hair shall be permitted. No ponytails, ducktails, rat-tails, male bun or puffballs **shall be allowed** on male students. (In its unaltered state, hair cannot extend past shoulder length). **ALL male hair of any type SHALL NOT extend below the collar (t-shirt/button-down collar/ Shoulder length).**

After being forced out of Tatum ISD for violating Tatum ISD's hair grooming policy, Plaintiffs initiated this action against Defendant, alleging claims of race discrimination, sex discrimination, constitutional rights violations and retaliation. Docket No. 1.  Before the Court is Defendant's  second

1

Motion to Dismiss Plaintiffs' Civil Action Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Docket No. 31.  On September 30, 2022, the Court denied Defendant's first Motion to Dismiss regarding Plaintiffs' Equal Protection sex discrimination, Title IX sex discrimination, First Amendment, and declaratory and injunctive relief claims.  Regarding Plaintiffs' race discrimination claims, the Court instructed Plaintiffs to replead the claims to allege "specific actions the Board took to treat M.T. and K.C. differently than similarly situated non-minority students." Tatum ISD again seeks to dismiss Plaintiffs' race discrimination claims and declaratory and injunctive relief claims. Docket No. 28.  Tatum ISD for the first time moves to dismiss Plaintiffs' claims for damages for emotional harm under Title VI and Title IX.

Defendant's motion must be denied as to Plaintiffs' race claims, because though subject to proof at trial, Plaintiffs' allegations are sufficiently definite and complete to make a Rule 12(b)(6) dismissal inappropriate. In considering a Rule 12(b)(6) motion, courts do not consider the plaintiff's ability to prove their allegations, but whether they are entitled to offer evidence to support their claims. *See Nami v. Fauver*, 82 F.3d 63, 65 (3rd Cir. 1996); *Allison v. California Adult Auth.,* 419 F.2d 822, 823 (9th Cir. 1969). The Plaintiffs, on the face of their First Amended Complaint ("FAC") have stated a claim for which relief can be granted. Accordingly, the Defendant's Rule 12(b)(6) motion for dismissal of Plaintiffs' race discrimination claims must be denied.   Defendant's motion must be denied as to Plaintiffs' declaratory and injunctive relief claims because Plaintiffs have stated viable claims for Sex Discrimination, Race Discrimination, and First Amendment violations against Tatum ISD.

## II.     PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF THE ISSUES

1. Tatum ISD's Motion to Dismiss M.T.'s and K.C.'s Section 1983 Equal Protection Clause race discrimination claims must be denied as premature as Plaintiffs have stated sufficient facts to demonstrate they are entitled to offer evidence to support their claims.

2. Tatum ISD's Motion to Dismiss M.T.'s and K.C.'s Title VII race discrimination claims must be denied as premature as Plaintiffs have stated sufficient facts to demonstrate they are entitled to offer evidence to support their claims.

3. Tatum ISD's Motion to Dismiss M.T.'s and K.C.'s claims for injunctive and declaratory relief must be as Plaintiffs have stated viable causes of action for race and gender discrimination and violations of Plaintiffs' First Amendment Rights.

4. M.T.'s and K.C.'s claims for mental anguish damages brought under Title VI and Title IX must be dismissed because damages for emotional harm are not recoverable under these statutes as a matter of law.

## III.  RELEVANT BACKGROUND INFORMATION

African American male students in Tatum ISD have been disproportionately targeted and penalized for violating grooming policies that have been designed to, and have the effect of, profiling, singling out, and burdening African American male children for wearing their hair in its natural state. The length of students' hair and their hairstyles have no bearing on students' capacity to learn, yet these wholly arbitrary grooming policies created and enforced by Defendant limit the mobility of African American male children in public and private spaces, deny them equal educational opportunities, and strike at the freedom and dignity of African American people. Docket No. 30 at ¶ 1.  Tatum ISD's student dress code for the 2019-2020 academic year stated in part that a "[s]tudent's hair shall be clean and well-groomed at all times and shall not obstruct vision, no extreme style or color (neon, etc.…) **shall be allowed**…No ponytails, ducktails, rat-tails, male bun or puffballs shall be allowed on male students. (In its unaltered state, hair cannot extend past shoulder length). **ALL male hair of any type SHALL NOT extend below the collar (tshirt/ button-down collar/Shoulder length).**  Docket No. 30 at ¶ 5.

