IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| M.T., a minor by and through his grandmother and next friend, EDWINA WOODLEY, et al., | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | C.A. NO.: 2:21-cv-00364 |
| TATUM UNIFIED SCHOOL DISTRICT, | § § § | |
| Defendant. | § § | |

**PLAINTIFFS' OPPOSITION TO TATUM INDEPENDENT SCHOOL DISTRICT'S RULE 12(b)(1) & (6) MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

**I.    INTRODUCTION**

In 2019-2020 Tatum ISD maintained grooming and residential admission policies that were exclusively enforced against its undesired Hispanic and African American students. Pursuant to Tatum ISD's Board Policy Manual and Student Code of Conduct, Superintendent Richardson and the Tatum ISD Board possess final authority to establish standards and policy with respect to student dress and grooming. (DKT 56, ¶ 82). Tatum ISD's Board, as the official policymaker for the school district, adopted the 2019-2020 dress code/hair policy that targeted male Black students and their natural hair growth, making it difficult for male Black students to freely express themselves and comply with the dress code. Tatum ISD's adoption of the 2019-2020 hair policy is motivated, at least in part, by the racially discriminatory goal of restricting Black students from wearing their natural hair or culturally significant hair formations. (DKT 56, ¶ 83).

Plaintiffs M.T. and K.C. who were respectively 4 and 5 years old at the time of the events in the instant action took place, were involuntarily removed from TISD for refusing to comply with TISD's hair length policy.   The TISD Board of Directors voted unanimously to remove the plaintiffs who they viewed as unruly African American students, for their disruptive hairstyles. During their grievance process before the Board, the children and their families were labeled as fraudster race agitators, who were attempting to unlawfully upset the good ole' Confederate way of life of keeping black students in line in Tatum.  What is troubling about the Board's involuntary removal of Plaintiff's M.T. and K.C. from TISD is that the grooming policy was not supposed to ever be applied to elementary school students[1] and has only been enforced on African American students in elementary school. (See Ex. C, TISD 30(b)(6) Depo., 38:5-12).

After the Plaintiffs were withdrawn from the district, TISD Superintendent J.P. Richardson admitted that TISD's grooming policy was unlawful:

> I have been pretty adamant about not changing the dress code for next year. If you would have asked me 6 months ago, I would have said to keep it the same. However, in the midst of what our country is going through right now. I have begun to change my thought process. Transgender students can have long hair so why can't other students have long hair. You can legally get a tattoo at 18 in Texas. There is no age or sex requirement to get your ears pierced.
>
> […]
>
> I always want to stay on the forefront and try to head off any issues that I might see coming our way. I can see if we allow long hair and not earrings then we will be fighting earrings. The same can go for tattoos. You may remember the day when women were frowned upon for wearing pants. They were required to wear dresses. Times changed then. I know that in history the **slave owners did not always allow the slaves to have long hair**. Would we now be possibly classified as slave owners? Could others challenge different aspects of the current dress code and put TISD in a negative manner once again? Will school dress codes

---

[1] At the deposition of TISD Assistant Superintendent Drennon Fite, finally admitted that the grooming policy was never to be applied to elementary students because "at that level you don't want to hold those kids accountable because at their age you want —that's not really their responsibility."  (See Ex. A, 58:7 - 59:1-7).

> be challenged for racial inequality in the near future? Today's Supreme Court ruling also scares me if a school district is ever challenged.

(See Ex. B, TISD 1188-1189).

