IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| M.T., a minor by and through his grandmother and next friend, EDWINA WOODLEY, et al., | § § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | C.A. NO.: 2:21-cv-00364 |
| TATUM UNIFIED SCHOOL DISTRICT, | § § § | |
| Defendant. | § | |

**PLAINTIFFS' NOTICE OF SUPPLEMENT OF EXHIBIT F SUBMITTED IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

1. On August 15, 2023, Tatum ISD filed it Motion for Summary Judgment. (DKT 75)

2. On August 29, 2023, Plaintiffs filed their Opposition to Defendant's Motion for Summary Judgment. (DKT 81).

3. Plaintiffs submitted exhibits in support of their Opposition to Defendant's Motion for Summary Judgment.

4. Specifically, Plaintiffs submitted Exhibit F to demonstrate what information was presented to the Tatum ISD Board of Trustees, to support Plaintiffs' position that they were being removed from Tatum ISD for refusing to adhere to the racially and gender discriminatory hair and groom policy at Tatum ISD.

5. In the body of the Plaintiffs' MSJ Opposition when Plaintiffs reference evidence submitted at the grievance to demonstrate that the board had knowledge of the Plaintiffs' race discrimination claims, Exhibit F is inadvertently referred to as Exhibit E.

6. Furthermore, an incomplete copy of Exhibit F was submitted with the Plaintiffs' Opposition. The copy submitted did not contain the photographs Plaintiffs referenced when addressing the Board of Trustees at the Plaintiffs' grievance hearing.

7. Plaintiffs' have attached a supplemented copy of Exhibit F which should be utilized by the Court when considering Plaintiffs' Opposition.

## **CONCLUSION**

Based on the foregoing, Plaintiffs request that the Court replace the incorrect copy of Exhibit F with the corrected copy of Exhibit F submitted herein.

Respectfully Submitted,

      **/s/ Waukeen McCoy**
Waukeen Q. McCoy, Esq. *
McCOY LAW FIRM, P.C.
251 Post Street, Suite 301
San Francisco, CA 94108
Telephone: (415) 675-7705
Facsimile: (415) 675-2530
mail@mccoyslaw.com

*Admitted Pro Hac Vice

Brad Steele
Texas Bar No. 19099350
LAW OFFICE OF BRADLEY STEELE
1101 Judson Road
Longview, TX 75601
Telephone: (903) 234-8844
Facsimile: (903) 234-8848
brad@bradsteelelaw.com

2

# CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

                                        Amy Demmler
                                    Attorney for Tatum ISD

# SUPPLEMENTED
# EXHIBIT F

**TATUM ISD**
**LEVEL III COX GRIEVANCE**
**OCTOBER 21, 2019**

**Rhonda Crass:** You're fine, right there.

**Mr. McCoy:** I know you have a newborn baby there.

**Rhonda Crass:** Can y'all see?

**Mr. McCoy:** So, uh, your mom, your mom just talked about, uh, how much, time, she spends with your son. Could you tell the, the Board, how much time, your Mom spends with your son, your son?

**Kambry Cox:** Uh, since, since I, birthed K▇, my mother, and K▇ have been, very close. When I first had him, she, actually lived, we lived together for at least a month, while she helps me adjust, to having a new baby, uh, she, and, if I need someone to pick K▇ up from school and I am not able to be there, or if he needs a ride to school, and I am not able to get him there, she's the one, who handles that, uh, my husband, works 13 hours away, in West Texas, so, pretty much, it's just me, and my, and my kids, my mother and my grandmother, are my support system. So, when I found out that I was having another baby, of course, I felt like I needed to put him in school, so, where, where I'm near her, and the fact that I'm, at her house, at least 2 or 3 days a week, spending the night, why not put him here in Tatum, to where, when I have the baby, she can take him to and forth to school, while I, right now, (sound skips)I still, I still haven't been cleared, from the doctor, to drive. So, that's why she's here now, she's been helping out this whole time, with the kids.

**Mr. McCoy:** So, before you enrolled K▇ into, the Kindergarten program, your mother, spent a substantial amount of time with him.

**Kambry Cox:** Yes, just, I mean, he spends the night over there at least 2 or 3 nights a week.

**Mr. McCoy:** Yes, and when the, uh, the District, or, uh, the school District told you that, they would de-enrolled him or?

**Kambry Cox:** It, it made me angry, but, the first thing that came to mind was, you know, I, I expected them to do something, because when you stand up for what you believe in, people will want to retaliate, in some, you know, in some type of way, so, I figured that they would, have some way of retaliating, but in order to, I mean, the fact that they'll, sabotage my son, in order to make their selves look a certain way, it really, broke my heart.

