IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| M.T., a minor by and through his grandmother and next friend, EDWINA WOODLEY, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>TATUM UNIFIED SCHOOL DISTRICT,<br><br>Defendant. | § § § § § § § § § § § § | C.A. NO.: 2:21-cv-00364 |

**PLAINTIFFS' SUPPLEMENTAL BRIEF DISCUSSING THE
APPLICABILITY OF THE TEXAS CROWN ACT**

1. It cannot reasonably be disputed that when Plaintiffs, M.T. and K.C., enrolled in Tatum ISD, they had the constitutionally protected right to be free from race discrimination.

2. Plaintiffs alleged in their grievances before the Tatum ISD Board of Trustees that Tatum ISD's hair and grooming policy unlawfully discriminated against them on the basis of their race.

3. On September 22, 2021, Plaintiffs filed the instant action against Tatum ISD for instituting and maintaining racially discriminatory hair and grooming policies.

4. On May 27, 2023, Texas Governor Greg Abbott signed into law the CROWN Act (House Bill No. 567), making Texas the twenty-first state to ban racial discrimination based on hair texture or hairstyle in schools, employment, and housing. The ("CROWN") Act, stands for Creating a Respectful and Open World for Natural Hair **amends**[1] the definition of race in state

---

[1] When the legislature amends a statute, that amendment is presumed to change the existing law. *Ralston Oil and Gas Co. v. Gensco, Inc.*, 706 F.2d 685, 693 (5th Cir. 1983) *citing Nelms v. Gulf Coast State Bank,* 516 S.W.2d 421, 424 (Tex.Civ.App. 1974).

1

antidiscrimination statutes to include traits historically associated with race, including hair, texture and protective hairstyles, including but not limited to "braids, locs, and twists." The purpose of the act is to combat race-based discrimination and bias based on hair texture and hairstyle.

5. Accordingly, the CROWN Act is *interpretive,* meaning that it is not new law and not a retroactive change, but is the correct construction of existing discrimination law.

6. The question to be decided now is if the CROWN Act, which will be fully effective as of the time the case is set to be heard and decided, should govern Tatum ISD's discriminatory conduct against 4 and 5 years old African American students, occurring before the stated effective date of the CROWN Act.

7. The answer to this question must be resolved in the affirmative. This is because when considering race discrimination claims "[t]he usual rule is that federal cases should be decided in accordance with the law existing at the time of decision." *Bradley v. School Bd. of City of Richmond,* (1974) 416 U.S. 696, 711.[2]

8. Furthermore, "[a]s state law changes, the federal courts must apply the new law, regardless of prior decisions." (*Broussard v. Southern Pac. Transp. Co.*, 625 F.2d 1242, 1246 n.3 (5th Cir. 1980) [where Court applied recent clarification on the law of gross negligence] and *Vandenbark v. Owens-Illinois Glass Co.,* (1941) 311 U.S. 538, [wherein the Court held that a federal appellate court in exercising diversity jurisdiction must follow a state court decision which was subsequent to and contradicted the district court decision.]).

9. Defendant contests that the CROWN Act is a new rule of law that has no bearing on

---

[2] For this reason, Plaintiffs also request that their state law claims for race discrimination be reinstated based upon the signing of the CROWN Act.

the outcome of the instant action. However, as stated above it cannot reasonably be disputed that Tatum ISD could be liable for race discrimination under "pre-existing theories" of law. *See Landgraf v. USI Film Prods.*, (1994) 511 U.S. 244, 278.

10. For example, CROWN Act has major implications on Plaintiffs' pre-existing rights under Section 1983 of Title 42 of the United States Code which was originally enacted by Congress as Section 1 of the Ku Klux Klan Act of April 20, 1871, to ensure United States citizens would be free from discrimination under the color of state law.

11. Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

12. Section 1983's purpose was to enforce the provisions of the Fourteenth Amendment to the United States Constitution. Accordingly, prohibiting discrimination on the basis of race does not constitute new law.

13. Texas' amendment of the definition of race to explicitly to include traits historically associated with race, including hair, texture and protective hairstyles did not create a "new rule" of law, but simply officially recognized African-Americans' pre-existing Constitutional right to be free from discrimination based upon their race.

14. Accordingly, the CROWN Act was clearly designed to cure defects in Texas' statutory scheme, regarding race discrimination. Application of such cures are often sustained because the interest in the retroactive curing of such a defect in the administration of government outweighs the individual's interest in benefiting from the defect. (*See Thorpe v. Housing Authority,* (1969) 393 U.S. 268, 280-81 and *Bradley v. School Board of City of Richmond,* (1974)

416 U.S. 696). (See also Exhibits, A-C, public support of the retroactive curing of the CROWN Act in the instant action).

