IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| M.T., a minor by and through his grandmother and next friend, EDWINA WOODLEY, et al., § § § Plaintiffs, § § vs. § TATUM UNIFIED SCHOOL DISTRICT, § § Defendant. § | | C.A. NO.: 2:21-cv-00364 |

**TATUM INDEPENDENT SCHOOL DISTRICT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF ON THE APPLICABILITY OF THE TEXAS CROWN ACT**

Tatum Independent School District (the District) files its Responses to Plaintiffs' Supplemental Brief on the Applicability of the Texas CROWN Act (Dkt. 116), as follows:

**A.    Controlling authority dictates that the Texas CROWN Act is not retroactively applicable to Plaintiffs' remaining federal law claims.**

As anticipated at the hearing, the authority Plaintiffs cited to the Court is unpersuasive. Plaintiffs point to cases from the 1960s, 1970s, 1980s, and 1990s that relate to changes made to state law in the middle of litigation involving *state* law claims or diversity jurisdiction cases. *See, e.g.,* Dkt. 116 at ¶¶ 4 at n.1 (citing to *Ralston Oil and Gas Co. v. Gensco*, 706 F.2d 685 (5th Cir. 1983) (diversity case discussing amendments made to the Texas Deceptive Trade Practices Act), 8 (citing to *Broussard v. Southern Pac. Transp. Co.,* 625 F.2d 1242 (5th Cir. 1980) (applying most recent state law in a state wrongful death action), 8 (citing to *Vandenbark v. Owens-Illinois Glass Co.*, 311 U.S. 538 (1941) (diversity case). This case does not involve diversity jurisdiction and does not

involve state law claims. *See* Dkt. 28 (dismissing with prejudice Plaintiffs' state law claims).[1] As such, these cases do not support Plaintiffs' claim that the CROWN Act applies retroactively, and the Court can disregard these cases.

What is more, with respect to the authority Plaintiffs cite governing federal claims, the Supreme Court of the United States put Plaintiffs' argument to bed when it decided *Landgraf v. USI Film Products* and reaffirmed the axiom that statutory retroactivity is not favored. 511 U.S. 244 (1994) (holding provisions of the Civil Rights Act of 1991 creating the right to recover compensatory and punitive damages for certain violations of Title VII did not apply to Title VII cases pending on appeal when the statute was enacted). In doing so, the Supreme Court clarified its holding in *Bradley v. School Bd. of City of Richmond*, 416 U.S. 696 (1974) – a case Plaintiffs rely on heavily in their brief. *See* Dkt. 116 at ¶¶ 7, 14-15, 17-19, 21, 23. The Supreme Court noted that although the language in *Bradley* "suggests a categorical presumption in favor of application of *all* new rules of law, we now make it clear that *Bradley* did not alter the well-settled presumption against application of the class of the new statutes that would have genuinely 'retroactive' effect." *Landgraf*, 511 U.S. at 277 (emphasis in original). The Supreme Court further noted that its ruling in *Bradley* dealt with the issue of awarding attorney's fees, which is "collateral to the main

---

[1] In a footnote, for the first time the week before trial and without any legal support, Plaintiffs now request the Court reinstate their state law claims for race discrimination that were previously dismissed, *with prejudice*, by the Court. *See* Dkt. 28. This request is improper, comes too late in time, and should be rejected by the Court. Regardless, Chapter 106 of the Texas Practice and Remedies Code (which is the statutory basis for the only state law claims the Plaintiffs asserted) only provides for injunctive relief and it is undisputed that the District has already revised its dress and grooming code and K.C. does not attend school within the District. *See* Tex. Civ. Prac. & Rem. Code § 106.002. As such, even if this request was proper (and it is not), any state law claim would be moot.

cause of action and uniquely separable from the cause of action to be proved at trial." *Id*. (internal citations and quotations omitted). In this case, Plaintiffs are attempting to create a new cause of action or otherwise use the existence of the Texas CROWN Act to establish liability against the District in their federal race discrimination claims. The Supreme Court has made clear they cannot do so. *Id*. at 286 ("The presumption against statutory retroactivity is founded upon sound considerations of general policy and practice, and accords with long held and widely shared expectations about the usual operation of legislation."), 245 ("The presumption against statutory retroactivity is founded upon elementary considerations of fairness dictating that individuals should have an opportunity to know what the law is and to conform their conduct accordingly.").

It is undisputed that Plaintiffs' alleged injuries accrued in 2019. *See* Dkt. 56. It is further undisputed that the Texas CROWN Act went into effect on September 1, 2023 – four years later. *See* Tex. Educ. Code 25.902. The full text states:

> PROHIBITION ON CERTAIN DISCRIMINATION IN STUDENT DRESS OR GROOMING POLICY. (a) In this section, "protective hairstyle" includes braids, locks, and twists. (b) Any student dress or grooming policy adopted by a school district, including a student dress or grooming policy for any extracurricular activity, may not discriminate against a hair texture or protective hairstyle commonly or historically associated with race.

