IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| M.T., a minor by and through his grandmother and next friend, EDWINA WOODLEY, et al., | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | C.A. NO.: 2:21-cv-00364 |
| TATUM UNIFIED SCHOOL DISTRICT, | § § | |
| Defendant. | § § | |

## <u>TATUM INDEPENDENT SCHOOL DISTRICT'S MOTION TO RECONSIDER THE PARTIAL DENIAL OF THE DISTRICT'S MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT (DKT. NO. 119)</u>

Tatum Independent School District (TISD or the District) files its Motion to Reconsider the Partial Denial of the District's Motion to Dismiss and Motion for Summary Judgment (Dkt. No. 119), as follows:

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION & SUMMARY OF ARGUMENT.................................................1

STATEMENT OF THE ISSUES....................................................................................2

ARGUMENT & AUTHORITIES ...................................................................................2

    A.  The Court erred in applying the governing law to the undisputed
       evidence when denying the District's motions against Plaintiffs'
       Section 1983 race discrimination claim...............................................................3

          1.  The Court did not properly apply controlling authority
             governing the causation requirement for Plaintiffs'
             Section 1983 race discrimination claim and, as a result,
             did not apply the governing law to the undisputed evidence............................3

          2.  Further, Plaintiffs cannot establish a pattern of prior,
             highly similar unconstitutional violations...........................................................9

    B.  The Court erred in applying the governing law to the undisputed
       evidence when denying the District's motions against Plaintiffs'
       Title VI claim....................................................................................................14

CONCLUSION AND PRAYER .....................................................................................18

CERTIFICATE OF SERVICE .......................................................................................19

## TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................ 14

*Bd. of the Cnty. Comm'rs v. Brown*,
520 U.S. 397 (1997) ................................................................ 4

*Blanchard-Daigle v. Geers*,
802 F. App'x 113 (5th Cir. 2020) .......................................... 9, 11, 12, 13

*Blunt v. Lower Merion Sch. Dist.*,
767 F.3d 247 (3d Cir. 2014) ................................................... 17

*Bradford v. City of Tatum*,
2023 WL 3432185 (E.D. Tex. Mar. 8, 2023), *report and recommendation adopted*, 2023 WL 2784863 (E.D. Tex. Apr. 4, 2023) ........................... 8

*Burge v. St. Tammany Parish*,
336 F.3d 363 (5th Cir. 2003) ................................................... 9

*City of St. Louis v. Praprotnik*,
485 U.S. 112 (1988) ................................................................ 7

*Clayton ex rel. Hamilton v. Tate Cnty. Sch. Dist.*,
560 F. App'x 293 (5th Cir. 2014) ............................................ 10

*Club Retro, L.L.C. v. Hilton*,
568 F.3d 181 (5th Cir. 2009) ................................................... 10

*Coggin v. Longview Independent School District*,
289 F.3d 326 (5th Cir. 2002), *vacated*, 309 F.3d 307, 337 F.3d 459
(5th Cir. 2003), *cert. denied*, 540 U.S. 1018 ..................................... 2

*Covington v. City of Madisonville*,
812 F. App'x 219 (5th Cir. 2020) ............................................ 7

*Doe v. Leander Independent School District*,
No. 1:20-CV-00408-LY, 2020 WL 13833132 at *9 (W.D. Tex. Dec.
22, 2020), *adopted by* 2021 WL 11670039 (W.D. Tex. Jan. 8, 2021) ................... 5, 6

*Estate of Davis v. City of N. Richland Hills*,
406 F.3d 375 (5th Cir. 2005) ................................................... 9

*Eugene v. Alief Indep. Sch. Dist.*,
   65 F.3d 1299 (5th Cir. 1995) ............................................................ 9, 11

*Feliciano v. City of Cleveland*,
   988 F.2d 649 (6th Cir. 1993) ................................................................. 8

*Fennell v. Marion Indep. Sch. Dist.*,
   804 F.3d 398 (5th Cir. 2015) ............................................................... 14

*Forsyth v. Barr*,
   19 F.3d 1527 (5th Cir. 1994) ............................................................... 14

*Grandstaff v. City of Borger*,
   767 F.2d 161 (5th Cir. 1985) ............................................................. 6, 7

*Jackson v. Katy Indep. Sch. Dist.*,
   951 F. Supp. 1293 (S.D. Tex. 1996) ................................................... 15

*Jett v. Dall. Indep. Sch. Dist.*,
   7 F.3d 1241 (5th Cir. 1993) ................................................................... 4