Each of Defendant Tatum ISD's trustees voted to adopt the 2019-2020 dress and hair code policy that led to the unenrollment of M.T. and K.C. Docket No. 30 at ¶ 9.  Tatum ISD enforced the 2019-2020 hair policy against M.T. and K.C., and did not similarly enforce such policy against white male students as frequently.  Docket No. 30 at ¶ 10.  On several occasions during the 2019-2020

3

academic year, representatives of M.T. and K.C. objected to Defendant that the Tatum ISD policy was unconstitutional. Docket No. 30 at ¶ 4.

For example, Edwina Woodley ("Ms. Woodley") is the grandmother of M.T. Ms. Woodley has at all times supported M.T.'s decisions on his hair length and hairstyle as expressions of his Black identity, culture, spirituality, and heritage. When Tatum ISD told M.T. that his hair was out of compliance with their dress code, Ms. Woodley challenged Tatum ISD's dress code policy to Superintendent J.P. Richardson, stating that M.T.'s hairstyle and hair length is a reflection of his Black culture, spirituality, and heritage, and that Tatum ISD's dress code policy subjects Black male students like M.T. to race and gender discrimination and violates their right to free expression. Superintendent Richardson responded that male students are not allowed to have their hair at shoulder length in accordance with Tatum ISD's dress code policy. He further stated that M.T. would have to cut his hair and said that if M.T. chose to wear his hair down, then as Superintendent of Tatum ISD he would suggest Ms. Woodley put M.T. in a dress, and that if M.T. was asked if he was a boy or girl, M.T. would have to say girl. Ms. Woodley continued to support M.T.'s choice of hairstyle and hair length and sent him to school with his natural hair. When M.T. was placed in the principal's office and isolated from his classmates without adequate supervision or instruction, Ms. Woodley publicly protested Tatum ISD's dress code policy in an effort to get M.T. back in the classroom. Eventually M.T. was removed from Tatum ISD and not allowed to participate in classroom activities. Docket No. 30 at ¶ 12.

Kambry Cox ("Ms. Cox) is the mother of K.C. Ms. Cox has at all times supported K.C.'s decisions on his hair length and hairstyle as expressions of his Black identity, culture, spirituality, and heritage. When Tatum ISD told K.C. that his hair was out of compliance with their dress code, Ms. Cox challenged Tatum ISD's dress code policy and continued to send K.C. to school with his natural hair and in whatever hairstyle he chose. When K.C. was placed in the

principal's office and isolated from his classmates without adequate supervision or instruction, Ms. Cox protested Tatum ISD's dress code policy in an effort to get K.C. back in the classroom. K.C. was subsequently forced to leave Tatum ISD and not allowed to participate in classroom activities. Docket No. 30 at ¶ 13.

In October 2019, M.T.'s and K.C.'s representatives gave several examples to Tatum ISD during a student grievance hearing, of students outside of Plaintiffs' protected classes who were allowed to attend school while violating Tatum ISD's grooming policy, while M.T. and K.C. were not allowed to attend school. Docket No. 30 at ¶ 14.   After reviewing this evidence of discrimination, Defendant Tatum ISD's trustees voted to: (1) ratify the 2019-2020 dress and hair code policy that led to the unenrollment of M.T. and K.C.; (2) condoned and ratified the unconstitutional enforcement of the 2019-2020 hair policy against M.T. and K.C.; and (3) chose not to similarly enforce Tatum ISD's grooming policy against white male students who were violation of the policy and identified by Plaintiffs. Docket No. 30 at ¶ 15.