Despite this admission TISD now requests that this Court dismiss Plaintiffs' claims as a matter of law, because "Hairstyle is not synonymous with race." (DKT 35, 9:19). TISD further asserts that Plaintiffs make the allegation that their hairstyle is indicative of their culture or heritage. Culture is not race, and hairstyle is mutable. People of different races can have different hairstyles. It's not a proxy for race." (DKT 35, 9:19-23). Based on the foregoing TISD further asserted, "Plaintiffs don't dispute that their hair was out of compliance with the hair-length policy. It stands to reason the school district would enforce its policy. No legitimate inference of race discrimination can be drawn from that set of facts, and there's nothing more that would give rise to a race claim." (DKT 35, 9:19-23). TISD was very clear with the Court that "there's also a practical reality here that a student who is refusing to comply with a school district's policy and habitually refusing to comply is going to find themselves in continued noncompliance. To the extent they were in the principal's office more often than not, that was the result of their noncompliance with the policy." (DKT 35, 12:25-13:5). With the passage of the Crown Act, these arguments can be interpreted as outdated, racist, and unlawful - the very issues that made J.P. Richardson call for change of the hair policy at issues in the instant action. (See Ex. B, TISD 1188-1189).

On May 27, 2023, Governor Greg Abbott signed into law the CROWN Act (House Bill No. 567), making Texas the twenty-first state to ban racial discrimination based on hair texture or hairstyle in schools, employment, and housing. The ("CROWN") Act, stands for Creating a Respectful and Open World for Natural Hair amends the definition of race in state

antidiscrimination statutes to include traits historically associated with race, including hair, texture and protective hairstyles, including but not limited to "braids, locs, and twists." The purpose of the act is to combat race-based discrimination and bias based on hair texture and hairstyle.

## II.     STATEMENT OF FACTS

After being involuntary removed from their classrooms and not allowed to obtain an education in TISD, M.T. and K.C. filed administrative grievances with Tatum ISD per their policy. These grievances were made on the basis that these two students were discriminated against based on their gender and race, as they were unenrolled from Tatum ISD for challenging the hair policy which explicitly discriminated against Black male students. The grievances were heard at a Level 3 before the Board of Tatum ISD on October 21, 2019. On October 23, 2019, the Board of Tatum ISD voted to deny both M.T.'s and K.C.'s Level 3 grievances. No reasoning nor findings were provided for the denial.   (DKT 56, ¶ 60).  During the grievance process, M.T.'s and K.C.'s representatives gave several examples to Tatum ISD, during a student grievance hearing, of students outside of Plaintiffs' protected classes who were allowed to attend school while violating Tatum ISD's grooming policy, while M.T. and K.C. were not allowed to attend school. (DKT 56, ¶ 109).

After reviewing this evidence of discrimination, Defendant Tatum ISD's trustees voted unanimously to: (1) ratify the 2019-2020 dress and hair code policy that led to the unenrollment of M.T. and K.C.; (2) condoned and ratified the unconstitutional enforcement of the 2019-2020 hair policy against M.T. and K.C.; and (3) chose not to similarly enforce Tatum ISD's grooming policy against white male students who were violation of the policy and identified by Plaintiffs.

(DKT 56, ¶ 110). After the Plaintiffs were withdrawn from the district, TISD Superintendent J.P Richardson admitted that TISD's grooming policy was unlawful:

> I have been pretty adamant about not changing the dress code for next year. If you would have asked me 6 months ago, I would have said to keep it the same. However, in the midst of what our country is going through right now. I have begun to change my thought process. Transgender students can have long hair so why can't other students have long hair. You can legally get a tattoo at 18 in Texas. There is no age or sex requirement to get your ears pierced.
>
> […]
>
> I always want to stay on the forefront and try to head off any issues that I might see coming our way. I can see if we allow long hair and not earrings then we will be fighting earrings. The same can go for tattoos. You may remember the day when women were frowned upon for wearing pants. They were required to wear dresses. Times changed then. I know that in history the **slave owners did not always allow the slaves to have long hair**. Would we now be possibly classified as slave owners? Could others challenge different aspects of the current dress code and put TISO in a negative manner once again? Will school dress codes be challenged for racial inequality in the near future? Today's Supreme Court ruling also scares me if a school district is ever challenged.

(See Ex. B, TISD 1188-1189). At the deposition of TISD Assistant Superintendent Drennon Fite, he finally admitted that the grooming policy was never to be applied to elementary students because "at that level you don't want to hold those kids accountable because at their age you want —that's not really their responsibility." (See Ex. A, 58:7: 59:1-7). TISD further admitted that the TISD grooming policy has only been applied to these two African American elementary school students. (See Ex. C, TISD 30(b)(6) Depo., 38:5-12).