**Mr. McCoy:** Mmhh, because they led to believe that, when he was enrolled, that everything was ok...

**Kambry Cox:** ...yes...

**Mr. McCoy:** ...with your eligibility, correct?

**Kambry Cox:** They ask me to give them something with the address, on there, and I have uh...(sound skips)

**Edwina "Randi" Woodley:** ...members, that told me while at the school registering...

**Rhonda Crass:** Mr. McCoy, if you would, please limit your testimony to...

**Mr. McCoy:** ...yeah, I just, uh, I think the testimony is important...

Page **6** of **16**

**TATUM ISD**
**LEVEL III COX GRIEVANCE**
**OCTOBER 21, 2019**

and she spends a substantial amount of time, with him, so therefore, eligibility, uh, is, is met. Now I'm going to, uh, reserve my time and give it to Brian, so he can, address the issues of violation of state law and federal law, and then I'll, uh, come back in rebuttal.

**Rhonda Crass:** My understanding is that, is that also, you, uh, would ask us to, uh, for the Board to consider and adopt the arguments you've made in Mrs. Woodley's, uh, presentation regarding, uh, the hair and dress code issues you've raised in your complaint.

**Mr. McCoy:** That's correct.

**Rhonda Crass:** Alright, and Ms. Uh, Ms. (sound skips) do you have any objections, uh, to the Board considering this argument (sound skips) that was made?

**Mr. McCoy:** Another issue I want to point to, is that, one of the issues we had, and I think Bryan stressed that, was that the dress code, it, uh, dispro-, disproportionately affects African American, children, because it has, uh, the prohibition of, uh, puffs, which are afro puffs, the hairstyle, uh, as well as, the fact that sex and gender are included on his face, and so, I will hand it over to Bryan.

**Bryan Coster Gordan:** Thank you. Hello, my name is Bryan Coster Gordan, with the ACLU of Texas. I am going to talk a little bit about the residency requirements. Uh, as Mr. McCoy mentioned, the Texas Education Code, section 25.001b9, sets forth that amongst the many ways that a parent or a child can be enrolled in school, is that, if a parent lives in the District, and also if a grandparent, lives in the District, and provides a substantial amount of afterschool care, for the child, so that is definitely the case here, uh, this section does provide that the Board, is able to decide what that means, a substantial amount of afterschool care. There's no set test, but one of the courts that did interpret this law, is from the Lufkin division here in the Eastern District of Texas, this is a court case called Byrd v. Livingston Independent School District, uh, 674 F, supplement 225, that I'll send to, to your counsel, but this was a court case about a grandparent's rights, for kids in schools here in eastern Texas. And the courts have acknowledged that grandparents have equal protection, constitutional rights, to take care of their children. Uh, the school District has some discretion when, when residency is at stake, but you must use that discretion in accordance with the constitution. I will, you know, (recording skips) that there has been a long history of racial discrimination, with residents who are applying for school Districts. A lot of the lines, decades ago, where school Districts were drawn, with race in mind, with, with, uh, the purpose of excluding black students especially, from some of the better school Districts, in Texas. So, it's very important that when you use your discretion, that you are aware, that you do not let bias or racism, seep into your actions. The other thing I really wanted to focus on, is, the, first amendment issues at stake. We saw during the first hearing, some of the things we talked about in our writing here, about how, the school board, any government entity cannot take an adverse action against someone, for exercising their constitutional rights. Yet, during that hearing, we saw someone's social media posts and statements to the school board being used as evidence, against them. That itself, crosses a very fine line about retaliating against someone, in violation for their speech. These hearings, are about the students who have been expelled from school, and whether there is any, legal, basis, to expel them, or re-, unenroll them, as the District calls it, and that is clear for K█████, and both students, for K█████ especially that, there is no, basis, at all, to expel them, and that's what this hearing should focus on. The guardians and the parents are not on trial, their actions, uh, are being examined with a microscope, which is unfair, and discriminatory, and the real focus here should be on the students, and the District needs to look

Page **8** of 16

**CONFIDENTIAL**                                                                  *Tatum ISD 406*

**TATUM ISD**
**LEVEL III COX GRIEVANCE**
**OCTOBER 21, 2019**

**Rhonda Crass:** ... 36 minutes and 49 seconds left.

**Matt Crawford:** Alright, thank you. Uh, Mr. McCoy, at this time, we have reserved, approximately...

**Rhonda Crass:** Uh, 24 minutes and 45 seconds.

**Matt Crawford:** (sound skips) make your rebuttal presentation on behalf of the complainant, the Board secretary will indicate to you when approximately, how much time do you want?