15. Therefore, the CROWN Act, which will be fully effective as of the time the case is set to be heard and decided, should govern Tatum ISD's discriminatory conduct occurring before the stated effective date of the CROWN Act, "unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley, supra* at 711.

16. There is no manifest injustice in applying the CROWN Act, because the same remedies would have been available to plaintiff through a section 1983 claim before and after the enactment of the CROWN Act.

17. As the Supreme Court explained in *Bradley*, to decide if there is manifest injustice, the court must look at three factors: (1) the nature and identity of the parties, (2) the nature of their rights, and (3) the nature of the impact of the change in the law upon those rights. *Bradley supra* at 717.

18. In this case the parties consist, on the one hand, of the School Board, a publicly funded governmental entity, and, on the other, two African American children, ages 4 and 5, whose constitutional right to a nondiscriminatory education has been advanced by this litigation. With the Board responsible for the education of the very students who brought suit against it to require that such education comport with constitutional standards, it is not appropriate to view the parties as engaged in a routine private lawsuit. In this litigation the plaintiffs may be recognized as having rendered substantial service both to the Board itself, by bringing it into compliance with its constitutional mandate, and to the community at large by securing for it the benefits assumed to flow from a nondiscriminatory educational system." *Bradley supra* at 719.

19. "The second aspect of the Court's concern that injustice may arise from

retrospective application of a change in law relates to the nature of the rights effected by the change. The Court has refused to apply an intervening change to a pending action where it has concluded that to do so would infringe upon or deprive a person of a right that had matured or become unconditional." *Bradley supra*, at 720.

20. It cannot be claimed that the publicly elected School Board had a right to discriminate against its African American students with the use of funds allocated to it by the taxpayers. These funds were essentially held in trust for the public, and at all times the Board was required to act within the limitations of the anti-discrimination laws in place in the United States.

21. "The third concern has to do with the nature of the impact of the change in law upon existing rights, or, to state it another way, stems from the possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." Id.

22. Here there is no increased burden was imposed by the CROWN Act as it did not alter the Board's constitutional responsibility for providing pupils with a nondiscriminatory education. Also, there was no change in the substantive obligation of the parties.

23. Based on the foregoing all of the *Bradley* factors weigh in favor of applying the CROWN Act to the instant action.

LAW OFFICE OF BRADLEY STEELE

*/s/ Waukeen McCoy*
BRAD STEELE
LAW OFFICE OF BRADLEY STEELE
Texas Bar No. 19099350
1101 Judson Road
Longview, Texas 75601
Telephone: 903/234-8844
Facsimile:  903/234-8848
Email:  brad@bradsteelelaw.com

WAUKEEN McCOY
California Bar No. 168228
111 Maiden Lane, 6th Floor
San Francisco, CA 94108
Telephone: 415/675-7705
Facsimile:  415/675-2530
Email:  mail@mccoyslaw.com
*Admitted *Pro hac Vice*

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

*/s/ Waukeen McCoy*
_ Attorney for Plaintiffs

# EXHIBIT A



SAN FRANCISCO BRANCH



Dr. Jonathan Butler
1399 McAllister Street
San Francisco, CA 94103
jzbutlerphd@gmail.com
415.638.0102

October 9, 2023

The Honorable Robert W. Schroeder III
United States District Court
Eastern District of Texas
Marshall Division

Re: Case Number 2-21-cv-00364

Dear Judge Schroeder,

I hope this letter finds you well. I am writing to respectfully urge the court to honor the CROWN Act in the aforementioned case. As a concerned citizen and advocate for equality, I strongly encourage the court to recognize the importance of this legislation and its implications for combating discrimination based on race or ethnicity within our society.

The CROWN (Creating a Respectful and Open World for Natural Hair) Act has been enacted in several states, including California, New York, and New Jersey, to ensure that racial or ethnic hairstyles are protected against discrimination in educational institutions, workplaces, and public accommodations. Its primary aim is to address and alleviate the unjust treatment experienced by people of color due to having natural hairstyles or protective styles such as braids, twists, or locs.

In the case at hand, it is my understanding that the issues raised touch on discriminatory practices related to hairstyle choices. It is crucial for the court to consider the larger implications that a ruling in favor of upholding the CROWN Act would have, as it would set a precedent for promoting inclusivity, social justice, and equality for all individuals within the jurisdiction of the Eastern District of Texas.

By honoring the principles and intentions of the CROWN Act, the court has an opportunity to recognize and correct injustices that have historically discriminated against people of color based on their natural hair or hairstyles closely associated with their racial or ethnic identity. Furthermore, by recognizing that discriminating against natural hairstyles perpetuates harmful stereotypes, the court can contribute to the eradication of systemic racism in our legal system and society at large.

I am confident that your experience, knowledge, and commitment to justice will duly guide your decision-making process in this case. I sincerely hope that you will incorporate the principles enshrined in the CROWN Act, which promote equality and non-discrimination, in reaching a just and fair ruling.