There is nothing in the language of the statute, nor in Plaintiffs' briefing, that would establish the Texas Legislature's intent for the Act to apply retroactively – even if Plaintiffs had live state law claims. Nor does the Act create a cause of action – state or federal. It is simply inapplicable to this case. And, as the Supreme Court observed in *Landgraf*, applying

3

it retroactively would violate "elementary considerations of fairness." *Landgraf*, 511 U.S. at 245.

B. **A Texas state law enacted in 2023 cannot possibly be evidence of Plaintiffs' race discrimination claims that accrued in 2019.**

To the extent Plaintiffs also argue the Texas CROWN Act is somehow evidence or proof that the District's former 2019 dress and grooming code was racially discriminatory on its face, they are incorrect. It is undisputed that the former 2019 dress and grooming code allowed for African American and Black students to wear protective hairstyles, including locs and braids. *See* Dkt. 75 at Exh. 3 at 21:6-22:17; Exh. 2. In fact, K.C. attended school with his hair in locs without issue. *Id*. at Exh. 3 at 28:9-19, 48:19-49:3, 61:8-62:17; Exh. 10 at ¶ 12; Exh. 37 at 40:8-12, 102:4-18. M.T. did not wear his hair in locs or any other protective hairstyle commonly associated with race; rather, his hair was long and, went let down, fell below his shoulders. *Id*. at Exh. 5 at 67:15-70:3. Regardless, it is undisputed that he was never required to cut his hair in 2019 and, further, after M.T. (properly) re-enrolled in the District, and after the District revised its dress and grooming code, M.T. has had no further issues. *Id*. at Exh. 5 at 67:15-69:11, 195:19-23; Exh. 29; Exh. 31. As such, the District's current and even former 2019 dress and grooming code do not violate the Texas CROWN Act.

C. **Plaintiffs' letters of political support are immaterial to the legal issue before the Court in the supplemental briefing – which is the question of whether the Texas CROWN Act applies retroactively to this matter – and should be stricken.**

In a clear deviation from the leave the Court granted Plaintiffs to provide supplemental authority, Plaintiffs attach to their supplemental brief three letters from

4

various advocacy groups located in other states. *See* Dkt. 116 at Exhs. A-C. The Court should strike these letters from Plaintiffs' supplemental brief.

The Court afforded Plaintiffs the opportunity to provide supplemental briefing on the applicability of the Texas CROWN Act based on new[2] caselaw Plaintiffs cited during oral argument on the District's motion for summary judgment, but which Plaintiffs were not prepared to answer questions posed by the Court on or otherwise discuss. *See* Dkt. 111; Dkt. 117 at 38:15-41:4. The Court, however, did not allow Plaintiffs to submit additional (and improper) evidence in the form of various letters from advocacy groups who are undoubtedly unaware of the actual facts and evidence of this case. *See* Dkt. 116 at Exhs. A-C. These letters are not evidence nor are they law or persuasive legal authority. Rather, they amount to improper advisory opinions, submitted after the District's motion for summary judgment was fully briefed and heard by the Court. As such, they should be stricken and disregarded by the Court.

## CONCLUSION AND PRAYER

It is apparent that Plaintiffs can cite no authority that would require, or permit, this Court to apply the Texas CROWN Act retroactively, and Tatum Independent School District requests the Court grant its motion for summary judgment, dismiss all of Plaintiffs' claims against it with prejudice, tax costs against Plaintiffs, and grant it any further relief it is justly entitled to.

---

[2] To be clear, the caselaw cited by Plaintiffs during oral argument on the District's motion for summary judgment – and contained in their supplemental brief – are decades old. The District describes Plaintiffs' caselaw as "new" because these cases were simply newly cited by Plaintiffs during oral argument, but not found anywhere in Plaintiffs' summary judgment briefing. *See* Dkt. 81.

Respectfully submitted,

ROGERS, MORRIS, & GROVER, L.L.P.

_____
JONATHAN G. BRUSH
State Bar No. 24045576
Fed. I.D. No. 619970
jbrush@rmgllp.com
AMY DEMMLER
State Bar No. 24092337
Fed. I.D. No. 3227731
ademmler@rmgllp.com
5718 Westheimer, Suite 1200
Houston, Texas 77057
Telephone:   713/960-6000
Facsimile:   713/960-6025

ATTORNEYS FOR TATUM ISD

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

_____
Attorney for Tatum ISD

6