*Johnson v. Moore*,
   958 F.2d 92 (5th Cir. 1992) ................................................................... 3

*Johnson v. Rodriguez*,
   110 F.3d 299 (5th Cir. 1997) ............................................................... 10

*Jones v. City of Detroit*,
   20 F.4th 1117 (6th Cir. 2021) ............................................................. 14

*Knighton v. Univ. of Tex. at Arlington*,
   2021 WL 9881105 (N.D. Tex. May 24, 2021), *report and recommendation adopted*, 2021 WL 2337167 (N.D. Tex. June 8, 2021) ......................... 15

*Monell v. Dep't of Soc. Servs. of City of New York*,
   436 U.S. 658 (1978) .......................................................................... 3, 9

*Peterson v. City of Fort Worth*,
   588 F.3d 838 (5th Cir. 2009) .................................................. 4, 6, 9, 10

*Piotrowski v. City of Houston*,
   237 F.3d 567 (5th Cir. 2001) ................................................................. 3

*Ramsey v. Henderson*,
   286 F.3d 264 (5th Cir. 2002) ............................................................... 16

*Rivera v. Hous. Indep. Sch. Dist.*,
  349 F.3d 244 (5th Cir. 2003) ....................................................................... 4

*Rodgers v. Smith*,
  842 F. App'x 929 (5th Cir. 2021) ............................................................... 14

*Rollerson v. Brazos River Harbor Navigation Dist.*,
  6 F.4th 633 (5th Cir. 2021) ......................................................................... 14

*Samuel v. City of Houston*,
  2023 WL 6444888 (S.D. Tex. Sept. 29, 2023) ........................................ 6, 7

*U.S. v. Almeida-Biffi*,
  825 F.2d 830 (5th Cir. 1987) ...................................................................... 16

*Valle v. City of Houston*,
  613 F.3d 536 (5th Cir. 2010) ................................................................. Passim

*Webster v. City of Houston*,
  735 F.2d 838 (5th Cir. 1984) (en banc) ...................................................... 9

*Williams v. Ellington*,
  936 F.2d 881 (6th Cir. 1991) ........................................................................ 8

*Wyatt v. Kilgore*,
  2011 WL 6016467,n.4 (E.D. Tex. Nov. 30, 2011), *rev'd in part on other
  grounds*, 718 F.3d 496 (5th Cir. 2013) ................................................. 5, 6, 8

# STATE STATUTES

Tex. Educ. Code § 21.208 ............................................................................. 2

Tex. Educ. Code § 21.258 ............................................................................. 2

Tex. Educ. Code § 21.259 ............................................................................. 2

# FEDERAL STATUTES, REGULATIONS, AND RULES

Local Rule CV-7(a)(4) .................................................................................. 1

## <u>INTRODUCTION & SUMMARY OF ARGUMENT</u>

The Court properly dismissed the majority of Plaintiffs' claims on summary judgment. Dkt. 119. But, the Court denied the District's motion to dismiss and motion for summary judgment as to Plaintiffs' Section 1983 Fourteenth Amendment race discrimination claim and Title VI race discrimination claim. *See id*. In denying the District's dispositive motions, in part, the Court erred by employing an incorrect causation standard. Specifically, under Section 1983, the District can only be held liable when the District's policy-maker, its elected Board of Trustees, is the moving force – i.e., the direct cause – of the constitutional injury of which the Plaintiffs complain. Typically, a plaintiff makes the requisite showing by establishing a customary policy through the existence of a pattern of prior, highly similar unconstitutional conduct. Here, Plaintiffs have no evidence that could support the existence of a pattern. Nonetheless, the Court allowed Plaintiffs' race discrimination claims to proceed to trial based on the fact that, after Plaintiffs had been sent to the Redirect Room and unenrolled from the District, the District's Board denied the Plaintiffs' grievances. The Board's denial of the grievances could not have been the moving force of Plaintiffs' claimed injuries because it occurred after the Plaintiffs' alleged constitutional injuries were complete. Stated differently, the Board's after-the-fact action could not have been the direct cause of the alleged injury that had already occurred.

As such, the District now respectfully requests the Court reconsider its ruling denying the District's motions to dismiss and for summary judgment on those claims, grant the District's motions in their entirety, and dismiss the remainder of Plaintiffs' claims against it with prejudice. *See* Local Rule CV-7(a)(4).