Once Tatum ISD upheld the removal of M.T. and K.C. from Tatum ISD, changes were made in response to Plaintiffs' evidence of discrimination submitted to Tatum ISD. For example, on November 11, 2019, Superintendent Richardson accepted recommended changes to the Tatum ISD dress code policy during a board meeting, and eliminated the Head Start Program at Tatum ISD. During the Board meeting, Assistant Superintendent Fite stated that research showed that out of the 90 school districts in Texas, Tatum's was the only one which included the term "puffball." Mr. Fite went on to state "[a]nything that will single out any ethnic group will be removed…"  Docket No. 30 at ¶ 16.

## IV    LAW AND ARGUMENT

"Irrespective of race, creed, and gender, education makes it possible for people to stand out as equal with all the other persons from different walks of life." *Arnold v. Barbers Hill Indep. Sch. Dist.,* 479 F. Supp. 3d 511, 518 (S.D. Tex. 2020).  However, M.T. and K.C. were isolated from their

5

classmates, forced out of the classroom for violation of Tatum ISD's hair policy, and eventually permanently removed from Tatum ISD. In the instant action, M.T. and K.C. seeks to permanently enjoin Tatum ISD from denying students the opportunity to attend class and receive the same education, without fear of punishment or retaliation, as their classmates for their choice of hairstyle.

### A. Legal Standard

Tatum ISD has moved for dismissal of Plaintiff's claims pursuant to Rule 12(b)(6), for failure to state a claim, and Rule 12(b)(1), for a lack of subject matter jurisdiction. Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level," and a claim is facially plausible when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Twombly,* 550 U.S. at 556; and *Iqbal* 556 U.S. at 570. However, "[a] motion to dismiss on the basis of the pleadings alone should rarely be granted." *Madison* v. *Purdy,* 410 F.2d 99, 100 (5th Cir. 1969).

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322-23 (2007). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Iqbal,* 556 U.S. at 678.

Generally, a district court is limited to the facts stated in the complaint in considering a Rule

6

12(b)(6) motion to dismiss. *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007).

      **B.**      **Plaintiffs Have Sufficiently Pled Claims for Race Discrimination**

Plaintiffs allege that the 2019-2020 hair policy was "motivated, at least in part, by the racially discriminatory goal of restricting Black students from wearing their natural hair or culturally significant hair formations." *See* Docket No. 30 at ¶ 71. Plaintiffs further allege that "only male Black students have been disciplined under the 2019-2020 Tatum ISD hair policy" and that "Defendant has applied and enforced the 2019-2020 hair policy in an unlawful manner to target Black male students with culturally-significant hair." Docket No. 30 at ¶ 30. Defendant argues that these statements are not sufficient to plead a claim for race discrimination.

However, at the 12(b)(6) stage, courts do not require that Plaintiffs plead a prima facie case of race discrimination. Plaintiff must simply plead a plausible claim. *E.E.O.C. v. Bass Pro Outdoor World, LLC,* 884 F. Supp. 2d 499, 515 (S.D. Tex. 2012). Accordingly, even if the Court finds that Plaintiffs are missing vital information regarding when and why Board Members intentionally allowed similarly situated students outside of Plaintiffs' protected class to continue to attend Tatum ISD schools, Tatum ISD's Motion to Dismiss must be denied. The is because this is precisely the type of information that Plaintiffs are likely to obtain through discovery, and Plaintiffs have adequately put Defendant on notice regarding the nature of their race claims.

Plaintiffs filed administrative grievances with Tatum ISD per their policy. These grievances were made on the basis that these two students were discriminated against based on their gender and race, as they were unenrolled from Tatum ISD for challenging the hair policy which explicitly discriminated against Black male students. The grievances were heard at a Level 3 before the Board of Tatum ISD on October 21, 2019. On October 23, 2019, the Tatum ISD Board voted to deny both M.T.'s and K.C.'s Level 3 grievances. Docket No. 30 at ¶ 48. During the grievance process Plaintiffs' representatives gave several examples to Tatum ISD of students outside of Plaintiffs' protected classes

who were allowed to attend school while violating Tatum ISD's grooming policy, while M.T. and K.C. were not allowed to attend school. Docket No. 30 at 54. After reviewing this evidence of discrimination, Defendant Tatum ISD's trustees voted to: (1) ratify the 2019-2020 dress and hair code policy that led to the unenrollment of M.T. and K.C.; (2) condoned and ratified the unconstitutional enforcement of the 2019-2020 hair policy against M.T. and K.C.; and (3) chose not to similarly enforce Tatum ISD's grooming policy against white male students who were violation of the policy and identified by Plaintiffs. Docket No. 30 at ¶ 55.