On May 27, 2023, Governor Greg Abbott signed into law the CROWN Act (House Bill No. 567), making Texas the twenty-first state to ban racial discrimination based on hair texture or hairstyle in schools, employment, and housing. The ("CROWN") Act, stands for Creating a Respectful and Open World for Natural Hair amends the definition of race in state antidiscrimination statutes to include traits historically associated with race, including hair,

5

texture and protective hairstyles, including but not limited to "braids, locs, and twists." The purpose of the act is to combat race-based discrimination and bias based on hair texture and hairstyle.

The passing of the Crown Act effectively overturned the Fifth Circuit's holding in *Karr v. Schmidt,* 460 F.2d 609 (5th Cir. 1972), over 50 years ago that held a school district's hair regulation policy may be per se constitutional. Prior to the signing of the Crown Act, African American male students in Tatum ISD have been disproportionately targeted (including high school and middle school) and penalized for violating grooming policies that have been designed to, and have the effect of, profiling, singling out, and burdening African American male children for wearing their hair in its natural state. The length of students' hair or their hairstyle have no bearing on students' capacity to learn, yet these wholly arbitrary grooming policies limit the mobility of African American male children in public and private spaces, deny them equal educational opportunities, and strike at the freedom and dignity of African American people.

### III. LAW AND ARGUMENT

#### A. STANDARD OF REVIEW

##### 1. *Rule 12(b)(1).*

"When a motion to dismiss for lack of jurisdiction 'is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.'" *Crenshaw-Logal v. City of Abilene*, *Texas*, 436 Fed.Appx. 306, 308 (5th Cir. 2011)(quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); s*ee also Randall D. Wolcott*, *MD*, *PA v. Sebelius*, 635 F.3d 757, 762 (5th Cir.2011); Fed. R .Civ. P. 12(h)(3)). If a complaint could be dismissed for both lack of jurisdiction and for failure to state a claim, "'the court should dismiss only on the jurisdictional ground under [Rule] 12(b)(1), without

reaching the question of failure to state a claim under [Rule] 12(b)(6).'" *Crenshaw-Logal*, 436 Fed.Appx. at 308 (quoting *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977)). The reason for this rule is to preclude courts from issuing advisory opinions and barring courts without jurisdiction "'from prematurely dismissing a case with prejudice.'" *Id*. (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

    2.  **Rule 12(b)(6).**

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) permits a defendant to move to dismiss an action on the grounds that the plaintiff failed to state a cognizable claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); *see also Ramming v. United States,* 281 F.3d 158, 161 (5th Cir.2001). The Rule tests the legal sufficiency of the claims advanced in the complaint. *Grisham v. United States,* 103 F.3d 24, 25-26 (5th Cir.1997). The Court may grant a 12(b)(6) motion to dismiss only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Conley v. Gibson,* (1957) 355 U.S. 41, 45-46. In considering a motion to dismiss under 12(b)(6), the Court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations in the pleader's favor. *Oppenheimer v. Prudential Sec., Inc.,* (5th Cir.1996) 94 F.3d 189, 194. Thus the Court's treatment of motions to dismiss under 12(b)(6) is limited to the four corners of the complaint. *See* FED. R. CIV. P. 12(b)(6). The appropriate query concerning motions to dismiss under 12(b)(6) is whether the plaintiff is entitled to offer evidence in support of her claim. *See generally Conley v. Gibson,* (1957) 355 U.S. 41.

7

B.     Race Discrimination Claims

1.     Equal Protection

As this Court previously held, "[t]he *Karr* court explicitly noted that "federal courts [are still] permitted to entertain an action alleging discriminatory enforcement of a grooming code," as is the case here. Id. at 617 n.26." (DKT 28, page 8). Plaintiffs have pleaded that the policy disproportionally targets black male students. (DKT 56). Thus, to avail themselves of a strict scrutiny analysis Plaintiffs must sufficiently plead that the Board acted with a discriminatory purpose. (DKT 28, page 9).