**Rhonda Crass:** What kind of warning do you want?

**Mr. McCoy:** Uh, 5 minutes.

**Matt Crawford:** 5 minutes remaining. Uh, Mr. McCoy, you may proceed.

**Mr. McCoy:** Thank you. It's really interesting, that, uh, counsel for the District talks about the fact that, Mrs. Cox did something, "After the fact", because she kept saying, "After the fact". Well, they expelled K▮▮▮, "After the fact". After he was enrolled in school, he had gone to class, on several occasions, and what happened was, his mother complained, that they were treating him differently, at the school, because of his hair, because of his hairstyle, remember her, she testified, that her son put his hair up, because she put his hair up in a ponytail. So, before they put him in the principal's office, they didn't, have any issue with her residency, at all. So, after she complained, about, the dress code, how it's discriminatory, then, they went back in the records, and they dug deep in the records, to try to find something, and they said, "Oh, she doesn't live in the District", that's, that's "After the fact". It's not before the fact, after the fact. He was already enrolled in school. And as I said before, this is retaliation (sound skips) your own, Tatum's District policies preclude, someone from retaliating against, the student, if there is a complaint of discrimination, at the school, and that's what happened here. So, when she's says, "After the fact", this is what they did "After the fact", and it's wrong, you guys should sanction this type of conduct, by the District. Uh, she never touches on the fact, the Texas Education Code, precludes them from expelling, K▮▮▮, from school, she doesn't even touch that. This is a clear case, where, you have to reinstate him, because he's under 10 year's old, and the only way you can expel, a student, is if he brings a firearm to school. That's not what she talked about, talks about, she talks about something different. Now, it's really interesting, she said, "Oh, the grandmother didn't, uh, submit a declaration." Why didn't, they go, why didn't the District go to her grandmother, her mother, the kid's grandmother and ask, questions, about how much time, your kid spends at school, before they expelled him. They didn't ask her, any questions about that, 'cause they wasn't worried about that. This is all pretext, this is, all pretext, because, she complained of discriminatory actions, putting him in the principal's office, isolating him, ostracizing him, and all of that, and they, like she said, they were getting tired of that. And so now what they did was just kick him out of school, illegally. They kicked him out of school illegally. You heard her mother say, she spends a substantial amount of time, with her kid, she was pregnant during the time that he enrolled. Uh, she was truthful on the form, she had a property, she pays taxes, but the exception, to her living in the District, they glorified that she doesn't live in the District, is that her mother, the grandmother spends a substantial amount of time, with, the child, and that's what we have here. She meets the exception, and you have to go with that. She said it has nothing to do with the dress code, so the dress code is not an issue here, according to, the District's attorney. So, we won't go into the fact that the dress code, violates federal and state law, or any of that. But,

Page 11 of 16

CONFIDENTIAL                    Tatum ISD 409

**TATUM ISD**
**LEVEL III COX GRIEVANCE**
**OCTOBER 21, 2019**

you have to look at, the, Texas Education code 37.007, because that's really very important, and it's part of your own, uh, it's part of your own, uh, policies, here, where a student just can't be expelled from school. She says, "Oh, he wasn't expelled from school." Well, the fact is, he's no longer in school. He is not learning, the curriculum in school, I mean, what do you call that? He's not a transfer, he was in Kindergarten. So, don't let, the, District attorney manipulate, and fool you, because, this was clearly retaliatory. Right? Kambry testified, she had no problem with the District, before she complained of the discrimination, before she went, to the media, before, she did some social media posts, before she challenged the rule. No one ever said anything about where she lived, and you can't sanction this kind of conduct, it's wrongful conduct. I know Tatum is better than this. I just know, this school district, is much better than this. It's right before you, it's clear, the statutes clear, retaliatory actions are clear, the kid has been harmed. He's been taken out of school, they gave him a letter, saying, your kid is no longer, uh, able, to continue here, at this school, because of x, y and z, so he can get transferred somewhere else, on their letterhead. We asked for, a letter on their letterhead specifically, stating why, uh, he was no longer able, to continue to go to school there. Uh, but, nevertheless, the reason they gave, is pretext. It's pretext with discrimination, and retaliation, and you must see that. You can't harm this little kid. You know, I think Bryan mentioned, that, it seems like this, this hearing has been focusing on the mother, but this case is, about, the little child. What did he do when he was in school? He wasn't disruptive, they never said he was disruptive in school. He never acted out in school. He came to school, neat, and clean, ready to learn, uh, and all that was disrupted, because they felt there was too many complaints, uh, that the dress code was discriminatory. That's what this is all about. Don't let them fool you. Don't let, what, Ms. Castillo tells you today, fool you. You guys know the real reason why K▮ is not in school, not because, I mean, well, did they go back and check to see if any other student, uh, at Tatum, lives outside the District? No, they haven't presented any, any (?) evidence to suggest that, they did a, research to make sure that this rule is applied across the board to everyone. You know why? Because this is retaliatory, this is focused on Mrs. Cox, because she raised the issue of discrimination, and that's wrong, that's clearly wrong. And then they don't care about, this District don't care about the law. I wrote her, I wrote the District's attorney and told her, that she is violating, the advice that the has given the District, is violating, the Texas Education code, because he's only 5 years old. (long pause) So, that's all I have, for now. Uh, my request is that you reinstate K▮, uh, Cox back into school, so he can learn, and have an education, uh, like everyone else at the school, uh, and not buy their manipulation and their, uh, mistruths. That's all I have...