Thank you for your time, attention, and consideration of this matter. Your dedication to upholding the ideals of justice is greatly appreciated by the community you serve. If there is anything else I can provide to support the consideration of this matter, please do not hesitate to reach out to me.

Yours respectfully,

Jonathan Butler
1st Vice President
NAACP San Francisco Branch

Executive Director
San Francisco African American Faith Based Coalition

Associate Minister
Third Baptist Church of San Francisco

1290 Fillmore Street ● San Francisco, CA 94115  ●  Suite 109  ●  (415) 922-0650  ●  Fax: (415) 922-0856

# EXHIBIT B



October 8, 2023

The Honorable Robert W. Schroeder III
The Eastern District of Texas
Marshall Division
Case no: 2-21-cv-00364

Honorable Judge Schroeder III

The case of Plaintiffs M.T. and K.C. (young juveniles) in Tatum, Texas has been brought to our attention. They were forced out, and not allowed to attend school in 2019 because they were wearing natural Black hairstyles. This act of retaliation occurred in 2019 when the Plaintiffs were protected constitutionally against race discrimination and expanded when Governor Greg Abbott signed the Crown Act in May 2023.

It is our understanding that the case of Plaintiffs M.T and K.C. will be the first case of hair discrimination to be heard in Texas since the passage of the Crown Act in that state on October 16, 2023.

The Crown Act is accepted in many cities and states across the United States including Texas, since Governor Greg Abbott signed the Crown Act (House Bill #567) on May 27, 2023. Although the bill went into effect on September 2, 2023, it is our opinion that it should be applicable as existing law in this case. This bill and other similar bills have been passed banning the discrimination against natural hair and protecting the rights of citizens to wear their hair naturally since 2019.

The Crusader Newspaper Group in Chicago, Illinois and Gary, Indiana join other civil and human rights organizations in urging the court to honor the Crown Act in this case.

Respectfully submitted by

*Dorothy R. Leavell*

Dorothy R. Leavell
Editor and Publisher
Crusader Newspaper Group
(Chicago, Illinois and Gary, Indiana)

6429 S Dr. Martin Luther King Dr.
Chicago, Illinois 60437

news@chicagocrusader.com
www.chicagocrusader.com

p 773 752 2500
f 773 752 2817

**Dorothy R. Leavell**
Editor & Publisher

# EXHIBIT C



October 6, 2023

Honorable Judge Robert W. Schroeder III
Eastern District of Texas, Marshall Division

Re: Case No. 2:21-cv-00364 – Support for Plaintiffs M.T. and K.C.

Dear Judge Schroeder,

I hope this letter finds you well. I am writing to express my heartfelt support for Plaintiffs M.T. and K.C. in the case referenced above. Their courage and determination to challenge racial discrimination based on hair texture and hairstyle are truly commendable.

The circumstances surrounding this case are deeply troubling. The fact that two young children, M.T. and K.C., were subjected to discriminatory practices within the educational system due to their natural Black Hairstyles is a stark reminder of the need for change. Hair-based discrimination, whether official or unofficial, sends a message that cultural diversity and individual identities are not valued, and it has no place in our society.

I am encouraged by the recent passage of the CROWN Act in Texas (House Bill No. 567), which makes Texas the twenty-first state to prohibit racial discrimination based on hair texture or hairstyle. This legislation is a significant step forward in the fight against race-based discrimination and bias, particularly in schools, employment, and housing. It recognizes that traits historically associated with race, including hair, texture, and protective hairstyles, are integral parts of one's identity and should be protected under anti-discrimination laws.

Tatum Independent School District's continued enforcement of policies that allow the discipline of African American students for their hairstyles, even after the passage of the CROWN Act, raises important questions about the implementation of this legislation. The outcome of M.T. and K.C.'s case will undoubtedly set a crucial precedent for how the government can regulate African American hairstyles in schools and workplaces moving forward.

I strongly urge the Court to recognize the significance of the CROWN Act in relation to the facts of this case. While the Plaintiffs filed their lawsuit in 2019, before the CROWN Act was passed, the Act merely serves to expand the definition of race to include hair texture and hairstyle, reaffirming the constitutionally protected right to be free from invidious race discrimination. This legal recognition is a significant milestone, and it is essential that it is applied retroactively to address past injustices.
I respectfully request that you consider this letter as a statement of support for Plaintiffs M.T. and K.C. and their pursuit of justice. It is my sincere hope that the Court will recognize the



profound impact of the CROWN Act on this case and take it into account when rendering a decision.

Thank you for your attention to this important matter. Your wisdom and impartiality in administering justice are greatly appreciated.

Sincerely,

*Regina Wilson*
Regina Wilson
Executive Director