1

## STATEMENT OF THE ISSUES

1. Whether the Court erred in denying the District's motion to dismiss and motion for summary judgment against Plaintiffs' Section 1983 race discrimination claim.

2. Whether the Court erred in denying the District's motion to dismiss and motion for summary judgment against Plaintiffs' Title VI intentional race discrimination claim.

## ARGUMENT & AUTHORITIES

At the outset, the District addresses some potential confusion on Plaintiffs' burden that was likely created by the District's counsel during the Pretrial Conference. In its Order denying the District's motion to dismiss and motion for summary judgment against Plaintiffs' Section 1983 and Title VI race discrimination claims, the Court notes its reliance on a statement the District's counsel made during the Pretrial Conference regarding Plaintiffs' requirement to show a pattern of disparate enforcement. *See* Dkt. 119 at p. 9, n. 2; *see also* Dkt. 119 at p. 14. However, the cited portion referred to the District's counsel's discussion of the difference between a hypothetical dissimilar situation of the Board voting to non-renew an employee's contract.[1] *Id.* The purpose of this hypothetical was to explain the difference between a case that challenges a direct Board action that causes the underlying constitutional violation in the first instance, as opposed to a case (like this one)

---

[1] This, for instance, was the circumstance in *Coggin v. Longview Independent School District*, where the Board deliberately chose to discharge an employee without affording him an opportunity to be heard as required by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. 289 F.3d 326, 336 (5th Cir. 2002), *vacated*, 309 F.3d 307, *on reh'g en banc*, 337 F.3d 459 (5th Cir. 2003), *cert. denied*, 540 U.S. 1018; *see also* Tex. Educ. Code §§ 21.208, .258, .259 (indicating the Board decides non-renewal and termination matters following a hearing, if requested). In *Coggin*, the Board itself made the decision that caused the constitutional harm, a denial of due process, whereas here, the District's employees made the decisions that caused any alleged constitutional harm (i.e., disparate treatment under the Equal Protection Clause).

that involves an alleged underlying constitutional violation caused by the governmental entity's employees that the plaintiff seeks to charge to the entity. If the Court reviews the statements made by the District's counsel just before and immediately after this hypothetical, the District's counsel unequivocally explained to the Court that, in this case, where Plaintiffs' claims are that the employees – not the Board – enforced the former policy in a racially discriminatory manner, Plaintiffs are required to prove the Board had knowledge of a highly similar pattern of unconstitutional behavior. *See* Dkt. 117 at 97:16-98:14. The District regrets any confusion caused by its colloquy with the Court. However, the relevant law necessitates a dismissal of Plaintiffs' race claims.

**A.** **The Court erred in applying the governing law to the undisputed evidence when denying the District's motions against Plaintiffs' Section 1983 race discrimination claim.**

      1.    <u>The Court did not properly apply controlling authority governing the causation requirement for Plaintiffs' Section 1983 race discrimination claim and, as a result, did not apply the governing law to the undisputed evidence.</u>

The Fifth Circuit has stated that, in order to impose municipal liability, "the unconstitutional conduct must be directly attributable to the [entity] through some sort of official action or imprimatur; isolated unconstitutional actions by . . . employees will almost never trigger liability." *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001) (cleaned up). Moreover, a school district cannot be held liable under Section 1983 for an employee's alleged misconduct based on the theories of *respondeat superior* or vicarious liability. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-94 (1978); *Johnson v. Moore*, 958 F.2d 92, 93 (5th Cir. 1992). Under Texas law, final policy-making authority in a public school district, such as the District, rests exclusively

with the district's board of trustees. *See Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003); *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993) (stating the final policy-maker for school districts is the board of trustees).

The Court has already found, and Plaintiffs do not dispute, that the former dress and grooming policy is facially race-neutral. *See* Dkt. 28 at p. 7; Dkt. 81 at Part B.1. As such, Plaintiffs' case hinges on the allegation that the District, through the actions of its employees, violated their constitutional rights under Section 1983 by enforcing its former dress and grooming code against them in a racially discriminatory manner. *See* Dkt. 56.

An essential element of their Section 1983 claim requires that Plaintiffs prove "moving force" causation. *See Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010). Plaintiffs "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* (citing *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). "Moving force" causation requires that the plaintiff establish direct causation – "[t]his means 'there must be a direct causal link' between the policy and the violation." *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009). So, that means that Plaintiffs must either proceed by establishing an existing pattern of prior, highly similar unconstitutional violations (which, as discussed below, they cannot do) or by showing that the Board's own action was the moving force of their purported constitutional injury.