An official unconstitutional policy "can either be unconstitutional on its face", or a policy adopted "with deliberate indifference to the known or obvious fact that such constitutional violations would result." *James v. Harris County,* 577 F.3d 612 (5th Cir. 2009). "[A] widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy'" may also be considered official policy so long as the authorized policymaker has acquiesced in or ratified, condoned, or adopted the unofficial policy. *Id.* (quoting *Piotrowski v. City of Houston,* 237 F.3d 567, 579 (5th Cir. 2001)). Plaintiffs have plead fats that Tatum ISD's Board, the authorized policymaker, acquiesced in or ratified, condoned, or adopted the unofficial policy of disciplining African American elementary students and not similarly-situated Caucasian students for violations of Tatum ISD's hair grooming policy. Based on the foregoing, when considered in its totality, Plaintiffs' race claims are sufficiently pled to survive Tatum ISD's Motion to Dismiss.

    **C.**    **Plaintiffs Have Sufficiently Pled a Claim for Declaratory and Injunctive Relief**

When considering a declaratory judgment action, a district court must determine: (1) whether an actual controversy exists between the parties in the case; (2) whether it has authority to grant declaratory relief; and (3) whether to exercise its broad discretion to decide or dismiss a declaratory judgment action. *Frye v. Anadarko Petroleum Corp.,* 953 F.3d 285, 294 (5th Cir. 2019) (citations and

quotation marks omitted). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (citation omitted).

M.T. and K.C. have clearly shown a substantial threat of irreparable injury. "To show irreparable injury if threatened action is not enjoined, it is not necessary to demonstrate that harm is inevitable and irreparable. The plaintiff need show only a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Humana, Inc. v. Avram A. Jacobson, M.D., P.A.*, 804 F.2d 1390, 1394 (5th Cir. 1986) (footnotes omitted). "It has repeatedly been recognized by the federal courts at all levels that violation of constitutional rights constitutes irreparable harm as a matter of law [,]" *Cohen v. Coahoma County, Mississippi*, 805 F. Supp. 398, 406 (N.D. Miss. 1992) (collecting cases), and that principle includes violation of rights under the Equal Protection Clause. *Killebrew v. City of Greenwood, Mississippi*, 988 F. Supp. 1014, 1016 (N.D. Miss. 1997).

M.T. and K.C. have pled sufficient facts demonstrating a substantial threat of irreparable injury to African American students in Tatum ISD, who will be precluded from getting an education for having a "disruptive" hairstyle. Furthermore, despite the approved changes to Tatum ISD's dress code policy, M.T. and K.C. were never welcomed back to Tatum ISD for the 2019-2020 school year. Both M.T. and K.C. were forced to find schooling out of the district. *See* Dkt. No. 1 at ¶ 52. In December of 2019, K.C. was not allowed to return to school in Tatum ISD without agreeing to adhere to the Tatum ISD grooming policy.

"It is always in the public interest to prevent the violation of a party's constitutional rights." *Jackson Women's Health Organization v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014) (quotation marks and brackets omitted). Conversely, "[p]ublic interest is never served by a state's depriving an