Accordingly, this court requested that the Plaintiff's plead specific actions the Board took to treat M.T. and K.C. unfairly under the law. (DKT 28, page 9). Specifically, the Plaintiff's alleged that the Board voted to: (1) ratify the 2019-2020 dress and hair code policy that led to the unenrollment of M.T. and K.C.; (2) condoned and ratified the unconstitutional enforcement of the 2019-2020 hair policy against M.T. and K.C.; and (3) chose not to similarly enforce Tatum ISD's grooming policy against white male students who were violation of the policy and identified by Plaintiffs. (DKT 56, ¶¶ 21, 28, 33, 60-69, 82-83, 89, and 109-110).

TISD argues that the Plaintiffs' allegations against the Board are conclusory and devoid of factual enhancement. However, as this Court explained previously "Defendants' argument that Plaintiffs relied on only naked assertions to establish a discriminatory motive is without merit. See, e.g., *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.,* 869 F.3d 381, 386 (5th Cir. 2017) (citations omitted) ("Although 'naked allegation[s]' of discriminatory intent are too conclusory to survive a motion to dismiss, discriminatory motive may be—and commonly is— demonstrated by circumstantial evidence. [Thus, an] allegation that similarly situated non-minorities received better treatment 'could create the necessary inference and set the predicate

for establishing' a [civil rights] claim.")." (DKT 28, page 9). Accordingly, the facts articulating what the Board did to ensure the Plaintiffs' remained permanently banned from TISD are sufficient to allow the plaintiffs to offer evidence in support of their claims. *See generally Conley v. Gibson,* (1957) 355 U.S. 41.

### 2. TITLE VI

Here, as this Court previously ruled, the parties primarily rely on the same facts and arguments set forth for the discriminatory purpose or intent element of Plaintiffs' Equal Protection race discrimination claim. Accordingly, Defendants' motion to dismiss Plaintiffs' Title VI race discrimination claim, under Rule 12(b)(6), must be DENIED for the same reasons stated above.

### B. Sex Discrimination

#### 1. Equal Protection

When denying Defendant's previous motion to dismiss on this issue the Court stated in relevant part:

> Here, the challenged hair-length regulation only applies to male students. See, e.g., Docket No. 1 at ¶ 1-1 at 2 (specifying that the listed hairstyles are not "allowed on male students" and limiting the hair-length regulation to "male hair"). Thus, intermediate scrutiny applies. To survive intermediate scrutiny, Tatum ISD must at least show that its gender-based hair and grooming policy serves important governmental objectives and that the discriminatory means employed are substantially related to achieving those objectives. *See Virginia*, 518 U.S. at 533. "The justification must be genuine, not hypothesized or invented *post hoc* in response to litigation. And it must not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females." *Virginia*, 518 U.S. at 516 (citation omitted).
>
> Accordingly, the Court must first "hear and consider [Tatum ISD's] justifications before deciding, as a matter of law, whether the District's justifications survive the applicable level of scrutiny." *Sturgis v. Copiah Cnty. Sch. Dist.,* No. 3:10-CV-455-DPJ-FKB, 2011 WL 4351355, at *2 (S.D. Miss. Sept. 15, 2011) (denying defendants' motion to dismiss plaintiff's gender-based equal protection claim because "the decision should be made on a more complete record."); *see*

> *also Fenceroy v. Morehouse Par. Sch. Bd.,* No. CIV.A. 05-0480, 2005 WL 1968442, at *4 (W.D. La. Aug. 15, 2005) ("[T]he question is … whether there is an important and substantial reason girls are permitted to wear their hair in braids, but boys are not. Because review of a motion to dismiss is confined to the pleadings, the School Board has provided no reason for its dress code, and, even if it had, the Court could not inquire into the soundness of that reason.").