**Matt Crawford:** Thank you, Mr. McCoy. (pause) Ms. Castillo, at this time we have reserved approximately...

**Rhonda Crass:** 36 minutes.

**Matt Crawford:** 36 minutes for your rebuttal. You may make your rebuttal presentation on behalf of the administration. Uh, the Board, or counsel, will, uh, let you know, how much time would you like to have?

**Matt Crawford:** Uh, as far as...

**Rhonda Crass:** What kind of warning would you like?

**Matt Crawford:** Warning.

**Mr. McCoy:** Yes, I want to reserve 20 minutes for rebuttal.

**Matt Crawford:** Ok. The secretary of the Board of Trustees will keep the time.

**Rhonda Crass:** Would you like a warning?

**Mr. McCoy:** Yes, if you would be so kind.

**Rhonda Crass:** I'll let you know when you have 10 minutes left.

**Matt Crawford:** We have a minute written down, are we going to change to 10?

**Rhonda Crass:** Do you want to know when you have 15 minutes left?

**Mr. McCoy:** How about 20 minutes?

**Rhonda Crass:** Ok, I will let you know when you have, 20 minutes left.

**Matt Crawford:** If you will let me know (can't understand).

**Rhonda Crass:** I will.

**Matt Crawford:** Uh, at this time you may proceed with your presentation.

**Mr. McCoy:** Thank you. Morning, glad to be back at Tatum, uh, I'm not glad to be here under these circumstances, but I think it's really important for you to hear what the law is, with regards to the circumstances. Uh, Mrs. Woodley, Woodley's case, uh, I'm representing Michael Trimble, her grandson, but she is the, guardian ad litem for Michael. (sound skips) Uh, I also have some colleagues with me. I have Brian Klosterboer, who's here from the ACLU, American Civil Liberties Union. I also have Bernie Smith, here for, from, the NAACP, uh, National Association of the Advancement of Colored People, and I also have James Hix who is also from the same (can't understand). Uh, I think at some point I'm going to turn it over to Brian, (sound skips) going to elaborates, uh, on some highlights. Uh, now, for the record, we also submitted a few documents that we say support our position. We also have a copy of a letter written by the NAACP, uh, which we want to also, uh, admit into evidence, uh, in this hearing. We also have a letter from the Crown campaign. The Crown campaign is a campaign that, uh, was formed to eradicate discrimination based on hairstyles, uh, and, uh, natural hair. In California, we have introduced legislation of that, as well as expert testimony, that you can review. Now, the purpose of this hearing, is to get Michael, uh, Trimble reinstated, back into school. It has just been too long. He has gone through an emotional trauma, uh, since he actually started enrolled, being enrolled in school. Uh, we also, have requested that the, the Board change, portion, of its grooming policy, while we are requesting that it become, gender neutral, uh, and not discriminate based on sex or race. Now, the same of the facts, I am going to tell you is a condensed version of the facts in this case, uh, and I think it's important, uh, for you to (sound skips) uh, Michael began HeadStart on August 1st, of 2019. Uh, when he came to school, after enrollment, he was told, that his hair was too long. Uh, his guardian, Randi Woodley, asked to speak with, the Superintendent. She had a meeting with the Superintendent; the Superintendent told her that, uh, Michael had to cut his hair, pin his hair up, or come to school, uh, dressed as a, as a girl, uh, dressed in a dress, and then if someone asked him, he had to tell them that he was a girl. Obviously, Mrs. Woodley, as his guardian, objected to this, because she didn't think it was, reasonable, or made any sense whatsoever. So, after that meeting, with the Superintendent, uh, Mrs. Woodley went on social media. She expressed protest,