To try and carry their burden, Plaintiffs point to the Board's denial of their grievances. It is undisputed that, by the time the Board heard their grievances, Plaintiffs had already been sent to the Redirect Room and unenrolled from the District. Plaintiffs'

grievances sought to have the Board reverse the actions of District employees that had already occurred. In short, Plaintiffs argued, and the Court found, that the Board's denial of their grievances provided the requisite Board action – i.e., policy. In doing so, the Court misapplied the moving force causation standard.

As recognized by Magistrate Judge Love of the Eastern District, a school board's denial of a grievance that occurs after the claimed constitutional violation has been committed by employees of the school district cannot meet the moving force causation requirement. *See Wyatt v. Kilgore*, No. 6:10-CV-674, 2011 WL 6016467, at \*9 n.4 (E.D. Tex. Nov. 30, 2011), *rev'd in part on other grounds*, 718 F.3d 496 (5th Cir. 2013). Judge Love reasoned as follows:

> The Court notes that because Plaintiff must show that the 'moving force' of the constitutional violation of S.W.'s rights was the official policy, Plaintiff must show that the policy was in existence prior to the incident. Even assuming arguendo that the School Board's action constituted an adoption of an official policy that teachers are required to disclose the sexual orientation of students to their parents, it is logically impossible for this policy to have been the moving force behind the incident that occurred before the policy was enacted.

*Id*.

The Western District has reached the same result. In *Doe v. Leander Independent School District,* the plaintiff claimed it could establish municipal liability because the Board denied the plaintiff's grievance. The court rejected the argument explaining that:

> Because this is an allegation that the alleged "official policy" was created by the Board's denial of the grievance, Plaintiff does not allege "a formally adopted policy . . . [that] was the 'moving force' behind the alleged constitutional violations. Rather, Plaintiff argues the alleged constitutional violation, the Board's denial of the grievance, was the "moving force" behind

the adoption of the "official policy." This argument reverses the requirements
for Section 1983 municipal liability.

No. 1:20-CV-00408-LY, 2020 WL 13833132 at *9 (W.D. Tex. Dec. 22, 2020), *adopted by*

2021 WL 11670039 (W.D. Tex. Jan. 8, 2021) (cleaned up).

Read together, *Wyatt* and *Doe* demonstrate that, when the plaintiff's effort to
identify municipal action rests on the summary denial of a grievance presented to the
school board, they cannot show moving force causation. That is because, as a matter of
logic, an after-the-fact action cannot be the direct cause of something that has already
happened. And that is the case here. Because the Court denied the District's motion to
dismiss and motion for summary judgment based on an incorrect application of the moving
force causation standard, the Court should grant reconsideration, vacate the portion of its
order denying the District's motions, and dismiss Plaintiffs' Section 1983 race
discrimination claim.

To the extent Plaintiffs now argue a theory of municipal liability under a ratification
theory, that claim too fails, by law. The Fifth Circuit has "limited the theory of ratification
to 'extreme factual situations'" analogous to the situations present in *Grandstaff v. City of
Borger*, 767 F.2d 161 (5th Cir. 1985), in which police officers mistook an innocent victim
for a fugitive and shot and killed him. *Peterson*, 588 F.3d at 848. In *Grandstaff*, the Fifth
Circuit upheld a jury's verdict, finding the city was liable where the city's policymakers
knew the city's police officers were likely to shoot to kill without justification and without
restraint because of the current policy or custom of reckless disregard for human life and
innocent bystanders. 767 F.2d at 169-72; *see also Samuel v. City of Houston*, No. 4:22-

CV-02900, 2023 WL 6444888, at *8 (S.D. Tex. Sept. 29, 2023). Contrary to *Grandstaff*, Plaintiffs have not made a showing of an extreme factual situation here. *See generally* Dkts. 56, 75.

Moreover, to establish ratification, the plaintiff must show that the Board knowingly approved the decision and adopted the improper basis for the decision. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Here, there was no improper decision by the Board. However, assuming for the sake of argument there could be, the evidence establishes that the Board simply denied the Plaintiffs' grievances:

*Grievance of Kambry Cox:*

**Matt Crawford**: Ok. The time is, I'm sorry, do I have a motion on the Level III appeal?

**C. Larry Smith:**  Mr. President, I request that the Board deny the Level III Grievance filed, by Kambry Cox.

Dkt. 75-1 at Exh. 25, Tatum ISD 414.