9

individual of a constitutional right." *Kite v. Marshall*, 454 F. Supp. 1347, 1351 (S.D. Tex. 1978). This case fits squarely within the meaning of the "capable of repetition yet evading review" exception to the case or controversy requirement. When there is a reasonable expectation or demonstrated possibility that the same controversy will recur, an exception exists to the case or controversy requirement. *See Weinstein v. Bradford,* 423 U.S. 147, 149, (1975) *per curiam.* Where, as here, Plaintiffs have shown the existence of an immediate and definite governmental action or policy that has adversely affected their interests in the past and continues to affect a present interest, there is a reasonable expectation that the same complaining party would be subjected to the same action again. *Id.* The Fifth Circuit has held that where plaintiffs have shown the violation of a clearly established constitutional right, plaintiffs have alleged facts which, if proven to be true, meet the standard for obtaining a permanent injunction. *Morris v. Dearborne*, 69 F. Supp. 2d 868, 881 (E.D. Tex. 1999). Accordingly, Plaintiffs' claims are not moot, and jurisdiction under the Declaratory Judgment Act is proper.

### D. Plaintiffs Can Seek Damages for Emotional Distress

Plaintiffs have asserted causes of action for violation of their right to free speech under the First Amendment. M.T.'s and K.C.'s choice of hairstyles are sufficiently communicative to warrant First Amendment protection. See *Arnold v. Barbers Hill Indep. Sch. Dist.*, 479 F. Supp. 3d 511, 528 (S.D. Tex. 2020). As the Court explained in *Arnold*, "Visibly wearing one's hair in a particular manner is capable of communicating one's religion or heritage." *Gonzales v. Mathis Independent School District*, No. 2:18-CV-43, 2018 WL 6804595, at *7 (S.D. Tex. Dec. 27, 2018); *see also A.A. ex rel. Betenbaugh v. Needville Independent School District*, 701 F. Supp. 2d 863, 882 (S.D. Tex. 2009) ("A.A.'s braids convey a particularized message of his Native American heritage and religion.").

As explained to the Court, African Americans' spirituality and heritage has been tied to hair styles synonymous with strength and spirituality. As a result of facing race discrimination at such young ages, Plaintiffs have suffered irreparable emotional damages. Tatum ISD incorrectly cites

*Cummings v. Premier Rehab Keller, PLLC*, 142 S.Ct. 1562, 1569-76, to support their argument that cannot recover mental anguish damages pursuant to Title VI or Title IX. In *Cummings*, the Supreme Court held that damages for emotional distress are not available for violating the anti-discrimination provisions of the Rehabilitation Act or the Affordable Care Act. The Court reasoned that because emotional distress is generally not compensable in contract, courts "therefore cannot treat federal funding recipients as having consented to be subject to damages for emotional distress." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1572 (2022). However, the *Cummings* holding is limited to cases wherein the students allege only emotional injury. *Cummings v. Premier Rehab Keller, P.L.L.C.,* 142 S.Ct. 1562, 1572. Here Plaintiffs not only seek emotional distress damages, but also injunctive and declaratory relief, compensatory damages, and any and all relief that may be necessary and appropriate.

While the holding of *Cummings* precludes students from recovering emotional distress damages pursuant to Title VI and Title IX, it does not preclude students from pursuing injunctive and declaratory relief or emotional distress damages for violations of the First Amendment. See *Decorte v. Jordan,* 497 F.3d 433, 442 (5th Cir. 2007) and *Miller v. Raytheon Co.,* 716 F.3d 138, 147 (5th Cir. 2013).

## V.     CONCLUSION

For the above stated reasons, Plaintiffs respectfully request that Defendant's motion be denied in its entirety, and that to the extent that the Court is inclined to grant Defendant's Motion to Dismiss, Plaintiffs request leave to amend.

DATED:

Respectfully Submitted,

  /s/ Waukeen McCoy_____

Waukeen Q. McCoy, Esq. *
McCOY LAW FIRM, P.C.
251 Post Street, Suite 301

San Francisco, CA 94108
Telephone: (415) 675-7705
Facsimile: (415) 675-2530
wqm@mccoyslaw.com


*Admitted Pro Hac Vice


Brad Steele
Texas Bar No. 19099350
LAW OFFICE OF BRADLEY STEELE
1101 Judson Road
Longview, TX 75601
Tel: (903) 234-8844
Fax: (903) 234-8848
brad@bradsteelelaw.com