(DKT 28, 13-14). TISD did not address Plaintiffs' 1983 Sex Discrimination claims in the instant motion and therefore these claims must survive Defendant's Motion to Dismiss.

  2. Title IX

This court previously ruled that Defendants' motion to dismiss Plaintiffs' Title IX sex discrimination claim, under Rule 12(b)(6), must be DENIED for the same reasons as stated for Plaintiffs' 1983 Equal Protection claims. (DKT 28). Defendant does not dispute this but does argue that "[h]owever, under recent Supreme Court authority, as a matter of law, M.T. and K.C. cannot recover mental anguish damages under statutes that were enacted pursuant to the Spending Clause – such as Title VI or Title IX. *See Cummings v. Premier Rehab Keller, PLLC*, 142 S.Ct. 1562, 1569-76 (2022)." Plaintiffs are still entitled to nominal damages and attorneys' fees and costs and the holding in *Cummings* is not a basis to dismiss Plaintiffs' claims.

TISD next argues that the United States Department of Education (the DOE) has already concluded Title IX does not apply to appearance codes. Again, this conveniently allows TISD to refuse to respond to this Court's directions that in order "to survive intermediate scrutiny, Tatum ISD must at least show that its gender-based hair and grooming policy serves important governmental objectives and that the discriminatory means employed are substantially related to achieving those objectives. *See Virginia*, 518 U.S. at 533. "The justification must be genuine, not hypothesized or invented *post hoc* in response to litigation. And it must not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females."

*Virginia*, 518 U.S. at 516 (citation omitted). TISD's silence on this issue mandates a denial of their motion to dismiss on Plaintiff's claims.

TISD argues that over four decades ago, the DOE adopted a regulation that prohibited discrimination "in the application of codes of personal appearance." 39 Fed. Reg. 22,228-01, 22,228–29 (June 20, 1974). The DOE's regulations are no longer good law. This is because on May 27, 2023, Governor Greg Abbott signed into law the CROWN Act (House Bill No. 567), making Texas the twenty-first state to ban racial discrimination based on hair texture or hairstyle in schools, employment, and housing. The ("CROWN") Act, stands for Creating a Respectful and Open World for Natural Hair amends the definition of race in state antidiscrimination statutes to include traits historically associated with race, including hair, texture and protective hairstyles, including but not limited to "braids, locs, and twists." The purpose of the act is to combat race-based discrimination and bias based on hair texture and hairstyle.

Against as stated above, the signing of the Crown Act demonstrates that the length of students' hair or their hairstyle have no bearing on students' capacity to learn, and wholly arbitrary grooming policies limit the mobility of African American male children in public and private spaces, denying them equal educational opportunities, and strike at the freedom and dignity of African American people.

### C. FIRST AMENDMENT

Again, as this Court previously ruled in order to dismiss Plaintiffs' claims for First Amendment violations TISD must address it important or substantial governmental interest for promulgating its hair and grooming policy. Because a Motion to Dismiss is limited to the four corners of the pleadings and TISD reasons are for promulgating its hair and grooming policy are contained therein, the Defendant's motion must be denied as to these claims as well.

IV.  **CONCLUSION**

Based on the foregoing, Defendant's Motion must be DENIED in its entirety.

BRAD STEELE
LAW OFFICE OF BRADLEY STEELE
Texas Bar No. 19099350
1101 Judson Road
Longview, Texas 7560 I
Telephone: 903/234-8844
Facsimile: 903/234-8848
Email: brad@bradsteelelaw.com

McCOY LAW FIRM

*Waukeen McCoy*
WAUKEEN McCOY
California Bar No. 168228
111 Maiden Lane. 6th Floor
San Francisco, CA 94108
Telephone: 415/675-7705
Facsimile: 415/67 5-2530
Email: mail@mccoyslaw.com
*Admitted Pro hac Vice
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2023, a true and correct copy of the foregoing document was served on counsel of record via E-mail. as follows:

Amy Demmler
adcmmlcrm nngllp.com