uh, of the policy which, uh, was told to her by the Superintendent, and she also attended a school board meeting. Uh, after she protested, uh, about the, discriminatory rule, uh, her grandson, was taken out of the classroom and placed in the principal's office. Uh, he was isolated in the principal's office, he was ostracized, he was not able to, uh, hang out with his peers, classmates. Uh, he wasn't able to have lunch with his classmates, uh, and Mrs. Woodley continued to, to protest, this. Uh, she also believed that that was retaliatory because she raised the issue, that, uh, the policy, the grooming policy that is at issue with the student (can't understand). The next thing that happened was, uh, Mrs. Woodley was, uh, at home and, uh, she realized that the Tatum Independent School District had called the police on her. Uh, uh, she also had CPS, services out, uh, Child Protective Services, uh, Tatum Independent School District called CPS on them, as well. Uh, after that, she continued to bring Michael to school, uh, dressed, as he, felt comfortable. Uh, another incident that happened was, after he, uh, went to school, uh, TISD, Tatum Independent School District precluded him from being transported, home. Uh, they also, indicated to Mrs. Woodley that he would, not be enrolled in school, so they basically expelled him from school. So that, that is the statement of facts, with regard to, uh, uh, Michael Trimble. Now, (pause) now the only way, a child, under 10-years-old, can be expelled from school, is if a child brought a weapon on campus, and that didn't happen here. Texas Education Code 37.007 provides that, a child under 10 years old, cannot be expelled, from school. (pause) Now, (pause) Tatum expels, uh, Michael from school an, anyway. Now, the education code provides that, uh, and the reas-, reason they gave for expulsion, was not, in writing. Mrs. Woodley asked for them to write on, a Tatum ISD letterhead what the reason was for the, uh, expulsion, and to date, she has received one. Now the Texas Education Code uh, is, something you should look at, because, it provides, that, uh, if, so basically, he cannot be, he cannot be expelled based on, a dress code, (pause) and Tatum Independent School District has its own policies regarding, expulsion. Now, as you look at Tatum Independent School District's, uh, student, conduct, code of conduct, it provides, on page 32, that when a student under the age of 10 engages in behavior that is expellable behavior, the student shall not be expelled, but placed in a DAEP program, which is a disciplinary, program. In this case, there was no, weapon that brought to campus, and therefore under this code section it was a violation of law, for the school district to, uh, expel him from school. Now, (pause) now the, uh, one of the reasons that was given to Mrs. Woodley, as indicated, was that, uh, Michael's hair was, uh, too long, and what they used to, uh, justify the expulsion was that, uh, he didn't meet, he didn't meet the standards of the dress code. (pause) The dress, dress code provides that, uh, (pause) no, (pause) essentially the, uh, the dress code at issue, is violative of federal and state law. Uh, the dress code provides that, uh, that no student can come to school with extreme style, uh, that there would be no symbols, letters, or extreme designs cut in the hair shall be permitted, no pony tails, duck tails, rat tails, male buns or puff balls shall be allowed on male students. And, this policy should not be enforced, going forward, because it violates federal and state law, because it is, uh, discrimination based on, uh, gender and sex. And under Title IX, uh, the tendency, when a school is getting federal funding, they are not allowed to discriminate. And what the court looks at is a heightened scrutiny standard, uh, where the school has to provide, a compelling (sound skips) and that can't be shown here. (pause) The policy is also discrimination as to, as to, uh, race, because it also, it says that, uh, no puff balls shall be allowed on male students, and that provision targets, African American, uh, students, uh, on its face. The policy also is discrimination as applied, because it disproportionately applies to African Americans because of the hairstyle, because of the texture and (sounds skips). (pause) Now, Ta-, Tatum School District also, has implemented its own policy, uh, regarding, sex stereotype, uh, because basically, this, policy,

TATUM ISD

WOODLEY GRIEVANCE

OCTOBER 21, 2019

discriminates, uh, based on the fact that males can't have, uh, pony tails or, uh, male buns, or puff balls, but females are allowed. (pause) So, what I, what I want you to take back from this, is that, one, the Texas Education Code (can't understand) the suspension, uh, the expulsion of Michael, because, he didn't bring a weapon to school. The dress code does not provide, uh, a reason for the school district to, uh, expel him from school. (pause). Uh, it's also, Michael's also in the HeadStart program, and the HeadStart program, uh, it's a federally funded program, and, uh, (pause), and basically, under the federal law... (long pause) Under the Texas, Education Code, uh, the school district didn't have the right to expel, Michael from school. Uh, the, the policy, the dress code policy, violates state and federal law, uh, because it's discrimination on its face for a, uh, school district to... (long pause). Well, under, uh, federal and state law, the policy that's at issue, is discrimination on its face, and as implied. Uh, it's discrimination on its face, because it, uh, has a gender, uh, based characteristic, uh, classification where it's a male student is converting from a female student. The, the, uh, Texas, Tatum Independent School District has a policy which precludes, uh, sexual stereotypes, uh, that's what this, that's what this rule is directed at, uh, gender, gender stereotype. Uh, under the, Tatum Independent School District's, own, uh, policies, uh, if you look at Tatum Independent School District's, uh, FFA(LOCAL), uh, it provides the gender-based harassment includes physical, verbal, non-verbal conduct, based on student's gender, student's expression of (can't understand) perceived as stereotypical, uh, (not sure, this sentence) gender, a student conform to stereotypical motions of masculinity, or femininity, uh, and for purpose of this policy the gender based harassment, it's considered prohibited harassment if the conduct is so severe or consistent. (pause) Uh, the, the dress code policy that was used here in Michael's case should not be, have been applied to him because he's in HeadStart program. The HeadStart program was federally funded, uh, and has, uh, no dress code, uh, policy. Uh, there is no HeadStart, uh, representative here, to, uh, to argue basically that, uh, what, uh, Michael did when he went to school with his hairstyle, violated any of their, HeadStart program policies. With regard to the, uh, discrimination on its face, the court, one of the reasons why the policy should not be, uh, enforced is because, uh, because of the, because of the fact that it, uh, treats males and females differently, and the court would look with heightened scrutiny, uh, if this case proceeds, uh, and the, uh, and the District has to prove a compelling reason or to justify the, uh, the rule itself, and the, and the District has not provided any (can't understand) data, which shows some justification for implementation of the rule. Uh, the policy is discrimination, (sound skips) because the fact that, uh, no ponytails, pig tails, no rat tails, male buns, puff balls, should be allowed on male students, and that particular language talks about puff balls, uh, is discrimination on its face because, uh, puff balls, is generally, uh, a hair style that African American have, and African American students have, and disproportionally affects, those students. (pause) And we also know that, this, uh, policy, discriminate policy, is not being applied equally across the board. Uh, we know (sound skips) that the, website, uh, the Tatum Independent, uh, School District's website, as well as, its, uh, yearbook you can see that Caucasian students have hair that falls in their face, and they're still allowed to, to still attend school. We also have, uh evidence, we also have evidence that, uh, (sound skips) another here on his shoulders, but because she is Caucasian, she has not been told that her son cannot come to school. Now, uh, the Board, (sound skips) and, it prohibits, uh, retaliation, in this case when Mrs. Woodley protested...