*Grievance of Edwina Woodley:*

I move that the Board of Trustees deny the Level III Grievance of Randi Woodley.

Dkt. 75-1 at Exh. 24, Tatum ISD 720.

And that's it. As a matter of law, this is insufficient to establish ratification. That is because, when a municipality simply goes along with its subordinate's decisions – and that's all that the evidence shows here – a claim of ratification fails as a matter of law. *Covington v. City of Madisonville*, 812 F. App'x 219, 228 (5th Cir. 2020). This allows a municipality to accept its employee's decisions without causing the Supreme Court's

carefully crafted municipal liability jurisprudence to collapse into *respondeat superior* liability. *See id.*

Regardless, Plaintiffs would still bear the burden of proving moving force causation. As the Sixth Circuit has explained, ". . . even if it were shown that the municipality subsequently ratified the decision, the plaintiffs would still have to prove that the ratification was a 'moving force' in causing the constitutional violation." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 n.6 (6th Cir. 1993) (citing *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991) (cleaned up)). Plaintiffs simply cannot make that showing because their alleged constitutional injury had already occurred. *See Wyatt*, 2011 WL 6016467, at *9 n. 4 (concluding "it is logically impossible for this policy to have been the moving force behind the incident that occurred before the policy was enacted"); *Bradford v. City of Tatum*, No. 6:22-CV-00406-JDK, 2023 WL 3432185, at *6 (E.D. Tex. Mar. 8, 2023), *report and recommendation adopted*, 2023 WL 2784863 (E.D. Tex. Apr. 4, 2023) ("To state a claim for ratification by a municipal entity under Section 1983, a plaintiff must show that a policymaker knowingly approved a subordinate's actions and the improper basis for those actions."). It is undisputed Plaintiffs cannot make this necessary showing. *See* Dkt. 75 at Exh. 10, ¶¶ 15-18, 33-47 (alleged constitutional injuries occurring in September of 2019); Dkt. 75 at Exhs. 24-25 (grievance hearing heard in October of 2019).

Because Plaintiffs cannot establish that the Board's denial of their grievance was the moving force behind their claimed constitutional injuries or that the Board ratified an improper purpose of the District's employees that was the moving force of their claimed constitutional violations, the District maintains that Plaintiffs are required to prove the

Board had *knowledge* of a *persistent and widespread pattern* of *highly similar* alleged constitutional violations to prove their Section 1983 claim for race discrimination and still chose to allow the constitutional violations to continue. *Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299, 1304 (5th Cir. 1995); *Monell*, 436 U.S. 658. As explained below, applying this legal standard to the three pieces of evidence the Court found raised a genuine question of material fact necessitates a reversal of the Court's Order and dismissal of Plaintiffs' Section 1983 race discrimination claim.

      2.    <u>Further, Plaintiffs cannot establish a pattern of prior, highly similar unconstitutional violations.</u>

      Under controlling authority, in order to impose municipal liability on the District, Plaintiffs must prove that the District's Board had actual or constructive knowledge of a persistent, widespread practice, of highly similar violations of Black students' constitutional right to wear their hair at the length or in a ponytail as desired, by District officials or employees, that was "so common and well settled as to constitute a custom that fairly represented District policy." *Eugene*, 65 F.3d at 1304 (cleaned up); *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003); *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 382-85 (5th Cir. 2005); *Valle*, 613 F.3d at 548; *Blanchard-Daigle v. Geers*, 802 F. App'x 113, 117-18 (5th Cir. 2020); *Monell*, 436 U.S. 658. The pattern of prior incidents "must have occurred for so long or so frequently that the course of conduct warrants the attribution to [the Board] of knowledge that the objectionable conduct is the expected, accepted practice of [District employees]." *Peterson,* 588 F.3d at 851 (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc). "A pattern requires

similarity and specificity; prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Id*. (cleaned up). Further, a pattern requires "sufficiently numerous prior incidents, as opposed to isolated instances." *Id*. (cleaned up).

To maintain an Equal Protection claim, Plaintiffs must prove that they "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Clayton ex rel. Hamilton v. Tate Cnty. Sch. Dist.*, 560 F. App'x 293, 297 (5th Cir. 2014) (quoting *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009)) (cleaned up). However, Plaintiffs must prove more than mere disparate impact. *Id*. Rather, "a party who wishes to make out an Equal Protection claim must prove the existence of purposeful discrimination motivating the state action which caused the complained-of injury." *Id*. at 298 (quoting *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997)) (cleaned up).