**Rhonda Crass:** You've used 25 minutes; you have 20 minutes remaining.

**Mr. McCoy:** Uh, when Mrs. Woodley, uh, protested the discrimination policy, things happened to her. Basically, her, her grandson was isolated in the principal's office, he was ostracized, uh, he

CONFIDENTIAL

wasn't able to see his, uh, his classmates. Uh, they called in CP-, Tatum Independent (sound skips) CPS, uh, on her, they, uh, called the police (sound skips) order, which is a, uh, "No trespass", uh, "no trespass" order, and plus they expelled Michael, uh, from school, uh, and that is a violation of, uh, his, 1st amendment, uh, rights, because he has a, freedom of speech. Now, uh, telling individuals what type of hairstyle they should have is, a slippery slope. It tells students that anyone, it tells people, that they have to confirm to a gender stereotype. There are people who have different religions, uh, there are individuals who, uh, have a specific culture, and this is, this is the individuals who are non-binary, people who are conditioning, and this rule will affect them as well, so, it doesn't, not necessarily, also affects African Americans because is disproportionally, uh, uh, targets them as well as, uh, other people who have religious, religious beliefs. So the, the, uh, points that I'd like for you to have and take back to deliberations is one, is that, uh, Michael was expelled from school in violation (sound skips) 07, uh, because he was under 10 years old, and the only way, that a child can be expelled, uh, is if he brings a firearm to school, and he did not. Uh, the, uh, the, the dress code policy, uh, is a violation of federal and state law, because, uh, one, it's a discrimination on its face, because it has a sex base, uh, sex base (sound skips). Uh, two, the, uh, the pol-, (sound skips) is discrimination based on race, because it included puffs, everyone knows that puff balls, uh, are (sound skips) the hairstyle, used, uh, (sound skips) also, it discriminates against, uh, African Americans because it disproportionally applied to them. Uh, and the 3rd thing that I want you to, uh, break down is, that Tatum Independent School Board has adopted policies that prohibits, uh (sound skips) stereotypes (sound skips) this rule focuses on, uh, masculinity and femininity, when it should not, hold some of those character, characteristics. Uh, to reserve my time, and I'm going turn it over for 10 minutes to Mr., uh, Klosterboer.

**Rhonda Crass:** You've used 29 minutes.

**Heather Castillo:** Can I have like, 30 seconds to plug my phone in down there?

**Matt Crawford and Rhonda Crass:** We'll stop your time.

**Rhonda Crass:** We'll stop your time to plug that in.

**Brian Klosterboer:** Good morning everyone!

**Board member:** Good morning.

**Brian Klosterboer:** My name is Brian Klosterboer; I'm an attorney with the ACLU of Texas, in Houston. Uh, the American Civil Liberties Union is a nonprofit, nonpartisan organization, that is dedicated to defending the civil rights, and civil liberties of all Texans. Much of my work focuses on protecting students in schools, from the discrimination that they face, including racial discrimination, and implicit bias. There is a couple things I'd like to emphasize, that Mr. McCoy has already talked about. On a school day, when Michael Trimble should be in school, getting an education with all of his other 4-year-old peers, uh, this situation has escalated, out of control. You know, no is saying that the District, the District has a right to enforce its policies, and to discipline students appropriately, but now it has escalated far beyond that, and as we have talked about, students under the age of 10, there is no legal basis, to expel them at all. The District has used language such as unenrolling a student, but there is no legal difference between unenrolling them and completely denying them an education, which is, the legal definition, of expulsion, under Texas law. Uh, even if the District had some legal rational for, removing this student from school, which we argue that it does not, it would still be prohibited from doing so, under the 1st