In its Order, the Court first relied on the Level III grievance transcript hearing to support actual or constructive knowledge by the Board of the alleged constitutional violations against Plaintiffs. *See* Dkt. 119 at p. 12. This reliance is improper for two reasons. First, the undisputed evidence establishes the grievance hearing was held after Plaintiffs were sent to the Redirect Room – one time for K.C. and six times for M.T. – and after both were properly administratively withdrawn from the District. *See* Dkt. 75 at Exh. 10, ¶¶ 15-18, 33-47 (alleged constitutional injuries occurring in September of 2019); Dkt. 75 at Exhs. 24-25 (grievance hearing heard in October of 2019). In other words, the purported constitutional violations that plaintiffs complain of had already occurred. That

means that District employees, through their actions, were the moving force – i.e., cause – of any purported constitutional injury. Logically, a subsequent Board action could not have caused an injury that was already complete.

As established above, a grievance hearing heard *after* the alleged constitutional violations have already occurred cannot establish the requisite knowledge or causation element to impose municipal liability. *See Valle*, 613 F.3d at 542. Second, statements made by Plaintiffs' counsel during an adversarial, quasi-judicial hearing – which is exactly what the Level III grievance hearing transcript contains – are not evidence. Moreover, Plaintiffs' counsel merely stating, in general, that the former policy was "not being applied equally across the board" based on alleged (and unsubstantiated) yearbook photos is insufficient to impute knowledge of "a persistent and widespread pattern of highly similar" constitutional violations to the Board. *Eugene*, 65 F.3d at 1304.

The Court next finds that the deposition testimony from Assistant Superintendent Drenon Fite – that suggested elementary and primary school students are not disciplined under the dress and grooming code due to their age – supported municipal liability against the District. *See* Dkt. 119 at pp. 12-13. This reliance is improper for two reasons. First, deposition testimony from 2023 cannot impute knowledge or "moving force" causation of a pattern of highly similar unconstitutional violations to the District's Board in 2019. *Valle*, 613 F.3d at 542. What is more, Plaintiffs cannot be their own pattern. *See id.* at 549; *Geers*, 802 F. App'x at 117-18. As such, the Court's suggestion that Mr. Fite's deposition testimony "raises a genuine issue of material fact as to whether Plaintiffs, as black elementary school students, were disproportionately affected and the hair policy was

discriminately enforced against them" is legally improper. *See* Dkt. 119 at p. 13; *Valle*, 613

F.3d at 549; *Geers*, 802 F. App'x at 117-18. Second, this is an incorrect reading of the

evidence and Mr. Fite's deposition testimony. As the evidence conclusively establishes,

students at the Tatum Primary School who are out of dress code, and whose parents refuse

to come to the school and get their child into dress code (like the Plaintiffs in this case),

are sent to the Redirect Room. *See* Dkt. 75 at Exh. 10, ¶ 6. Mr. Fite's testimony merely

explains why there are no discipline *documents* for primary school students who are sent

to the Redirect Room for being out of dress code – because they are so young and the

decision to be out of dress code is the parents' failure, not the students. This is evident by

the fact that, even though Plaintiffs were sent to the Redirect Room for being out of dress

code (after their guardians purposefully refused to come to school and get them in

compliance), there are no discipline records reflecting this.

Finally, the Court relies on a June 2020 email written by Superintendent J.P.

Richardson raised a "question of fact for the jury as to what the Superintendent meant and

whether his statements support Plaintiff's [sic] arguments regarding disparate treatment."

*See* Dkt. 119 at p. 14. This reasoning also fails for the reasons discussed above.

Specifically, an email written by Superintendent Richardson, not the Board, approximately

nine months after the alleged constitutional injuries occurred, is insufficient as a matter of

law to impose actual knowledge and "moving force" causation on the Board. *Valle*, 613

F.3d at 542.