wasn't able to see his, uh, his classmates. Uh, they called in CP-, Tatum Independent (sound skips) CPS, uh, on her, they, uh, called the police (sound skips) order, which is a, uh, "No trespass", uh, "no trespass" order, and plus they expelled Michael, uh, from school, uh, and that is a violation of, uh, his, 1st amendment, uh, rights, because he has a, freedom of speech. Now, uh, telling individuals what type of hairstyle they should have is, a slippery slope. It tells students that anyone, it tells people, that they have to confirm to a gender stereotype. There are people who have different religions, uh, there are individuals who, uh, have a specific culture, and this is, this is the individuals who are non-binary, people who are conditioning, and this rule will affect them as well, so, it doesn't, not necessarily, also affects African Americans because is disproportionally, uh, uh, targets them as well as, uh, other people who have religious, religious beliefs. So the, the, uh, points that I'd like for you to have and take back to deliberations is one, is that, uh, Michael was expelled from school in violation (sound skips) 07, uh, because he was under 10 years old, and the only way, that a child can be expelled, uh, is if he brings a firearm to school, and he did not. Uh, the, uh, the, the dress code policy, uh, is a violation of federal and state law, because, uh, one, it's a discrimination on its face, because it has a sex base, uh, sex base (sound skips). Uh, two, the, uh, the pol-, (sound skips) is discrimination based on race, because it included puffs, everyone knows that puff balls, uh, are (sound skips) the hairstyle, used, uh, (sound skips) also, it discriminates against, uh, African Americans because it disproportionally applied to them. Uh, and the 3rd thing that I want you to, uh, break down is, that Tatum Independent School Board has adopted policies that prohibits, uh (sound skips) stereotypes (sound skips) this rule focuses on, uh, masculinity and femininity, when it should not, hold some of those character, characteristics. Uh, to reserve my time, and I'm going turn it over for 10 minutes to Mr., uh, Klosterboer.

**Rhonda Crass:** You've used 29 minutes.

**Heather Castillo:** Can I have like, 30 seconds to plug my phone in down there?

**Matt Crawford and Rhonda Crass:** We'll stop your time.

**Rhonda Crass:** We'll stop your time to plug that in.

**Brian Klosterboer:** Good morning everyone!

**Board member:** Good morning.

**Brian Klosterboer:** My name is Brian Klosterboer; I'm an attorney with the ACLU of Texas, in Houston. Uh, the American Civil Liberties Union is a nonprofit, nonpartisan organization, that is dedicated to defending the civil rights, and civil liberties of all Texans. Much of my work focuses on protecting students in schools, from the discrimination that they face, including racial discrimination, and implicit bias. There is a couple things I'd like to emphasize, that Mr. McCoy has already talked about. On a school day, when Michael Trimble should be in school, getting an education with all of his other 4-year-old peers, uh, this situation has escalated, out of control. You know, no is saying that the District, the District has a right to enforce its policies, and to discipline students appropriately, but now it has escalated far beyond that, and as we have talked about, students under the age of 10, there is no legal basis, to expel them at all. The District has used language such as unenrolling a student, but there is no legal difference between unenrolling them and completely denying them an education, which is, the legal definition, of expulsion, under Texas law. Uh, even if the District had some legal rational for, removing this student from school, which we argue that it does not, it would still be prohibited from doing so, under the 1st