In sum, the undisputed evidence establishes the Board did not gain knowledge of

the alleged constitutional violations by District employees – namely, Principal Tamara Fite,

a Black woman herself – until *after* they had occurred. This is insufficient to establish the "moving force" causation required to impose municipal liability and support Plaintiffs' constitutional claim for race discrimination. *Id*. Regardless, there is no evidence to establish a persistent, widespread practice of highly similar violations of Black students' constitutional right to wear their hair at the length or in a ponytail as desired, by District officials or employees, that was so common and well-settled as to constitute a custom that fairly represented District policy. Specifically, Plaintiffs cannot be their own pattern. *See Valle*, 613 F.3d at 549 (finding expert testimony that "[a]t least 10 mentally ill people shot [by Houston officers] were unarmed or carrying objects such as screwdrivers or pieces of wood" prior to the plaintiff's injury was insufficient, stating "[t]his testimony does tend to suggest that prior shootings of mentally ill persons in fact had occurred, but it does not establish a pattern of constitutional violations. Prior instances must point to the specific violation in question; notice of a pattern of *similar* violations is required. Although it is possible to infer that these prior shootings may have involved the use of excessive force, that inference is too tenuous to survive summary judgment. For one, a police officer may be justified in using lethal force against a person carrying a screwdriver or other object, depending on the circumstances.") (cleaned up) (emphasis in original); *Geers*, 802 F. App'x at 117-18. Plaintiffs' Section 1983 claim for race discrimination must be dismissed, as a matter of law, and the District respectfully requests the Court grant reconsideration, vacate the portion of its order denying the District's motions, and dismiss Plaintiffs' Section 1983 race discrimination claim.

13

**B.      The Court erred in applying the governing law to the undisputed evidence when denying the District's motions against Plaintiffs' Title VI claim.**

"Only racial discrimination of the same character as that forbidden by the Equal Protection Clause is prohibited by [Title VI]." *Rollerson v. Brazos River Harbor Navigation Dist.*, 6 F.4th 633, 639 (5th Cir. 2021). "Accordingly, '[t]o receive compensatory damages, a Title VI plaintiff must prove discriminatory intent.'" *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015). "Title VI allows neither personal liability claims against individuals nor vicarious liability claims against employers for the acts of their employees." *Rodgers v. Smith*, 842 F. App'x 929, 929 (5th Cir. 2021); *Jones v. City of Detroit*, 20 F.4th 1117, 1121 (6th Cir. 2021) (collecting cases).

Plaintiffs' Title VI claim can be distilled to an allegation that Principal Fite, a Black woman herself, chose to enforce the dress and grooming code against Plaintiffs because they are Black. *Compare* Dkt. 119 at p. 11 *with* p. 15. In its Order, the Court relies on the same three pieces of evidence to establish a genuine dispute of material fact for trial on Plaintiffs' Title VI claim. *See* Dkt. 119 at p. 15. For the same reasons set out above, this evidence does not raise a material question of genuine fact for a jury to decide whether Principal Fite selectively enforced the dress and grooming code against Plaintiffs in an intentionally discriminatory manner because of their race. *Id*. at p. 5 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) to establish, "[a] genuine dispute of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party"); *see also Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (legal

conclusions, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment).

As stated above, statements made by Plaintiffs' counsel during the October 2019 Level III grievance hearing – an adversarial, quasi-judicial proceeding – are not competent summary judgment evidence to prove the dress and grooming code was discriminatorily enforced against Plaintiffs based on their race. At best, Plaintiffs' counsel stated, during the grievance hearing, that unidentified and unsubstantiated photos he purportedly saw on the District's website and in yearbooks showed unknown and unidentified Caucasian students with hair in their faces that were still allowed to go to school. *See* Dkt. 119 at p. 12. This amounts to a subjective opinion of discrimination, held by Plaintiffs' own advocate, not actual evidence. *See Jackson v. Katy Indep. Sch. Dist.*, 951 F. Supp. 1293, 1298-99 (S.D. Tex. 1996) ("Plaintiffs' summary judgment evidence consists primarily of their own statements made in letters to Defendants and others reflecting their subjective belief that Brison was discriminated against on the basis of his race."); *see also Knighton v. Univ. of Tex. at Arlington*, No. 4:18-CV-00792-P-BP, 2021 WL 9881105, at *4 (N.D. Tex. May 24, 2021), *report and recommendation adopted*, 2021 WL 2337167 (N.D. Tex. June 8, 2021) ("Knighton attempts to demonstrate [intentional discrimination based on her race] by alleging that she was the only student accused of misconduct and disciplined by the interruption of internship, and that she was the only white student involved in the internship incident. . . Knighton only offers her subjective opinions that UTA discriminated against her, and without evidence to support her claims, she failed to present a genuine issue of material fact for trial that UTA intentionally discriminated against her

15

on the basis of her race.") (citing *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002)). It is a slippery slope to allow counsel's statements during an adversarial proceeding to establish evidence of disputed material fact sufficient for the jury to consider. *See, e.g., U.S. v. Almeida-Biffi*, 825 F.2d 830, 833 (5th Cir. 1987) (opening statements and statements by counsel are not evidence).