amendment. So as a government entity, Tatum ISD cannot retaliate or take any action against someone based on the content, of their speech. Here, Mrs. Woodley has engaged in constitutionally protected activities under the first amendment, such as posting on social media, speaking to reporters, uh, engaging in a peaceful protest and demonstration, and coming to this very school board meeting before, to testify and petition the school board, to change the discriminatory provisions, in the dress and grooming code. All of those are constitutionally protected actions, but the District is then not allowed to take any adverse action against her in response, in whole or in part, to her speech. When courts examine those 1st amendment retaliation issues, they often look at the timing of the adverse action to the protected activity. Here, this, the timing, is very, very close. Mrs. Woodley, uh, organized a peaceful protest on September 20th and just a few day later on September 23rd, is when the District told her that, her grandson would no longer be allowed to come to school. So, that is extremely suspicious conduct that a court would look at very closely. We really want to emphasize here that the District now has a chance to remedy and rectify the situation. Before this thing goes to court, the District could change course, they could readmit and reenroll Michael Trimble in school, and then once that immediate important issue is fixed, then you all could consider any possible changes to the dress and grooming code. Uh, I agree with Mr. McCoy, that in the dress and grooming code there are only a couple of previsions that should be changed, that are discriminatory. Uh, but the immediate and 1st urgent priority, is ensuring that this 4-year-old child, gets an education that he is entitled to, under the law. Uh, we attached, in our, in our letter that we gave to all of you, it includes some materials on implicit bias, and the huge racial disparity in expulsions and suspensions in early childhood education. Uh, this is a very well documented trend, here in Texas, and also across the nation, that young, black boys, in particular, receive much harsher, uh, penalties and much harsher discipline than female students and non-black peers. Uh, a lot of this is due to implicit bias, which is things that people are not even consciously aware of, that there is a system, you know we live in a society where all of us have, deep, uh, engrained biases and the only way to confront those, as the materials that we have attached show you, is to very overtly try to counter act that. And when there is racism in our society, we have to be very explicit in acknowledging it, and if we are being honest, we are not impartially, and over disciplining, especially young black children at this early age where it leaves devastating, lifelong effects. In the materials from the Department of Education, Exhibit A that we've attached, show that when young black boys are expelled or suspended at an early age, they are 10 times more likely, to end up in the criminal justice system, and to have a negative relationship with their education throughout the rest of their educational career. So the very immediate thing that we are urging you to do today, is to readmit Michael Trimble in school to fix this ongoing violation of his constitutional rights, and then, to let his family and members of this community express their 1st amendment rights by coming and petitioning to you, to change discriminatory revisions of the dress and grooming code. We realize that you probably won't be able to change the dress and grooming code overnight, but you could fix at least one of the immediate, urgent issues, overnight. Uh, briefly on the dress and grooming code, as Mr. McCoy outlined there is a facial, sex classification in the dress and grooming code, which means that boy/male students are held to a higher standard than female students. Historically in Texas, the courts (sound skips) have said that that's ok. There are cases from Texas where that has been allowed, but there is a trend across the (sound skips), because the Supreme Court has been clear in every single case, that when the government, makes a classification based on sex, any government entity, that that is subject to heightened scrutiny, and

that has not been applied here in Texas in that context, but there was a recent court case, in Illinois, where a very similar hair length requirement was held to be unconstitutional.

**Rhonda Crass:** 6 minutes, you are now into Mr. McCoy's 10-minute rebuttal.

**Brian Klosterboer:** Uh, so just wrapping up. Even though historically in Texas this has been allowed, this is something that courts are looking at more closely and many other districts, even entire states have adopted gender neutral, uh, dress and grooming codes without any incident. Uh, most of the largest school districts that are in Texas have a gender-neutral dress code that says something like, (sound skips) they are neat, clean, and out of their eyes. Uh, they don't discriminate, based on male or female or impulse sex stereotypes and most school districts don't have explicit things that are based on race, such as a banning puff balls. A court would look at that as a proxy, for discrimination if there is a hairstyle (sound skips) that only one racial group uses, that is pretty explicit racial discrimination. But all of issues, like I said we loved to talk to you about at future board meetings and we can work on, you know, changing those policies over time. The really urgent and immediate need here today is to try to get this 4-year-old student, back in school.

**Rhonda Crass:** You have 9 minutes left, for your rebuttal.

**Mr. McCoy:** Ok.

**Matt Crawford:** Alright, thank you guys. Uh, members of the Board, I am going to ask that you hold your questions, if any, until the conclusion of the presentation from both sides. Who will be making the presentation on behalf of the administration?

**Heather Castillo:** Heather Castillo.

**Matt Crawford:** Ms. Castillo, you have 45 minutes to make your presentation on behalf of the administration. Do you wish to reserve a portion of that allotted time for any rebuttal?

**Heather Castillo:** Uh, I'd like to have a 30-minute warning. Uh, I am going to present from here if that's ok.

**Matt Crawford:** Ok. Uh, the secretary of the board of trustees will keep the time or...

**Rhonda Crass:** ...me.

**Matt Crawford:** Uh, (can't understand) Uh, Ms. Castillo, you may proceed with your presentation at this time.

**Heather Castillo:** Thank you, Board President Crawford and members of the Board. Uh, this presentation is going to be based upon facts. The District has had to weather ongoing attacks for months, now. Principal Fite, Dr. Richardson and employees have had to endure repeated and unthwarted accusations on nearly a daily basis, uh, accusations of isolating and harming a child, uh, being discriminatory, on and on. Uh, the District, especially Tatum's primary, have endured ongoing disruptions, and it needs to stop. The District administration has had to put up with relentless accusations without being able to respond, due to student confidentiality reasons, but since Mrs. Woodley and Mrs. Cox have asked for this grievance to be given in open session, the administration will finally be able to tell its side of the story. I really appreciate the opportunity to present this information. These cases are not about expelling 4 and 5-year old's, uh, no one has