Further, as the Court notes in its Order, it did not consider the actual photographs Plaintiffs' counsel referenced during the grievance hearing (as they were not included in Plaintiffs' response to the District's motion for summary judgment or attached to Plaintiffs' live complaint), but rather relies solely on Plaintiffs' counsel's statements. *See* Dkt. 119 at p. 12, n. 4. However, even if the Court considered the actual photos, they would still not amount to competent summary judgment evidence. There is no evidence of (1) the identities of the children in the photos, including their names, ages, and races; (2) what year these photos were taken; (3) whether the children were or were not in violation of the District's former dress and grooming code; and (4) whether the children were or were not disciplined under the District's former dress and grooming code. *See generally* Dkt. 81. As such, even with the photos, statements made by Plaintiffs' counsel during a Level III grievance hearing are not competent summary judgment evidence to establish Plaintiffs were treated differently by Principal Fite because of their race.

Moving to the Court's finding that Mr. Fite's deposition testimony "raises a genuine issue of material fact as to whether Plaintiffs, as black elementary school students, were disproportionately affected and the hair policy was discriminately enforced against them," this too is insufficient to establish evidence of intentional discrimination by Principal Fite.

As stated above, Mr. Fite's statement during his deposition was merely to explain why there are no discipline *documents* for primary school students who are sent to the Redirect Room for being out of dress code – because they are so young and the decision to be out of dress code is the parents' failure, not the students. It does not establish evidence that Principal Fite enforced the dress code against Plaintiffs because of their race. In contrast, the undisputed evidence establishes that Principal Fite tried every tactic and avenue to ensure Plaintiffs did not go to the Redirect Room, including sending reminder letters home to their guardians and making daily phone calls to request their guardians come to the school to get them into compliance with the dress code. *See* Dkt. 75 at Exh. 10. What is more, the actual discipline data that is in evidence establishes the former dress and grooming code was enforced against students of all races. *See* Dkt. 75 at Part C.2; Dkt. 75 at Exh. 36; *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 299-300 (3d Cir. 2014) ("[T]he statistics do not indicate gross disparities of the kind and degree sufficient to give rise to an inference that the non-uniform individualized analyses of students in the LMSD, utilized to determine appropriate classroom placement, reflected a pattern or practice of discrimination . . . [D]isproportionality is not per se evidence of discrimination and, as plaintiffs' own experts have acknowledged, disproportionately can be either biased or unbiased.") (cleaned up).

Finally, Dr. Richardson's June 2020 email does not establish Principal Fite intentionally enforced the former dress and grooming code against Plaintiffs because of their race. It is of no consequence what *Dr. Richardson* meant when he wrote that email, as that email does not establish *Principal Fite* used race as an invidious criterion to enforce

the former dress and grooming code. In fact, she disagreed with the former dress and grooming code. *See* Dkt. 75 at Exh. 30 (attaching a letter written by Tamara Fite to the June 2020 email).[2]

Plaintiffs' Title VI claim for intentional race discrimination must be dismissed, as a matter of law, and the District respectfully requests the Court reconsider its ruling denying the District's motions on this claim.

## **CONCLUSION AND PRAYER**

Based on the above, Tatum Independent School District requests the Court reconsider its partial denial of the District's motions to dismiss and for summary judgment; grant the District's motions to dismiss and for summary judgment in full; dismiss all claims against the District with prejudice; and grant any other relief the District is entitled to.

---

[2] Tamara Fite's letter that was attached to Dr. Richardson's June 2020 email is not in the record before the Court, as it did not appear necessary to dispute any responsive arguments made by Plaintiffs' in their Response. *See* Dkts. 81, 87. Should the Court wish to see the letter in order to inform its decision on reconsidering the partial denial of the District's motion for summary judgment, the District can provide it to the Court.

Respectfully submitted,

ROGERS, MORRIS, & GROVER, L.L.P.

_____
JONATHAN G. BRUSH
State Bar No. 24045576
Fed. I.D. No. 619970
jbrush@rmgllp.com
AMY DEMMLER
State Bar No. 24092337
Fed. I.D. No.  3227731
ademmler@rmgllp.com
5718 Westheimer, Suite 1200
Houston, Texas 77057
Telephone:    713/960-6000
Facsimile:    713/960-6025

ATTORNEYS FOR TATUM ISD

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

_____
Attorney for Tatum ISD

19